Jeffrey A. Almeida
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax: (302) 622-7100
Email: jalmeida@gelaw.com

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND, on behalf of itself and all others similarly situated, | Civil Action No. 3:23-cv-20321 |
| Plaintiff, | The Honorable Michael A. Shipp |
| v. | CLASS ACTION |
| INTEGRA LIFESCIENCES HOLDINGS CORPORATION, CARRIE ANDERSON, PETER ARDUINI, GLENN COLEMAN, JAN DE WITTE, ROBERT T. DAVIS, JR., STEVE LEONARD, and JEFFREY MOSEBROOK, | Motion Day: December 18, 2023 |
| Defendants. | |

**INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA & DELAWARE'S MEMORANDUM OF LAW OPPOSING COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  ARGUMENT............................................................................................. 3

    A.  THE PENSION FUNDS GROUP CANNOT ADEQUATELY REPRESENT THE CLASS AND SHOULD BE DISQUALIFIED ...........................................7

        1.  None of the Members of the Pension Funds Group Have a Pre-Existing Relationship......................................................7

        2.  The Pension Funds Group Was Cobbled Together by Counsel.................................................................................8

        3.  The Pension Funds Group Is Too Large to Adequately Represent the Class .................................................................12

    B.  THE UNION GROUP ALSO CANNOT ADEQUATELY REPRESENT THE CLASS...................................................................................15

    C.  IUOE IS THE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD GRANT IUOE'S MOTION.......................................................18

III.  CONCLUSION......................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Arciaga v. Barrett Bus. Servs., Inc.*,
  2015 WL 791768 (W.D. Wash. Feb. 25, 2015)...............................................6, 14

*In re BankAmerica Corp. Sec. Litig.*,
  350 F.3d 747 (8th Cir. 2003) ...........................................................................11

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
  Case No. 3:23-cv-04332-JSC (Nov. 15, 2023 N.D. Cal.) (ECF No. 48) .............6

*Bodri v. Gopro, Inc.*,
  2016 WL 1718217 (N.D. Cal. Apr. 28, 2016).....................................................6

*In re Carreker Corp. Sec. Litig.*,
  2003 WL 27396764 (N.D. Tex. Aug. 14, 2003) ................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................*passim*

*Chao Sun v. Han*,
  2015 WL 2364937 (D.N.J. May 14, 2015)..................................................*passim*

*City of St. Clair Shores Police & Fire Ret. Sys. v. Credit Suisse Grp. AG*,
  21 Civ. 3385 (NRB) (S.D.N.Y. Jun. 30, 2021) (ECF No. 31) ..........................14

*Dang v. Amarin Corp. PLC*,
  2022 WL 15524944 (D.N.J. Oct. 27, 2022) ................................................*passim*

*Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*,
  2016 WL 3032684 (D.N.J. May 26, 2016)...........................................12, 13, 18

*Mannacio v. Discover Fin. Servs.*,
  Case No. 1:23-cv-06788 (N.D. Ill. Oct. 31, 2023) (ECF No. 19) .....................10

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..............................................................13

*Richard NMI Bell v. Acendant Solutions, Inc.*,
  2002 WL 638571 (N.D. Tex. Apr. 17, 2002) ....................................................14

*Roth v. Knight Trading Grp., Inc.*,
  228 F. Supp. 2d 524 (D.N.J. 2002)......................................................................15

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  Case No. 1:22-cv-06339-JPC-SLC (S.D.N.Y. Aug. 22, 2022) (ECF No.
  35) .........................................................................................................................9

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 WL 6886020 (C.D. Cal. May 2, 2006).......................................................14

*Smith v. Suprema Specialties, Inc.*,
  206 F. Supp. 2d 627 (D.N.J. 2002)...................................................................6, 7

*In re Spectrum Pharm., Inc.*,
  2014 WL 1394162 (D. Nev. Mar. 20, 2014) .........................................................6

*Stires v. Eco Science Solutions, Inc.*,
  2018 WL 5784817 (D.N.J. Feb. 14, 2018) ........................................5, 8, 10, 11

*Takata v. Riot Blockchain, Inc.*,
  2018 WL 5801379 (D.N.J. Nov. 6, 2018) ...................................................*passim*

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
  Case No. 3:15-cv-07658-MAS-LHG (D.N.J.) ............................................13, 14

*Williams v. Block.One*,
  2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020)..............................................6, 9, 13

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .........................................................................17

15 U.S.C. § 78u-4(a)(3)(B)...........................................................................*passim*

15 U.S.C. § 78j(b) ....................................................................................................1

15 U.S.C. § 78t(a) ....................................................................................................1

**Other Authorities**

17 C.F.R. § 240.10b-5..............................................................................................1

Fed. R. Civ. P. 23 .............................................................................................*passim*

iii

S. Rep. No. 104-98 ...................................................................................................4

## I.    INTRODUCTION

Three movants have filed competing motions to be appointed as Lead Plaintiff in the proposed class action (the "Action") against Integra LifeSciences Holdings Corporation ("Integra") and several of its executives (collectively, "Defendants"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

Of the three movants, International Union of Operating Engineers Pension Fund of Eastern Pennsylvania & Delaware ("IUOE") is the only one to satisfy the adequacy prong of Federal Rule of Civil Procedure 23 ("Rule 23"), and its appointment would ensure the case is not led by a lawyer-driven group (which is disfavored in this Circuit and across the nation).  For that reason and as discussed in more detail herein, the Court should grant IUOE's motion and appoint IUOE as Lead Plaintiff and its counsel, Grant & Eisenhofer P.A. ("G&E"), as Lead Counsel. *See* ECF No. 19 ("IUOE Mot.").

IUOE is a sophisticated pension fund that manages over $1 billion in assets. As an institutional investor with experience serving as lead plaintiff in securities class actions, IUOE is the paradigmatic lead plaintiff envisioned under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and it easily satisfies both the typicality and adequacy requirements of Rule 23.  In addition, IUOE has also moved

1

to appoint just one law firm as Lead Counsel.

In contrast, the other two movants are groups comprised of unrelated parties that fail to satisfy the requirements of Rule 23.  The largest movant, the self-styled "Pension Funds," is an amalgamation of *four* unrelated investors represented by *four* law firms.  The "Pension Funds Group" includes: San Antonio Fire and Police Pension Fund ("San Antonio"); Pembroke Pines Firefighters & Police Officers Pension Fund ("Pembroke"); City of Birmingham Retirement and Relief System ("Birmingham"); and Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Local 66").  These four funds are located in different states and, most important, do not claim to have *any* relationship prior to their moving to be appointed Lead Plaintiff in this Action. The four unrelated funds are represented by four law firms, and seek to appoint three as Lead Counsel.  ECF No. 20-2 at 1 ("Pension Mot.").

The other Lead Plaintiff movant is a group of two investors: Ohio Carpenters Pension Fund ("Ohio Carpenters") and Elevator Constructors Union Local No. 1 Annuity & 401(k) Fund ("Local No. 1"; together, the "Union Group").  Like the Pension Funds Group, the two members of the Union Group do not claim any prior relationship.  The Union Group is represented by two firms.  ECF No. 22-1 at 1 ("Union Mot.").

Appointing a movant with multiple members who do not have any pre-

existing relationship is disfavored by courts in this Circuit and elsewhere because it undermines the policy considerations that precipitated the PSLRA. Specifically, a multi-headed lead plaintiff makes it less likely that the investors themselves, rather than their many attorneys, will direct the litigation. And a group whose members have no pre-existing relationships presents the hallmark of "lawyer-driven litigation" that the PSLRA lead plaintiff process was designed to thwart. As explained further below, the Pension Funds Group is a particularly egregious example of a lawyer-created and -dominated lead plaintiff. In contrast, IUOE is precisely the type of lead plaintiff candidate the PSLRA envisions.

## II.   ARGUMENT

Under Section 21D of the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), the Court must appoint as lead plaintiff the movant "most capable of adequately representing the interests of class members" – the "most adequate plaintiff." The most adequate plaintiff is presumed to be the movant with the "largest financial interest in the relief sought by the class" *and* who also satisfies the requirements of Rule 23. *Id.* If a movant makes a *prima facie* showing of Rule 23 adequacy, this may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "Assessing a movant's

3

adequacy requires a court to consider whether the movant 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *4 (D.N.J. Nov. 6, 2018) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)) (alterations in original).

The purpose of the PSLRA is "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4, *reprinted in* 1995 U.S.C.A.A.N. 679, 683. As the Third Circuit stated: "[T]he goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class[.]" *Cendant*, 264 F.3d at 266. Therefore, although the PSLRA does not

> preclude[] a group of "unrelated individuals" from serving as a lead plaintiff[,] . . . [i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class.

*Cendant*, 264 F.3d at 266. Accordingly, in determining the lead plaintiff in actions subject to the PSLRA, courts consider two additional factors. The first is "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel . . . ." *Id.*

4

at 265. The second "arise[s] only when the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity[,]" *id.* at 266, and requires the court to examine "whether the way in which the group was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff[,]" *Takata*, 2018 WL 5801379, at *4 (alterations omitted) (quoting *Cendant*, 264 F.3d at 266); *see also Chao Sun v. Han*, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015) ("[I]n assessing whether a group satisfies the adequacy prong of the Rule 23 analysis, the Third Circuit incorporates an extra step in the process.").

Thus, the Third Circuit has held that if "a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Cendant*, 264 F.3d at 267. In such a case, the court "should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Takata*, 2018 WL 5801379, at *4 (quoting *Cendant*, 264 F.3d at 266); *see also Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *4 (D.N.J. Feb. 14, 2018) (same); *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at *5 (D.N.J. Oct. 27, 2022) (same). "Thus, when evaluating group plaintiffs, movants must show their cohesiveness and independence from

5

proposed counsel, ***including how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy***." *Takata*, 2018 WL 5801379, at *5 (emphasis supplied, internal quotations omitted).[1]

Factors that courts consider when determining if a movant will "fairly and adequately" represent the interests of a class include "(i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." *Chao Sun*, 2015 WL 2364937, at *4; *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 636-637 (D.N.J. 2002) (same); *Dang*, 2022 WL 15524944, at *5 ("[A] court may inquire about "the extent of the prior relationships and/or connection between the members of a movant group" to the

---

[1] Courts across the country have held similarly. *See*, *e.g.*, *Bhangal v. Hawaiian Elec. Indus., Inc.*, Case No. 3:23-cv-04332-JSC (Nov. 15, 2023 N.D. Cal.) (ECF No. 48) (rejecting group where movants failed to "specify why serving as joint lead plaintiff will benefit the plaintiff class in this case"); *Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020) ("[A]pplications from unrelated plaintiff groups raise doubts that the group – rather than its lawyers – is truly in charge of the litigation, as the PSLRA hopes.") (internal quotations omitted); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) ("[T]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.") (citation omitted); *Arciaga v. Barrett Bus. Servs., Inc.*, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015) (declining to appoint group "formed only for the purposes of this litigation"); *In re Spectrum Pharm., Inc.*, 2014 WL 1394162, at *3 (D. Nev. Mar. 20, 2014) (same).

extent that this sheds light on the adequacy of that group as the class representative[.]”).

Additionally, “the Third Circuit recognizes that there may be other reasons to justify a court’s decision that the adequacy or typicality requirement has not been satisfied.” *Suprema*, 206 F. Supp. 2d at 633.

### A. THE PENSION FUNDS GROUP CANNOT ADEQUATELY REPRESENT THE CLASS AND SHOULD BE DISQUALIFIED

#### 1. None of the Members of the Pension Funds Group Have a Pre-Existing Relationship

When determining whether a group of individuals or entities moving for lead plaintiff will “fairly and adequately” represent the interests of a class, two factors that courts in the Third Circuit consider include whether the group members had a pre-existing relationship and, if so, the extent of that relationship. *Chao Sun*, 2015 WL 2364937, at *4 (citing *Cendant*, 264 F.3d at 266-267).

Here, there is no evidence that any of the members of the Pension Funds Group have any relationship apart from their moving for Lead Plaintiff in this Action. Indeed, although the Pension Funds Group lists seven cases where two of their proposed three *counsel* have worked together, they do not list a single instance where the *Pension Funds Group members* themselves (or some subset thereof) have previously served together as lead plaintiff. *See* Pension Mot., at 20-21. Indeed, pointing to evidence of where the lawyers worked together shows that the Pension

Funds Group's motion was initiated by the lawyers, not by the clients.  Most important, the Pension Funds Group's joint declaration does not demonstrate that any of its members have any relationship *outside* of the motion.  *See* ECF No. 20-6 ("Pension Decl."). Rather, it shows only four separate pension funds located in different parts of the country.  *See id.* at ¶¶ 2-5 (San Antonio, Texas; Pembroke Pines, Florida; Birmingham, Alabama; Pittsburgh, Pennsylvania).  This weighs against a finding of adequacy, and "could, by itself, be a basis for denying lead plaintiff status." *Takata*, 2018 WL 5801379, at *5 (noting that group members from different states "failed to include any facts in their moving brief detailing the relationship between the plaintiffs that comprise the group"); *see also Stires*, 2018 WL 5784817, at *5 ("What the Joint Declaration does not provide, and what is conspicuously absent, is any information regarding how these five apparent strangers from different states found each other.").

### 2.    The Pension Funds Group Was Cobbled Together by Counsel

It is clear that the Pension Funds Group is not a "group" but a construct of four law firms in order to obtain appointment as Lead Plaintiff.  *See Cendant*, 264 F.3d at 267.  Its members' joint declaration fails to explain how the four funds came together, other than vaguely claiming that "[a]fter learning of the complaint . . . San Antonio, Birmingham, and Local 66 determined it would be in their and other Class members' interests to seek appointment as Lead Plaintiff jointly with Pembroke."

Pension Decl. at ¶ 10.  The joint declaration does not describe how San Antonio, Birmingham, and Local 66 learned of the Action, let alone what made them aware of each other's desire to seek lead plaintiff appointment.  "[Q]uestions of this nature arise regularly when groups of apparently unrelated parties apply for the lead plaintiff position.  The failure of the [Pension Funds] Group and its counsel to provide satisfactory answers thus raises further doubts about their diligence in litigating this matter and their adequacy to represent the absent class members." *Block.One*, 2020 WL 4505569, at *4.  Thus, there is a real "concern" that the decision to proceed together "was, and future decisions by the group [will] be, driven by the lawyers." *Id.* at 5.

In fact, one of the members has previously argued that cobbling together multiple investors to strengthen the chances of lead plaintiff appointment is improper.  In *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, San Antonio argued against the appointment of two groups of investors moving for lead plaintiff because "[e]ach group is a random assemblage of investors loosely sewn together from different states across the country with no real connection other than sharing the same law firm[,]" and thus the movants were "ineligible to be appointed under the PSLRA."  Case No. 1:22-cv-06339-JPC-SLC (S.D.N.Y. Aug. 22, 2022) (ECF No. 35) at 1.

9

The members of the Pension Funds Group also assert that they have "demonstrated their commitment to working together cohesively" to prosecute the Action because during a single conference call of unspecified length they discussed: "their desire to proceed jointly in efficiently prosecuting this action; their losses arising from Defendants' misconduct; their strategy for prosecuting this case; the strength of the claims against Defendants; and their common goals in ensuring that this action is litigated as efficiently as possible and that the Class receives the best possible result." Pension Mot., at 15, 18. But one isolated conference call of unspecified duration does not legitimize their relationship in this context.[2] Indeed, courts have seen through this type of boilerplate language.

For example, in *Stires*, the court declined to appoint a group that held a conference call to discuss:

> the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of investors; the shared desire of the Eco Science Investor Group's members to achieve the best possible result for the class; the interests in prosecuting the case in a collaborative, like-minded manner; and the actions that the Eco Science

---

[2] *Compare with Mannacio v. Discover Fin. Servs.*, Case No. 1:23-cv-06788 (N.D. Ill. Oct. 31, 2023) (ECF No. 19) (brief by San Antonio and co-movant in support of motion for lead plaintiff arguing group was appropriate because the members' "collaboration in this litigation follows from the extensive relationship between the funds and their representatives, which includes serving as lead plaintiff together in securities litigation and collaborating on issues affecting the retirement security of Texas first responders").

> Investor Group will take to continue to ensure that the class's claims will be zealously and efficiently litigated[,]

as well as "the benefits of having experienced law firms serve as Co-Lead counsel, and the procedures and mechanisms for communication and decision-making." 2018 WL 5784817, at *5; *see also Dang*, 2022 WL 15524944, at *9 (a "single communication and plans to oversee the litigation does not allay the Court's concerns about the ability of this group to effectively monitor and manage the litigation, particularly if a dispute were to arise"); *Takata*, 2018 WL 5801379, at *5 (holding that language which was "*identical*" to that in *Stires* failed to establish that a group "possess[ed] the requisite cohesiveness or independence to be appointed lead plaintiff") (emphasis in original).  The concern regarding how the Pension Funds Group would handle a potential dispute is of particular importance here, given that the group has no mechanism for dealing with disagreement between its members other than "resolv[ing] it through discussion with each other and our counsel." Pension Decl. at ¶ 15.  Past cases have shown that disagreements can arise among groups that were previously harmonious.  *See*, *e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 750 (8th Cir. 2003) (subset of lead plaintiff group disapproved of settlement reached by class counsel, raising questions as to whether district court had authority to approve settlement).

Finally, the Pension Funds Group's decision to propose three law firms as co-Lead Counsel belies their assertion that they desire to proceed efficiently. Their

11

motion should be judged by their actions, not by their self-serving declaration.  In sum, the Pension Funds Group's motion is lawyer-driven, and the group should therefore be disqualified from serving as Lead Plaintiff.

### 3. The Pension Funds Group Is Too Large to Adequately Represent the Class

Although the PSLRA permits more than one investor to move for appointment as lead plaintiff as part of a group,

> [c]ourts must . . . inquire whether a movant group is too large to represent the class in an adequate manner.  At some point, a group becomes too large for its members to operate effectively as a single unit.  When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement.

*Cendant*, 264 F.3d at 267 (citation omitted).  Although courts in the Third Circuit "generally presume that groups with more than five members are too large to work effectively[,]" this is not a "hard-and-fast" rule, and smaller groups have also been disqualified.  *Id.*  Accordingly, courts in this Circuit have found that groups consisting of five members or less did not satisfy Rule 23's adequacy requirement.  *See, e.g.*, *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, 2016 WL 3032684, at *5-*6 (D.N.J. May 26, 2016) (holding that four entities in a movant group "have not shown that they will adequately protect the interests of the putative class"); *Dang*, 2022 WL 15524944, at *10 (group of five members "is on the upper-limit of what the Third Circuit has deemed presumptively acceptable for a lead

12

plaintiff group" and "considering its size in relation to" the minimal pre-existing relationship between members, low loss amounts of individual members, and "conclusory" language in joint declaration, "has not demonstrated its ability to 'operate effectively as a single unit'").

Like the movant groups in *Lifestyle* and *Dang*, the Pension Funds Group is too large to "operate effectively as a single unit." *Cendant*, 264 F.3d at 267.  As one court observed,

> [a]llowing unrelated plaintiffs to band together in order to manufacture a larger financial interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.  Moreover, it creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.

*In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-622 (S.D.N.Y. 2015).  Likewise, another court disqualifying a group of five investors noted that such a large group "creates an unnecessary risk of having too many cooks in the kitchen – or, perhaps worse, a risk of having disinterested cooks." *Block.One*, 2020 WL 4505569, at *3.

The Pension Funds Group's willingness to surrender decision-making obligations to counsel is exemplified by its request to appoint three firms as co-Lead Counsel and a fourth firm as liaison counsel.  There is no basis to justify that this Action requires the services of so many law firms.  Indeed, in *In re Valeant*

13

*Pharmaceuticals International, Inc. Securities Litigation*, a case before this Court that resulted in a $1.21 *billion* settlement, the class was more than adequately represented by a *single* lead plaintiff and a *single* lead counsel firm.  Case No. 3:15-cv-07658-MAS-LHG (D.N.J.).  In comparison, this case does "not in itself compel the Court to find that three [or four] law firms need to manage the case."  *Richard NMI Bell v. Acendant Solutions, Inc.*, 2002 WL 638571, at *6 (N.D. Tex. Apr. 17, 2002).  Nor is this action "particularly complex or beyond the capabilities of each of the proposed firms individually."  *Id.*; *see also City of St. Clair Shores Police & Fire Ret. Sys. v. Credit Suisse Grp. AG*, 21 Civ. 3385 (NRB) (S.D.N.Y. Jun. 30, 2021) (ECF No. 31) (questioning "the features of this case that necessitate the appointment of more than one counsel"); *Arciaga*, 2015 WL 791768, at *3 ("The group requests appointment of two law firms to be co-lead counsel, which raises the concern that the group is less likely to be in control of the litigation."); *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 WL 6886020, at *8 (C.D. Cal. May 2, 2006) ("[I]t is not apparent why the Impac/IMH Group needs to retain two law firms to represent it, either of which would appear to be sufficient in itself."); *In re Carreker Corp. Sec. Litig.*, 2003 WL 27396764, at *2 (N.D. Tex. Aug. 14, 2003) (declining to appoint two additional firms as co-lead counsel because it "is not in the best interest of the putative class").

Finally, the Pension Funds Group has not provided any method for how they

intend to avoid duplication of effort and over-lawyering, both of which would be detrimental to the Class. Likewise, they have not explained how having four members serving as Lead Plaintiff would "enhance benefit to the class in this relatively noncomplex, apparently non-gargantuan in scope case." *Roth v. Knight Trading Grp., Inc.*, 228 F. Supp. 2d 524, 531 (D.N.J. 2002).

*   *   *

In summary, the Pension Funds Group is a quintessential example of lawyer-driven litigation that the PSLRA was designed to prevent. This is evident in the lack of a pre-existing relationship among or between *any* of the group's members, the boilerplate declaration that does not adequately explain how the members of the Pension Funds Group would oversee counsel or resolve disputes, the sheer size of the group that make it too large to efficiently oversee counsel, and the investors' disregard for the inevitable and unnecessary duplication of effort and costs resulting from their selection of four separate law firms. As a result, the Pension Funds Group fails to satisfy Rule 23's adequacy prong and its motion should be denied.

## B.    THE UNION GROUP ALSO CANNOT ADEQUATELY REPRESENT THE CLASS

The Union Group suffers from some of the same infirmities as the Pension Funds Group – namely, it is comprised of unrelated entities that do not have any pre-existing relationship. *See* Union Mot., at 7-8. Additionally, although "courts have established protocols to insure that [a group of proposed lead plaintiffs] will be

15

effective[,]" including "requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group[,]" *Chao Sun*, 2015 WL 2364937, at *4 n.1, the Union Group failed to provide *any* affidavit or declaration attesting to their ability to work effectively or their supposed discussion of "their leadership, decision-making, and oversight of this litigation[,]" Union Mot., at 8. The Union Group's motion also lacks any mention of how its members would address a disagreement or contact each other in the event counsel is unavailable. *See Takata*, 2018 WL 5801379, at *5 ("Movant[] belatedly submitted a supplemental joint declaration as part of its opposition brief that attempts to establish the group's cohesiveness and independence from counsel. This joint declaration does not allay the *Cendant* court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."). Given these circumstances, it is highly likely that the Union Group was also created for the purpose of ensuring appointment as Lead Plaintiff by amalgamating losses. *See Chao Sun*, 2015 WL 2364937, at *4 ("[T]he only pre-existing relationship among [the group members] is the fact that they invested in the same Telestone securities. Further, it appears that these unrelated individuals amalgamated together for the sole purpose of obtaining lead plaintiff status. The extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit.").

Additionally, IUOE's losses, and other factors used to measure financial

16

interest, exceed those of both members of the Union Group:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | LIFO Losses |
|---|---|---|---|---|
| **IUOE[3]** | **22,105** | **10,693** | **$828,115** | **$397,775** |
| Ohio Carpenters[4] | 16,847 | 7,974 | $623,559 | $296,625 |
| Local No. 1[5] | 9,908 | 5,628 | $417,161 | $190,603 |
| **Union Group Total** | **26,755** | **13,602** | **$1,040,720** | **$487,228** |

Thus, under the standards courts in this Circuit use to assess the "largest financial interest in the relief sought," IUOE has a larger interest than either member of the Union Group. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *In re Cendant Corp.*, 264 F.3d at 262.

Given the lack of a relationship between Ohio Carpenters and Local No. 1, their relatively low losses compared to IUOE's further weigh against appointing them as Lead Plaintiff here. *See, e.g., Chao Sun*, 2015 WL 2364937, at *4 ("Of primary concern to this Court is the fact that without aggregation of Aerts' and Xi's losses (the figures calculated according to their own methodology), Xi would have suffered less losses than Qu and would be removed from qualification as the presumptive lead plaintiff."); *Dang*, 2022 WL 15524944, at *7 ("[T]he fact that the individual financial losses of the Amarin Group's members are significantly lower

---

[3] *See* ECF No. 21-1.

[4] *See* ECF No. 22-5.

[5] *Id.*

than those of the other individual movants suggests that the group was formed to aggregate individual financial losses."); *Lifestyle*, 2016 WL 3032684, at *5 ("Individually, none of the four entities comprising the Public Pension Funds group has a loss larger than that of Dr. Brenner, and even if aggregated, their loss is only approximately $30,000 more than Dr. Brenner's individual loss."). Consequently, the Union Group's motion should be denied.

### C.    IUOE IS THE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD GRANT IUOE'S MOTION

As discussed in its opening motion, IUOE should be appointed Lead Plaintiff because it is the "most adequate plaintiff." Specifically, IUOE has incurred losses of $397,775 on its purchases of Integra common stock. ECF No. 21-2. IUOE also satisfies Rule 23's requirements because its claims are typical of those of the Class, and it will fairly and adequately represent the interests of the Class. IUOE Mot., at 9-10. Further, IUOE is a sophisticated institutional investor with a substantial financial interest in the pending litigation and has significant experience supervising and monitoring outside counsel. *Id.* at 11. Finally, IUOE is seeking to appoint a single, experienced, and qualified firm as Lead Counsel – G&E. *Id.* at 11-13.

Because neither the Pension Funds Group nor the Union Group satisfy Rule 23's adequacy requirement, IUOE is the only remaining movant for Lead Plaintiff. IUOE also meets Rule 23's typicality and adequacy prongs, which is exemplified

18

by IUOE's selection of G&E for Lead Counsel.  This Court should therefore grant IUOE's motion for appointment as Lead Plaintiff.

## III.    CONCLUSION

For the foregoing reasons, IUOE respectfully requests that this Court grant its motion to be appointed Lead Plaintiff, and appoint its choice of counsel as Lead Counsel for the Class.

Dated: Wilmington, Delaware
December 4, 2023

Respectfully submitted,

/s/ *Jeffrey A. Almeida*
Jeffrey A. Almeida
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax: (302) 622-7100
Email: jalmeida@gelaw.com

Daniel L. Berger (*pro hac vice forthcoming*)
Caitlin M. Moyna (*pro hac vice forthcoming*)
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com

*Counsel for the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania & Delaware, and Proposed Lead Counsel for the Class*

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2023, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Notice of those filings was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.

/s/ Jeffrey A. Almeida
Jeffrey A. Almeida

20