**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Proposed Liaison Counsel for the Class*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTEGRA LIFESCIENCES HOLDINGS CORPORATION, CARRIE ANDERSON, PETER ARDUINI, GLENN COLEMAN, JAN DE WITTE, ROBERT T. DAVIS, JR., STEVE LEONARD, and JEFFREY MOSEBROOK, <br><br> Defendants. | Case No. 3:23-CV-20321-MAS-TJB <br><br> Hon. Michael A. Shipp <br><br> <u>CLASS ACTION</u> <br><br> **Motion Day: December 18, 2023** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ...................................................................1

II.  ARGUMENT.........................................................................................2

    A.   The Pension Funds Are the Presumptive Lead Plaintiff and the
Opposing Movants Fail to Rebut This Presumption............................2

        1.   The Pension Funds Are a Paradigmatic "Group" Under
the PSLRA ...............................................................................3

        2.   The Pension Funds Control This Litigation, and the Court
Should Not Disturb Their Choice of Counsel...........................10

II.  CONCLUSION.....................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
   2018 WL 1960444 (D.N.J. Apr. 25, 2018)..........................................................6, 8

*Arciaga v. Barrett Bus. Servs., Inc.*,
   2015 WL 791768 (W.D. Wash. Feb. 25, 2015) ...................................................14

*Atkinson v. Morgan Asset Mgmt., Inc.*,
   2008 WL 11319683 (W.D. Tenn. Sept. 23, 2008) ...............................................14

*Bhangal v. Hawaiian Elec. Indus., Inc.*
   No. 3:23-cv-04332 (N.D. Cal. Nov. 15, 2023) ....................................................15

*Dang v. Amarin Corp. PLC*,
   2022 WL 15524944 (D.N.J. Oct. 27, 2022)..........................................................10

*Dartell v. Tibet Pharms., Inc.*,
   2017 WL 2815073 (D.N.J. June 29, 2017) ...........................................................15

*Goines v. Celsius Network, LLC*,
   2023 WL 2945897 (D.N.J. Apr. 14, 2023).............................................................8

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
   529 F. Supp. 3d 385 (E.D. Pa. 2021)....................................................................14

*In re 3M Co. Sec. Litig.*,
   No. 2:19-cv-15982-CCC-JBC (D.N.J. Oct. 21, 2019)  .........................................4

*In re Allergan PLC Sec. Litig.*,
   2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020).......................................................15

*In re Baan Co. Sec. Litig.*,
   186 F.R.D. 214 (D.D.C. 1999) ..............................................................................14

*In re BankAmerica Corp. Sec. Litig.*,
   350 F.3d 747 (8th Cir. 2003).................................................................................9

ii

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009)......................................................................13

*In re Carreker Corp. Sec. Litig.*,
  2003 WL 27396764 ..........................................................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................... 3, 5, 11

*In re Conduent Inc. Sec. Litig.*,
  2022 WL 17406565 (D.N.J. Feb. 28, 2022).......................................................4

*In re First Union Corp. Sec. Litig.*,
  157 F. Supp. 2d 638 (W.D.N.C. 2000)..............................................................13

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021).................................................................................3

*In re Milestone Scis. Sec. Litig.*,
  187 F.R.D. 165 (D.N.J. 1999) ...........................................................................15

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015).................................................................9

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999) ...............................................................14

*Isolde v. Trinity Indus., Inc.*,
  No. 3:15-cv-02093 (N.D. Tex. Mar. 8, 2016) ...................................................13

*Kelley v. Aerie Pharms., Inc.*,
  2015 WL 4545654 (D.N.J. July 28, 2015) ..........................................................4

*Lang v. Tower Grp. Int'l, Ltd.*,
  2014 WL 12779212 (S.D.N.Y. June 17, 2014)...................................................13

*Lawless v. Aurora Cannabis Inc.*,
  2021 WL 2850451 (D.N.J. July 8, 2021) .............................................................6

iii

*Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*,
  2016 WL 3032684 (D.N.J. May 26, 2016) ........................................................9

*McDermid v. Inovio Pharms, Inc.*,
  467 F. Supp. 3d 270 (E.D. Pa. 2020)...............................................................14

*Minneapolis Firefighters' Relief Assoc. v. Medtronic, Inc.*,
  2009 WL 1458234 (D. Minn. May 26, 2009) ...................................................13

*Montesano v. Eros Int'l PLC*,
  2020 WL 1873015 (D.N.J. Apr. 14, 2020)...........................................................4

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.
  Holdings Ltd.*,
  2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) ....................................................13

*Potts v. Weight Watchers Int'l, Inc.*,
  No. 1:19-cv-02005 (S.D.N.Y. June 12, 2019) .....................................................4

*Richard NMI Bell v. Ascendant Sols., Inc.*,
  2002 WL 638571 (N.D. Tex. Apr. 17, 2002).....................................................15

*Rubenstahl v. Philip Morris Int'l Inc.*,
  2019 WL 585429 (D.N.J. Feb. 13, 2019).............................................................7

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  No. 1:22-cv-06339 (S.D.N.Y. Aug. 22, 2022) ....................................................9

*Sapir v. Averback*,
  2015 WL 858283 (D.N.J. Feb. 26, 2015).............................................................3

*Schriver v. Impac Mortgage Holdings, Inc.*,
  2006 WL 6886020 (C.D. Cal. May 2, 2006)......................................................14

*Sec. Police & Fire Pros. of Am. Ret. Fund v. Pfizer, Inc.*,
  No. 2:10-cv-03105-SDW-MCA (D.N.J. Sept. 24, 2010) ....................................4

*Soto v. Hensler*,
  235 F. Supp. 3d 607 (D. Del. 2017) ....................................................................8

iv

*Stires v. Eco Science Sols., Inc.*,
  2018 WL 5784817 (D.N.J. Feb. 14, 2018)...........................................................10

*Strougo v. Lannett Co., Inc.*,
  2018 WL 6271802 (E.D. Pa. Nov. 30, 2018)....................................................7, 8

*Takata v. Riot Blockchain, Inc.*,
  2018 WL 5801379 (D.N.J. Nov. 6, 2018)...........................................................10

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
  2021 WL 533518 (S.D. Cal. Feb. 12, 2021) .......................................................14

*Williams v. Block.One*,
  2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) .........................................................9

*Wilson v. Aurora Cannabis Inc.*,
  2020 WL 13876739 (D.N.J. July 23, 2020) ...........................................................4

*Yoshikawa v. Exxon Mobil Corp.*,
  No. 3:21-cv-00194 (N.D. Tex. June 10, 2021) ......................................................4

## Statutes

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................... 2, 3, 11
15 U.S.C. § 78u-4(a)(6) ......................................................................................15

## Other Authorities

7 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 22:36 ......10

## I.    PRELIMINARY STATEMENT

The Pension Funds, which suffered a loss of $1.27 million that is ***more than two-and-a-half times*** the Union Pension Funds' loss and ***more than three times*** IUOE's loss, have the largest financial interest in this litigation.[1]   Neither of the competing movants contest this fact.   The Pension Funds have also made the requisite prima facie showing of their typicality and adequacy to represent the Class, including by providing detailed evidence regarding their origins, cohesiveness, motivations, and ability to oversee counsel and direct this litigation.   As such, the Pension Funds are the presumptive "most adequate plaintiff" under the PSLRA.

Recognizing the gross disparity in financial interest, the opposing movants offer unsubstantiated contentions that do not meet the exacting "***proof***" standard required under the PSLRA to rebut the presumption that the Pension Funds are the most adequate plaintiff.   Specifically, the opposing movants ask the Court to ignore the choice of counsel proffered by sophisticated pension funds with a strong track record of success in past securities litigation (*see* ECF No. 20-6 ¶ 7), for the sole reason that the Pension Funds have chosen to jointly prosecute this case.   The opposing movants rely on decades-old and disfavored caselaw to speculate that the Pension Funds are an improper, lawyer-driven "amalgamation."  ECF No. 27 at 12-

---

[1] All defined terms and abbreviations remain unchanged from the Pension Funds' opening and opposition memoranda.  *See* ECF Nos. 20-2 and 29.  In addition, all citations are omitted, and all emphasis is added unless otherwise noted.

1

23 and ECF No. 28 at 7-14.  Nothing could be further from the truth.  The fact that the Pension Funds' proposed Lead Counsel have a long history of victories in securities litigation prosecuted efficiently both together and individually only ***adds*** to the adequacy of the Pension Funds and would be a boon to the Class.  Moreover, each of the Pension Funds is an institution answerable to a board of trustees, negating any possibility that they can somehow be "driven" by their lawyers.

These speculative arguments are further undercut by the fact that the Pension Funds also include the movants with the largest ***individual*** financial interest under every measure considered by courts, which courts in this Circuit and elsewhere have found dispositive in appointing groups as lead plaintiff.  Birmingham has a larger individual loss than any competing movant, and San Antonio alone purchased more total and net shares, and expended more net funds than either of the competing movants, further underscoring the Pension Funds' financial interest.  ECF No. 29 at 11.  Accordingly, the Court should appoint the Pension Funds as Lead Plaintiff, approve their selection of counsel, and reject the competing motions.

## II.   ARGUMENT

### A.   The Pension Funds Are the Presumptive Lead Plaintiff and the Opposing Movants Fail to Rebut This Presumption

Because the Pension Funds have the largest financial interest in this litigation, the opposing movants bear the burden of proving that the Pension Funds do not meet Rule 23's adequacy and typicality requirements.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)

(I)(bb); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class . . .; instead, the question is whether anyone can ***prove*** that the presumptive lead plaintiff will not do a fair[] and adequate [] job"). The opposing movants argue that the Pension Funds are inadequate because they (1) determined to act collectively in committing their substantial resources and experience to prosecuting this action, and (2) selected well-qualified counsel who have repeatedly shown their ability to prosecute actions efficiently both individually and collaboratively. These arguments fail both based on common sense and because the opposing movants advance only speculation—not proof—in their attempts to rebut the presumption. Thus, the Pension Funds' motion should be granted and the opposing motions should be denied. *See Sapir v. Averback*, 2015 WL 858283, at *2 (D.N.J. Feb. 26, 2015) ("The presumptive lead plaintiff ***must*** be appointed unless it is proven that the movant will not satisfy" Rule 23's requirements).

        **1.**    **The Pension Funds Are a Paradigmatic "Group" Under the PSLRA**

As the Union Pension Funds and IUOE concede, ECF Nos. 27 at 9 and 28 at 7, the PSLRA expressly permits the appointment of a "group" as lead plaintiff, particularly when composed of institutional investors such as the Pension Funds. 15 U.S.C. § 78u-4(a)(3)(B); *Cendant*, 264 F.3d at 266; *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) ("The statute expressly allows a 'group of persons' to move for

appointment"). Courts in this District routinely appoint lead plaintiff groups of sophisticated institutional investors. *See*, *e.g.*, *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at \*12 (D.N.J. Apr. 14, 2020) (appointing group of unrelated entities and Carella Byrne as liaison counsel); *In re Conduent Inc. Sec. Litig.*, No. 2:19-cv-08237 (D.N.J. July 15, 2019), ECF No. 10 (appointing group of four public pension funds as lead plaintiff and two law firms as co-lead counsel), 2022 WL 17406565, at \*3 (D.N.J. Feb. 28, 2022) (rejecting defendants' "speculat[ive]" concerns about group's "ability to adequately function as a cohesive group"). The Union Pension Funds' and IUOE's counsel know this to be true, as they have been appointed lead counsel for unrelated lead plaintiff groups ***numerous times*** in prior PSLRA cases.[2]

IUOE first argues that the absence of a preexisting relationship between the

---

[2] *See*, *e.g.*, *Wilson v. Aurora Cannabis Inc.*, 2020 WL 13876739, at \*2-3 (D.N.J. July 23, 2020) (appointing group of five unrelated individuals as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and another firm as co-lead counsel); *Kelley v. Aerie Pharms., Inc.*, 2015 WL 4545654, at \*1 (D.N.J. July 28, 2015) (appointing group of three unrelated institutions as lead plaintiff and Robbins Geller as lead counsel); *In re 3M Co. Sec. Litig.*, No. 2:19-cv-15982-CCC-JBC (D.N.J. Oct. 21, 2019), ECF No. 18 (appointing group of three unrelated institutions as lead plaintiff and Robbins Geller and another firm as co-lead counsel); *Sec. Police & Fire Pros. of Am. Ret. Fund v. Pfizer, Inc.*, No. 2:10-cv-03105-SDW-MCA (D.N.J. Sept. 24, 2010) (appointing group of two unrelated institutions and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") and a predecessor of Kessler Topaz as co-lead counsel); *Potts v. Weight Watchers Int'l, Inc.*, No. 1:19-cv-02005 (S.D.N.Y. June 12, 2019), ECF No. 63 (appointing group of two unrelated institutions as lead plaintiff and Grant & Eisenhofer and another firm as co-lead counsel); *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-cv-00194 (N.D. Tex. June 10, 2021), ECF No. 43 (appointing group of two unrelated institutions as lead plaintiff and Grant & Eisenhofer and Bernstein Litowitz as co-lead counsel).

4

Pension Funds is disqualifying, ECF No. 27 at 12-13, but *Cendant* rejects cases that preclude unrelated individuals from serving as lead plaintiff. 264 F.3d at 266. Pre-litigation relationships are not required for appointment under prevailing PSLRA jurisprudence. *Id.* ("The [PSLRA] contains no requirement mandating that the members of a proper group be 'related'"). The sole calculus is "whether [the] group would fairly and adequately protect [class] interests." *Id.* at 266-67 ("[I]t is this test, not one of relatedness, with which courts should be concerned").

*Cendant* notes two concerns about movant groups that do not apply to the Pension Funds: where evidence exists that a group was "cobbled together" by lawyers such that group members "could not be counted on to monitor counsel in a sufficient manner[;]" and where "a movant group is too large to [adequately] represent the class." *Id.* at 267. IUOE argues that the Pension Funds are a "construct of four law firms" that "is too large to operate effectively" (ECF No. 27 at 13, 18); the Union Pension Funds argue that the Pension Funds came together "to produce an artificial[] aggregation." ECF No. 28 at 11. These attacks lack merit.

*First*, IUOE's conclusory challenge to the Pension Funds' formation—and in particular the baseless contentions that the group is "too large" and that its constituent members may not be able to function cohesively and effectively control counsel (ECF No. 27 at 17-20)—is belied by the detailed Joint Declaration, the only actual evidence in the record. Specifically, the Joint Declaration demonstrates that

5

the Pension Funds will function cohesively as Lead Plaintiff and leaves no doubt the Funds are acting independent of counsel and control the litigation. The Joint Declaration evinces that the Pension Funds' decision to seek joint leadership was reached only after they "independently" expressed interest in partnering with other like-minded institutions. ECF No. 20-6 ¶¶ 10-11. It also shows that the Pension Funds determined—based on their experiences working with other institutions in prior PSLRA litigation—that it would be in their and the Class's best interests to seek joint appointment. *Id.* ¶ 12.

Prior to moving, representatives of each fund conferred about, inter alia, their objectives for jointly prosecuting this case. *Id.* ¶¶ 13-14. The Pension Funds have already taken significant steps to ensure this case is prosecuted in the Class's best interests through their oversight of counsel's proprietary investigations and are committed to continuing to do so, *id.* ¶¶ 9, 18-20, while making plans to resolve any disagreement, however unforeseen, through discussion with each other and their counsel. *Id.* ¶ 15. These affirmations easily meet or exceed those found acceptable by courts within this Circuit in appointing similar groups. *See, e.g., Lawless v. Aurora Cannabis Inc.*, 2021 WL 2850451, at *5 (D.N.J. July 8, 2021) (finding adequate group that submitted declaration "signed before and filed simultaneously with its Motion"); *Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *10 (D.N.J. Apr. 25, 2018) (finding "insufficient evidence" that group was "cobbled

6

together" where declaration detailed coordination); *cf. Strougo v. Lannett Co., Inc.*, 2018 WL 6271802, at *2 (E.D. Pa. Nov. 30, 2018) (appointing group over objection that it "fail[ed] to declare [members]—independent of counsel—decided to move as a group before seeking counsel's direction"). Indeed, as *Lannett* explains:

> [N]owhere in *Cendant* does the court require members of a movant group to declare they spoke initially about moving for lead plaintiff position solely at their own initiative . . . . [Group movants] are not required to aver they formed the group through their own initiative to meet their prima facie showing of adequacy.

*Id.* at 4. In light of their sworn Joint Declaration, there is simply no evidence, much less proof, to rebut the Pension Funds' prima facie showing of adequacy.

**Second**, the Union Pension Funds' contention that the Pension Funds joined at the behest of their counsel to aggregate their losses immediately fails because one group member, Birmingham, individually has a larger loss ($499,060 loss) than the Union Pension Funds ($487,227 combined loss) and IUOE ($397,775 loss). Similarly, San Antonio, which purchased more total and net shares, and expended more net funds than either of the competing movants, has the largest financial interest according to courts that use those metrics to select the most adequate plaintiff. *See Rubenstahl v. Philip Morris Int'l Inc.*, 2019 WL 585429, at *2-3 (D.N.J. Feb. 13, 2019) (discussing "the Third Circuit['s] . . . implicit[] endorse[ment] of the [financial interest factors set forth] in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)").

Because Birmingham or San Antonio alone have a larger financial interest than either competing movant under every metric courts consider, the Pension Funds' decision to work collaboratively on this case did not displace another more adequate movant. *See*, *e.g.*, *Goines v. Celsius Network, LLC*, 2023 WL 2945897, at *6 (D.N.J. Apr. 14, 2023) (finding group member's "total financial interest" greater than competing movant's, which "eases any concerns about [their] coming together solely to aggregate losses"); *Vitamin Shoppe*, 2018 WL 1960444, at *11 (finding no evidence that group was "cobbled together" where one member's "financial loss, standing alone, is greater than [the competing movant's] loss"); *Soto v. Hensler*, 235 F. Supp. 3d 607, 621-22 (D. Del. 2017) (appointing group whose member's loss "outstrip[s] . . . combined loss[of other movant,]" which "eases any concerns about . . . manipulation by their counsel"); *Lannett*, 2018 WL 6271802, at *7 (appointing group whose members "individually claim losses" larger than competing movant, which showed "counsel did not aggregate their claims to secure [appointment]").

The Union Pension Funds conspicuously do not cite any cases supporting their aggregation argument (ECF No. 28 at 11), perhaps because they claim a combined loss that is $787,446 less than the Pension Funds' loss.[3] *Compare* ECF No. 20-5 *with* ECF No. 22-5 at 2. Similarly, IUOE fails to cite a single case in which an

---

[3] Notably, the Union Pension Funds claim a larger loss than the next movant, IUOE, only by aggregating their losses. *Compare* ECF No. 22-5 *with* ECF No. 21-2.

institutional group (like the Pension Funds) that submitted sworn certifications with accurate data and a detailed joint declaration was rejected where one member alone had the largest loss and did not face unique defenses.[4] ECF No. 27 at 13-18.  Unlike here, the rejected group in *Williams v. Block.One* filed "unsworn (and therefore defective) PSLRA certification[s,]" replete with "errors," such as missing trading data, and "provid[ed] almost no meaningful information about the plaintiffs or their plans for managing th[e] case." 2020 WL 4505569, at *1, 3 (S.D.N.Y. Aug. 4, 2020).

San Antonio's position in a past action is no more availing.  In *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, San Antonio opposed the appointment of two groups under an out-of-circuit test that considered, unlike here, those groups' failures to "put forward any concrete plans for supervising the litigation" and litigation tactics that included "attempting to transfer th[e] case to" another jurisdiction.  No. 1:22-cv-06339 (S.D.N.Y. Aug. 22, 2022), ECF No. 35 at 8.  None of those concerns apply to the Pension Funds, and the court in that case appointed a group of institutions as Lead Plaintiff.  Further, IUOE's citation to *In re BankAmerica Corp. Sec. Litig.*, where members of a lead plaintiff group advanced "fractured positions" for and against settlement, 350 F.3d 747, 750 (8th Cir. 2003),

---

[4] *In re Petrobras Sec. Litig.* rejected a group whose member had the "largest individual financial interest in the litigation" but was subject to unique, disqualifying defenses.  104 F. Supp. 3d 618, 623, 624 n.4 (S.D.N.Y. 2015).  *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.* rejected a group that had to "aggregate their losses to achieve the largest . . . loss."  2016 WL 3032684, at *5-6 (D.N.J. May 26, 2016).

is textbook speculation, not evidence, of the Pension Funds' inadequacy. The balance of IUOE's proffered authority confirms that district courts have expressed skepticism towards ***unsophisticated individual investors*** thrust upon each other by counsel—not a cohesive group of institutional investors that collectively manage approximately $6.8 billion in assets and have dedicated staffs to oversee this litigation. *See* ECF No. 20-6 ¶¶ 2-5, 14.[5]

### 2. The Pension Funds Control This Litigation, and the Court Should Not Disturb Their Choice of Counsel

The competing movants cannot credibly suggest the sophisticated Pension Funds ceded control of this litigation to their lawyers. In fact, this partnership would only benefit the Union Pension Funds, IUOE, and the Class because such cohesive lead plaintiff partnerships "best protect[] the interests of the class; afford[] the class the benefit of combined resources to defray what may prove to be significant up-front litigation costs; and give[] the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs." 7 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 22:36, n.11 (6th ed. 2023). Indeed, the

---

[5] *See Stires v. Eco Science Sols., Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (rejecting group of five unrelated individuals who first held a conference call to discuss "preliminary matters" over a week ***after*** filing their lead plaintiff motion); *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at *7 (D.N.J. Oct. 27, 2022) (rejecting group of unrelated individuals and a husband-wife pair whose individual losses were "significantly lower than those of the other individual movants"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (rejecting group of unrelated individuals who had no "contact prior to filing the motion").

Pension Funds' Joint Declaration demonstrates how the competing movants and the Class are already enjoying the benefits of this partnership, as Pembroke directed Bernstein Litowitz and Carella Byrne to file the first and only complaint asserting securities law violations against Defendants on behalf of the Class.  ECF No. 20-6 ¶ 9.  These benefits will only continue to inure to the benefit of the Class, as the Pension Funds' decision to select its proposed Lead Counsel was informed by the Pension Funds' analysis of the claims against Integra and all three firms' ongoing investigations.  *Id.* ¶ 18.[6]

To be sure, the PSLRA "is designed to infuse lead plaintiffs with the responsibility (and motivation) to" vet and select qualified counsel and to "give deference to their stewardship." *Cendant*, 264 F.3d at 220.  The PSLRA makes clear that the Court should not disturb the plaintiff's choice of counsel "unless the Court finds it necessary to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cendant*, 264 F.3d at 276 ("[T]he Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  By choosing Bernstein Litowitz, Saxena White, and Kessler Topaz based on all three firms'

---

[6] Saxena White had launched an investigation into Integra prior to the filing of the complaint, and, as is routine for securities class action law firms—including Robbins Geller—posted information about the case and the firm's investigation after the case was filed.  *See* https://www.rgrdlaw.com/cases.html (listing cases with upcoming deadlines for motions and providing links with additional information).

11

experience, resources, and track records of success, ECF No. 20-6 ¶ 17, the Pension Funds uphold their fiduciary obligation under the PSLRA to select qualified counsel.

The competing movants concede there is no reason to disturb the Pension Funds' choice on a qualitative basis: the Union Pension Funds note the Pension Funds "exalt[ed] the qualifications and accomplishments of" all three firms (ECF No. 28 at 8), while IUOE admits there is no concern that "this action" is "beyond the capabilities of each of the proposed firms individually." ECF No. 27 at 19. Instead, the competing movants advance a quantitative challenge, arguing the Pension Funds are inadequate because they have selected three firms as proposed Lead Counsel and a fourth firm as proposed Liaison Counsel. ECF No. 27 at 18-19 and No. 28 at 6-14.[7] This is a red herring. There is no numerical test for appointment of Lead Counsel, particularly when sophisticated institutions like the Pension Funds commit to ensuring the action is prosecuted "in an efficient and cost-effective manner" and "without unreasonable cost or duplication of effort." ECF No. 20-6 ¶ 16.

Courts across the country routinely appoint three or more firms as co-lead counsel where, as here, "Plaintiffs assure[] th[e] Court that they will work together

---

[7] The Union Pension Funds wrongly contend that the Pension Funds concealed from the Court the involvement of a fifth law firm. This is apparently a reference to a firm that serves as outside general and fiduciary counsel to Pembroke that is not seeking to represent the Class as Lead Counsel. In any event, the involvement of outside counsel to Pembroke, which is not unusual for institutional investors, would not increase the costs to the Class in this contingency fee litigation. *See infra* at 15.

12

efficiently and without duplication of services." *In re First Union Corp. Sec. Litig.*, 157 F. Supp. 2d 638, (W.D.N.C. 2000) (appointing three firms as lead counsel and two firms as liaison counsel); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, (S.D.N.Y. 2009) (appointing three firms, including Bernstein Litowitz and a predecessor of Kessler Topaz, as co-lead counsel where the firms "implemented measures to limit legal fees and costs"); *Lang v. Tower Grp. Int'l, Ltd.*, 2014 WL 12779212, at \*4 (S.D.N.Y. June 17, 2014) (appointing three firms, including Saxena White and Bernstein Litowitz, as co-lead counsel where "[a]ll three firms are well qualified to manage this litigation"). Indeed, both the Union Pension Funds' and IUOE's counsel regularly seek and obtain appointment as co-lead counsel with two or more other firms.[8]

The competing movants' authorities, ECF No. 27 at 19-20 and No. 28 at 6-14, are inapposite, as they either involve groups of unsophisticated individual investors, unwieldy double- or triple-digit investor groups, or unique factors that are

---

[8] *See, e.g., Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 2011 WL 4831209, at \*3 (S.D.N.Y. Oct. 12, 2011) (appointing Robbins Geller, Grant & Eisenhofer, and another firm as co-lead counsel); *Minneapolis Firefighters' Relief Assoc. v. Medtronic, Inc.*, 2009 WL 1458234, at \*4 (D. Minn. May 26, 2009) (appointing Grant & Eisenhofer, Bernstein Litowitz, a Kessler Topaz predecessor, and another firm as co-lead counsel); *Isolde v. Trinity Indus., Inc.*, No. 3:15-cv-02093 (N.D. Tex. Mar. 8, 2016), ECF No. 97 (appointing Robbins Geller, Bernstein Litowitz, and another firm as co-lead counsel); *see also* Reply Decl. of James E. Cecchi in Further Support of the Pension Funds' Motion, Ex. A (list of cases in which Robbins Geller and Grant & Eisenhofer have sought appointment with two or more other firms), filed concurrently herewith.

13

absent here.  For example, *In re Telxon Corp. Sec. Litig.* rejected a "collection of eighteen unrelated" individuals that "propose[d] a three-tiered counsel structure, with three firms . . . to act as lead counsel, an Executive Committee . . . of seven law firms, and . . . an additional firm as liaison counsel."  67 F. Supp. 2d 803, 805, 817 (N.D. Ohio 1999).  *In re Baan Co. Sec. Litig.* rejected a "20-member subgroup of 466 investors" that sought "approv[al] of their selection of a committee of four law firms" and an additional firm as liaison counsel.  186 F.R.D. 214, 215 (D.D.C. 1999). *Schriver v. Impac Mortgage Holdings, Inc.* rejected an unrelated group consisting of eight individuals and an entity that sought appointment of two law firms.  2006 WL 6886020, at *8 (C.D. Cal. May 2, 2006).  The balance of the competing movants' authorities are likewise distinguishable from the Pension Funds' motion here.[9]

---

[9] *See, e.g.*, *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 399, 404 (E.D. Pa. 2021) (rejecting group of five entities that faced a "fundamental conflict of interest" as "part of a group of twenty-two institutional investors" that filed a parallel direct action and did not disclose plans for joint prosecution with two additional firms); *McDermid v. Inovio Pharms, Inc.*, 467 F. Supp. 3d 270, 276-77, 279 (E.D. Pa. 2020) (rejecting group of five unrelated individuals proposing appointment of four firms); *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021) (rejecting individual that lacked "the requisite experience to supervise this high-stakes litigation"); *Arciaga v. Barrett Bus. Servs., Inc.*, 2015 WL 791768, at *1, 3 (W.D. Wash. Feb. 25, 2015) (rejecting group of three unrelated individuals proposing appointment of three firms); *Atkinson v. Morgan Asset Mgmt., Inc.*, 2008 WL 11319683, at *12 (W.D. Tenn. Sept. 23, 2008) (rejecting individual proposing the same three-tiered counsel "structure rejected by the *Telxon* court"); *In re Carreker Corp. Sec. Litig.*, 2003 WL 27396764, at * (N.D. Tex. Aug. 14, 2003) (rejecting post-motion group of unrelated individuals with three proposed lead counsel in favor

14

The competing movants also cannot show that appointment of the Pension Funds' proposed Lead Counsel would inflate legal fees. The number of firms is irrelevant as any fees will be contingent, based on a percentage of the recovery achieved, and subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(6); *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *8 (D.N.J. June 29, 2017) ("[A]ttorneys' fees are typically awarded through the percentage-of-recovery method"). The Union Pension Funds' authorities, ECF No. 28 at 8-9, are inapplicable.[10]

## II.    CONCLUSION

For the reasons discussed above and in prior briefs, the Court's inquiry should begin and end with the Pension Funds, and the Pension Funds respectfully request the Court grant their Motion and deny the competing motions in their entirety.

Dated:  December 11, 2023                Respectfully submitted,

                                         /s/ *James E. Cecchi*
                                         James E. Cecchi

---

of appointing married couple and one firm, as proposed in their original motion); *Richard NMI Bell v. Ascendant Sols., Inc.*, 2002 WL 638571, at *6 (N.D. Tex. Apr. 17, 2002) (rejecting group of two individuals and an entity proposing appointment of three firms in case alleging defendant company lost "less than $2 million").

[10] *See, e.g.*, *Bhangal v. Hawaiian Elec. Indus., Inc.* No. 3:23-cv-04332 (N.D. Cal. Nov. 15, 2023), ECF No. 48 (applying out-of-circuit factors in rejecting stipulation for appointment of two individuals and an entity and Robbins Geller and two other firms as co-lead counsel); *In re Milestone Scis. Sec. Litig.*, 187 F.R.D. 165, 180 (D.N.J. 1999) (rejecting proposal of group of two individuals and five entities to appoint as co-lead counsel three law firms whose "objectives" were "already [in] conflict"); *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020) (disqualifying lead plaintiff for not following court order "that there was to be one and only one law firm serving as lead counsel").

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Liaison Counsel for the Class*

Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

Naumon A. Amjed
Ryan T. Degnan
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road

16

Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff*
*the Pension Funds and Proposed*
*Lead Counsel for the Class*

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

/s/ *James E. Cecchi*
James E. Cecchi