REED SMITH LLP

John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Gregory L. Watts (admitted *pro hac vice*)
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John I. Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra Lifesciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, and Jeffrey Mosebrook*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INTEGRA LIFESCIENCES HOLDINGS CORPORATION SECURITIES LITIGATION | Master Docket 3:23-cv-20321-MAS-TJB<br><br>ORAL ARGUMENT REQUESTED<br><br>Motion Day: March 17, 2024 |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## <u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    THE COURT SHOULD DISMISS THE RULE 10B-5(b) CLAIMS FOR FAILURE TO ALLEGE MULTIPLE ELEMENTS (COUNT I). ..................................... 1

    A.    The Complaint Fails to Allege a Materially False or Misleading Statement.......... 1

        1.    The "Compliance" Statements Were Puffery or Otherwise Not False When Made. ...................................................................... 1

            a.    Inactionable Puffery ....................................................... 1

            b.    Not Materially False or Misleading When Made .......................... 3

        2.    The "Remediation" Statements Were Inactionable Forward-Looking Statements, Opinions, or Otherwise Not False When Made. ........................................................................ 4

            a.    Protected by Safe Harbor for Forward-Looking Statements .......... 4

            b.    Inactionable Opinions ..................................................... 6

            c.    Not Materially False or Misleading When Made .......................... 8

        3.    The "Capacity" Statements Were Inactionable Forward-Looking Statements or Opinions, or Otherwise Not False When Made. ................ 11

            a.    Protected by Safe Harbor for Forward-Looking Statements ........ 11

            b.    Inactionable Opinions ................................................... 12

            c.    Not Materially False or Misleading When Made ........................ 13

    B.    The Complaint Fails to Plead a Strong Inference of Scienter.............................. 13

        1.    FDA's Regulatory Correspondence............................................. 14

        2.    2022 Internal Complaint .......................................................... 15

        3.    Former Employee Allegations .................................................... 16

        4.    Braintree Facility .................................................................. 17

5.      Generic Scienter Allegations ..................................................... 17

6.      Viewed Holistically, the Non-Culpable Explanations Are More Plausible Than an Inference of Scienter. ................................... 18

C.      The Complaint Fails to Plead Loss Causation After May 23, 2023. .................... 19

II.    PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II). ............................ 21

III.   THE COURT SHOULD DISMISS EACH CLAIM AGAINST EACH INDIVIDUAL DEFENDANT (COUNTS I, II, AND III). ............................................ 22

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ................................................................6, 17, 18, 22

*Anderson v. Stonemor Partners, L.P.*,
296 F. Supp. 3d 693 (E.D. Pa. 2017),
*aff'd*, 927 F.3d 710 (3d Cir. 2019) ..............................................................................9

*Barbee v. Amira Nature Foods, Ltd.*,
No. 3:21-cv-12894 (D.N.J. 2021) ................................................................................1

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013) ............................................................................8

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ................................................................................9, 17

*Cent. States v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) .................................................................................19

*Chan v. New Oriental Educ. & Tech. Grp. Inc.*,
2019 WL 2865452 (D.N.J. July 3, 2019) ...................................................................17

*Christian v. BT Grp. PLC*,
2020 WL 1969941 (D.N.J. Apr. 24, 2020) ................................................................15

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
865 F. Supp. 2d 811 (W.D. Mich. 2012) ................................................................3, 19

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ....................................................................................7, 9

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
2024 U.S. Dist. LEXIS 114235 (D.N.J. June 28, 2024) .......................................2, 3, 6, 7

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2013 WL 566805 (N.D. Ill. Feb. 13, 2013) .......................................................2, 8, 10, 16

*Cont'l Gen. Ins. Co. v. Olafsson*,
2024 WL 4263211 (D.N.J. Sept. 23, 2024) ..............................................................5, 7

*Cullen v. RYVYL Inc.*,
2024 U.S. Dist. LEXIS 36420 (S.D. Cal. Mar. 1, 2024) ...............................................23

*Dalberth v. Xerox Corp.*,
766 F.3d 172 (2d Cir. 2014) ....................................................................................20

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................21

*Emps. Ret. Sys. of P.R. Elec. Power Auth. v. Conduent Inc.*,
    2020 WL 3026536 (D.N.J. June 5, 2020) ...................................................................5

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015)...............................................................................14, 19

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019 ) ...........................................................9, 20

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
    2022 WL 889158 (E.D. Pa. Mar. 25, 2022)................................................................7

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ....................................................................................15

*Hull v. Glob. Digital Sols., Inc.*,
    2017 WL 6493148 (D.N.J. Dec. 19, 2017) ...............................................................20

*In re Able Lab'ys Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008).......................................................3, 4, 14

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ..............................................................................20

*In re Amarin Corp. PLC Sec. Litig.*,
    2022 U.S. App. LEXIS 16326 (3d Cir. June 14, 2022) .............................................12

*In re Anadigics, Inc., Sec. Litig.*,
    2011 U.S. Dist. LEXIS 112587 (D.N.J. Sept. 30, 2011) ...........................................13

*In re Boston Sci. Corp. Sec. Litig.*,
    708 F. Supp. 2d 110 (D. Mass. 2010),
    *aff'd*, 649 F.3d 5 (1st Cir. 2011) ...............................................................................20

*In re Cambrex Corp. Sec. Litig.*,
    2005 WL 2840336 (D.N.J. Oct. 27, 2005)................................................................18

*In re Coinbase Glob., Inc. Sec. Litig.*,
    2024 WL 4053009 (D.N.J. Sept. 5, 2024) ................................................................13

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020)..................................................................21

*In re Columbia Lab'ys, Inc. Sec. Litig.*,
    2013 WL 10914123 (D.N.J. June 11, 2013)..............................................................14

*In re CommVault Sys., Inc. Sec. Litig.*,
    2016 WL 5745100 (D.N.J. Sept. 30, 2016) ..............................................................10

*In re Discovery Lab'ys Sec. Litig.*,
    2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) ...............................................................9

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
    2019 WL 1299673 (D.N.J. Mar. 21, 2019)................................................................3, 8, 14

*In re Dura Pharms., Inc. Sec. Litig.*,
    548 F. Supp. 2d 1126 (S.D. Cal. 2008).....................................................................16

*In re Genzyme Corp. Sec. Litig.*,
    754 F.3d 31 (1st Cir. 2014)........................................................................4, 14, 15, 19

*In re Enzymotec Sec. Litig.*,
    2015 WL 8784065 (D.N.J. Dec. 15, 2015)...................................................................5, 6

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)...................................................................6

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ..........................................................................9, 17

*In re Mylan N.V. Sec. Litig.*,
    2023 U.S. Dist. LEXIS 88941 (W.D. Pa. May 18, 2023).................................2, 12, 14, 21

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
    2019 U.S. Dist. LEXIS 77120 (D. Mass. Apr. 30, 2019),
    *aff'd*, 955 F.3d 194 (1st Cir. 2020) .........................................................3, 5, 7, 14

*In re Philip Morris Int'l Inc.*,
    89 F.4th 408 (2d Cir. 2023) .....................................................................................3

*In re PolarityTE, Inc., Sec. Litig.*,
    706 F. Supp. 3d 1343 (D. Utah 2020)........................................................................13

*In re Talis Biomedical Corp. Sec. Litig.*,
    2022 U.S. Dist. LEXIS 222835 (N.D. Cal. Dec. 9, 2022) ..............................................5, 6

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2017 WL 1658822 (D.N.J. Apr. 28, 2017) .......................................................................7

*In re Viatris Inc. Sec. Litig.*,
    2024 U.S. Dist. LEXIS 170426 (W.D. Pa. Sept. 20, 2024),
    *appeal docketed*, No. 24-2977 (3d Cir. Oct. 24, 2024).........................................................2

*In re Viropharma, Inc. Sec. Litig.*,
    21 F. Supp. 3d 458 (E.D. Pa. 2014) .........................................................................6

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
    620 F. Supp. 3d 167 (D.N.J. 2022) ...............................................................6, 9, 14, 18

*Institutional Inv. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)....................................................................................5, 17

*Loc. 731 I.B. of T. Excavators & Pavers Pens. Tr. Fund v. Swanson*,
    2011 WL 2444675 (D.N.J. June 14, 2011) ..........................................................................6

*Lopes v. Fitbit, Inc.*,
    2020 U.S. Dist. LEXIS 52187 (N.D. Cal. Mar. 23, 2020)..................................................20

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
    363 F. Supp. 3d 476 (D. Del. 2019)...................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)..........................................................................................................9

*Martin v. GNC Holdings, Inc.*,
    2017 U.S. Dist. LEXIS 145530 (W.D. Pa. Sept. 8, 2017)..................................................18

*McClain v. Iradimed Corp.*,
    111 F. Supp. 3d 1293 (S.D. Fla. 2015) ..........................................................................5, 13

*McDermid v. Inovio Pharms., Inc.*,
    520 F. Supp. 3d 652 (E.D. Pa. 2021) ...............................................................................13

*Metzler Asset Mgmt. GmbH v. Kingsley*,
    928 F.3d 151 (1st Cir. 2019)............................................................................................18

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .......................................................................................20

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014).............................................................................................6

*Mulligan v. Impax Lab'ys, Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ....................................................................... *passim*

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ..................................................................................20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..........................................................................................................7

*Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*,
    2009 WL 4250061 (D.N.J. Nov. 25, 2009) .......................................................................18

*Payne v. DeLuca*,
    433 F. Supp. 2d 547 (W.D. Pa. 2006)................................................................................9

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    679 F.3d 952 (7th Cir. 2012) ...........................................................................................16

*Roofer's Pension Fund v. Papa*,
    2018 WL 3601229 (D.N.J. July 27, 2018).....................................................................13, 18

*Schaeffer v. Nabriva Therapeutics PLC*,
    2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020).......................................................6, 14, 15, 16

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018)......................................................................6, 7, 16

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992)..................................................................................................2

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
    499 F. Supp. 3d 49 (D. Del. 2020)......................................................................................20

*Smith v. Antares Pharm., Inc.*,
    2020 U.S. Dist. LEXIS 74627 (D.N.J. Apr. 28, 2020) .......................................................20

*Strougo v. Mallinckrodt,plc*,
    No. 3:20-cv-10100 (D.N.J. 2020) .........................................................................................1

*Strougo v. Mallinckrodt Pub. Co.*,
    2022 WL 17740482 (D.N.J. Dec. 16, 2022) .......................................................................17

*Studen v. Funko, Inc.*,
    2024 U.S. Dist. LEXIS 88650 (W.D. Wash. May 16, 2024)...............................................12

*Takata v. Riot Blockchain, Inc.*,
    2020 WL 2079375 (D.N.J. Apr. 30, 2020) ..........................................................................21

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ...............................................................................................15

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
    2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ...........................................................................15

*Wilkof v. Caraco Pharm. Lab'ys, Ltd.*,
    2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) ....................................................................2

*Wu v. GSX Techedu Inc.*,
    2023 WL 2207422 (D.N.J. Feb. 24, 2023) ..........................................................................20

*Yan v. Rewalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020)...............................................................................................6, 12

## RULES

Fed. R. Evid. 201(c) & Notes, sub. (e) .....................................................................................1

## INTRODUCTION

Far from "a straightforward case of securities fraud," Opp. (Dkt. 72) at 1, this is a case where the pleaded facts and judicially noticeable information show the opposite. The central issue—quality systems deficiencies at Integra's Boston facility—was disclosed on the first day of the putative class period. Investors learned again and again in real-time of the FDA's observations and findings of remediation failures and continued non-compliance. Defendants said they were trying to resolve the issues, never stated they had succeeded, and warned of the consequences if they failed. The Individual Defendants are not alleged to have profited by selling stock, and the Company itself purchased hundreds of millions of dollars of its own stock, during the putative class period. The Court should grant Defendants' motion to dismiss.[1]

## ARGUMENT

### I.    THE COURT SHOULD DISMISS THE RULE 10b-5(b) CLAIMS FOR FAILURE TO ALLEGE MULTIPLE ELEMENTS (COUNT I).

Plaintiffs do not challenge Defendants' statements of the law or the binding Third Circuit precedent supporting them. Br. (Dkt. 68-1) at 8-10, 25, 34.

#### A.    The Complaint Fails to Allege a Materially False or Misleading Statement.

##### 1.    The "Compliance" Statements Were Puffery or Otherwise Not False When Made.

###### a.    Inactionable Puffery

The compliance statements (Statements 12, 13, 20, 21) were puffery. Br. at 10-11.

---

[1] Plaintiffs cite no authority requiring a "formal motion" for the Court to consider the documents attached to the Karin Declaration. Opp. at 15 n.3. To the contrary, a party need only "request[] it" and "[n]o formal scheme of giving notice" is required. Fed. R. Evid. 201(c) & Notes, sub. (e). Accordingly, this Court's consistent practice has been to consider such documents on motions to dismiss in securities actions without formal motion. *See, e.g.*, *Barbee v. Amira Nature Foods, Ltd.*, No. 3:21-cv-12894, Dkt. 42-1 at 5 n.2, Dkt. 48 at 3 n.2 (D.N.J. 2021); *Strougo v. Mallinckrodt plc*, No. 3:20-cv-10100, Dkt. 79-1 at 5 n.2, Dkt. 105 at 2 n.3 (D.N.J. 2020).

Plaintiffs counter that the statements were verifiable.  Opp. at 26.  Not so.  For example, no metric can measure if "product safety and quality are paramount."  Statement 21.[2]  None of the statements declare Integra *was* in compliance with cGMP; instead, laden with empty superlatives, they explain Integra tried "to meet the highest and most current quality standards" and "adhere[]" to GMP to "deliver the highest quality products."  Statements 13, 21.  By contrast, Plaintiffs' cases involve representations of fact that the defendants *were* in compliance or had substantially *completed* remediation.  *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, *7, 18-19, 23 (N.D. Ill. Feb. 13, 2013); *Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 2010 WL 4184465, *2, 6 (E.D. Mich. Oct. 21, 2010) & Compl. (Dkt. 23), 2010 WL 1625949, ¶¶102, 118, 122.[3]

Plaintiffs argue the dismissed statements in three of Defendants' cases were less definitive than those made here.  Opp. at 26 n.10.  Not so.  They are very similar to the compliance statements made here.[4]  Plaintiffs try to distinguish four of Defendants' other cases on the basis that Integra operates in a heavily regulated industry (Opp. at 26 n.10), but so did the companies in those cases.

---

[2] Plaintiffs concede the accuracy of Ex. 1, and use it, proving its utility for the Court.

[3] Plaintiffs' suggestion that puffery cannot be decided on the pleadings is flatly wrong.  "The Third Circuit has routinely affirmed dismissal of securities fraud claims based upon statements that are inactionable puffery."  *In re Viatris Inc. Sec. Litig.*, 2024 U.S. Dist. LEXIS 170426, *77 (W.D. Pa. Sept. 20, 2024) (collecting cases), *appeal docketed*, No. 24-2977 (3d Cir. Oct. 24, 2024). Defendants cited a dozen cases showing as much.  Br. at 10-11 & n.2, 16 n.7, 24 n.12.  Even Plaintiffs' cases dismissed statements as puffery.  *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 n.12 (3d Cir. 1992); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 & n.2 (N.D. Cal. 2014); *Hospira*, 2013 WL 566805, at *24-25.

[4] *See In re Mylan N.V. Sec. Litig.*, 2023 U.S. Dist. LEXIS 88941, *28-29 (W.D. Pa. May 18, 2023) & Compl. (Dkt. 39) ¶283 (manufacture "to stringent quality standards"); *City of Warwick Ret. Sys. v. Catalent, Inc.*, 2024 U.S. Dist. LEXIS 114235, *12-13 (D.N.J. June 28, 2024) & Compl. (Dkt. 47), 2023 WL 6540972, ¶338 ("our continuous improvement activities devoted to operational and quality excellence" and "we have taken and continue to take steps to … ensure the integrity and quality of our products and services").

Br. at 10 n.2 (citing cases in banking, construction, food, and pharmaceutical industries).[5]

### b.     Not Materially False or Misleading When Made

The compliance statements were not false or misleading when made.  Br. at 11-13.  As noted, the statements did not represent that Integra was in compliance—only that Integra tried to comply.  To argue otherwise, Plaintiffs rely on inapposite cases.[6]  The Complaint's allegations here are more like those in *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 77120, *21-22 (D. Mass. Apr. 30, 2019), *aff'd*, 955 F.3d 194 (1st Cir. 2020), which acknowledged that such statements were not misleading given the disclosure of negative FDA correspondence.  Plaintiffs assert the "using" cGMP statements in *Ocular* were more "generic" than the cGMP statements here (Opp. at 26 n.9), but statements about using, following, adhering to, or being committed to cGMP are similar and all dismissible puffery.  Br. at 11-13.

Plaintiffs concede none of the compliance statements are about Boston, as opposed to Integra's dozen-plus facilities more generally, and do not attempt to distinguish the ruling in *Stryker* that a similar "generic statement" was not misleading because it "did not refer to any particular … facility."  865 F. Supp. 2d 811, 824 (W.D. Mich. 2012).  Defendants did not state

---

[5] The compliance statements are also inactionable opinions.  Br. at 11 n.3.  Plaintiffs try to distinguish *Philip Morris* by arguing that "standards governing clinical research" are "subjective" (Opp. at 26 n.10), but so too are Good Manufacturing Practices.  *Compare In re Philip Morris Int'l Inc.*, 89 F.4th 408, 419 (2d Cir. 2023) (describing GCP), *with* ¶¶44-45 (describing GMP); *see also Catalent*, 2024 U.S. Dist. LEXIS 114235, at *15-16 (GMP compliance statement was opinion).

[6] Two of the cases upheld claims against statements about specific steps the defendants had taken in response to a warning letter when the defendants had not, in fact, taken those steps.  Those statements are not analogous to Integra's general statements that it endeavors to comply.  *See In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, *4, 9, 17 (D.N.J. Mar. 21, 2019); *Mulligan*, 36 F. Supp. 3d at 957-59, 967-68.  For the third case, Plaintiffs point to two pre-class period statements that the court mentioned but did not rule on.  *See In re Able Lab'ys Sec. Litig.*, 2008 WL 1967509, *1, 3 & n.16  (D.N.J. Mar. 24, 2008).

remediation in Boston was *finished*.  In fact, Defendants warned the opposite—that remediation "continues" and "[u]ntil the issues … are resolved to the FDA's satisfaction," "[a]ny adverse regulatory action … could have a material adverse effect."  Ex. 12 at 33.[7]  Plaintiffs also contend "disclosure of the receipt of the 2021 Form 483 did not inform investors of the continued violations" (Opp. at 27), but this fails because the context of that disclosure—in the middle of a paragraph about quality systems issues at Boston—made clear that the FDA remained dissatisfied with Integra's Boston remediation  (*see* Ex. 12 at 33).  The details of which specific quality systems issues remained were not material in this context.  In fact, some courts have held Form 483s need not be disclosed at all.  *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 35, 42 (1st Cir. 2014).

Finally, Plaintiffs concede that Defendants cannot be liable "where the full truth was revealed."  Opp. at 27.  Although they argue "the FE allegations establish the ongoing, unremediated cGMP failures at the Boston Facility" (Opp. at 27), Plaintiffs fail to explain how the FE allegations painted a materially different picture of Boston's compliance status from the publicly available FDA warning letters. *See, e.g.*, Br. at 29 n.14; Revised App'x A (filed herewith); Opp. at 6 (acknowledging "Defendants disclosed [2019 Warning Letter] to investors").

> **2.     The "Remediation" Statements Were Inactionable Forward-Looking Statements, Opinions, or Otherwise Not False When Made.**
>
> **a.     Protected by Safe Harbor for Forward-Looking Statements**

Plaintiffs concede that Statements 14, 16, 18, 19, 22-26, and 28 were identified as forward-looking. Br. at 13; Opp. at 29-31. They argue these statements were not really forward-looking because they implicated current or past events. Opp. at 29. However, Plaintiffs cite only Statements

---

[7] These facts distinguish Plaintiffs' case, where the company had only one facility for most of the class period and had assured it had finished responding to an FDA warning letter issued to that facility.  *See Able*, 2008 WL 1967509, at *7, 14-15 & Compl. (Dkt. 66), 2006 WL 2738736, ¶177.

14 and 16 for this proposition. In any event, Plaintiffs are wrong.  The statements Defendants contend are forward-looking (*see* Br. at 13 n.4) are about how likely Integra is to achieve a goal in the future—not how much Integra has done in the past or present to achieve that goal.[8]

The statements at issue are protected under the first prong of the safe harbor because they were surrounded by meaningful cautionary language.  Br. at 13-14.  Although Plaintiffs argue the language was too "generic," every risk identified in the Opposition was disclosed.  *Compare* Opp. at 31 ("failure to undertake necessary remediation efforts"), *with* Ex. 19 at 33 ("We cannot give any assurances that the FDA will be satisfied with our response."); *compare* Opp. at 31 ("Boston Facility's persistent non-compliance"), *with* Ex. 19 at 33 (disclosing two Form 483s, a warning letter, and anticipation of third Form 483); *compare* Opp. at 31 ("deciding to relocate its operations to a new facility"), *with* Ex. 14 at 1-2 (Integra "will relocate from its existing facility … in South Boston" to "the Braintree facility"); *see also* Br. at 4-5.  Contrary to Plaintiffs' argument (Opp. at 31 n.13), these disclosures are very similar to the disclosures in Defendants' cases.[9]  By contrast,

---

[8] Plaintiffs' cases (*Conduent* and *Enzymotec*) concerned past progress and are inapposite for this reason.  *See also Cont'l Gen. Ins. Co. v. Olafsson*, 2024 WL 4263211, *11 (D.N.J. Sept. 23, 2024) (not identifying which statements concerned present or future).  Plaintiffs' citation to *Institutional Investors Group v. Avaya, Inc.* is puzzling because there the Third Circuit **upheld** similar "on track" statements.  *See* 564 F.3d 242, 254-59 (3d Cir. 2009) (safe harbor applied despite assertion that present situation "makes the future projection attainable" because "[s]uch an assertion is necessarily implicit in every future projection").

[9] *Compare Ocular*, 2019 U.S. Dist. LEXIS 77120, at *30 n.10 ("[a]dequate resolution of the outstanding Form 483 inspectional observations ... is a prerequisite to the approval of the [new drug application]"), *with* Ex. 24 at 11-12 ("resumption of manufacturing" depends on, among other things, "ability to remediate quality systems violations"); *compare In re Talis Biomedical Corp. Sec. Litig.*, 2022 U.S. Dist. LEXIS 222835, *14 (N.D. Cal. Dec. 9, 2022) (manufacturing "lines are not complete and could incur substantial delays") *and McClain v. Iradimed Corp.*, 111 F. Supp. 3d 1293, 1303 (S.D. Fla. 2015) ("[i]f the FDA does not agree with our proposed CAPA plan, … the FDA could initiate an enforcement action"), *with* Ex. 23 at 35 ("Until the issues cited by the FDA are resolved to the FDA's satisfaction, the FDA may initiate additional regulatory action.").

Plaintiffs' cases are not about disclosure of risks related to quality remediation and the defendants there either failed to disclose the relevant risk (*Swanson*, *Innocoll*, and *Endo*) or the risk had already transpired (*Viropharma*, *Jinkosolar*, *Enzymotec*, and *Becton*).

The statements are also protected under the second, actual knowledge, prong because, just like in Plaintiffs' case, they "have not alleged that Defendants knew the [project] could not be completed within the timeline provided." *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 211 (E.D. Pa. 2021) (only upholding claims against statements made after defendants knew timeline was "impossible"); Br. at 14, 25-34; §I.B below.  Plaintiffs do not distinguish Defendants' cases on this point (*Talis* and *Nabriva*).[10]

### b.    Inactionable Opinions

Many of the remediation statements (Statements 9-10, 14, 16, 22-25, 27) are inactionable opinions.  Br. at 15-16.  Plaintiffs argue these statements are not opinions because they "provided explanations of 'a thing done,'" but Plaintiffs' only examples are parts of the statements that Defendants do ***not*** contend are opinions.  Opp. at 28; Br. at 16 n.6.  A "qualitative expression" of how a review went—such as "I call it a ***successful*** dress rehearsal" (*id.*)—is an opinion.  *See Yan v. Rewalk Robotics Ltd.*, 973 F.3d 22, 32 (1st Cir. 2020).  Plaintiffs do not attempt to distinguish Defendants' case on this point, which upheld an opinion similar to the statements here.  *Compare, e.g.*, Statement 22 ("Boston remediation continues to progress well."), *with Catalent,* 2024 U.S. Dist. LEXIS 114235, at *18-19 ("our progress in terms of addressing those requiring engineering

---

[10] The most Plaintiffs argue as to actual knowledge is in a footnote (Opp. at 35 n.18), but FE 15 only alleges that "[i]n March 2024, the Company's auditor … visited the Boston Facility and stopped" a process run.  ¶¶161-63.  All of Defendants' timeline statements predated March 2024, and FE 15 does not assert that an auditor stopping one process run would impact the timeline to relaunch the entire facility or that Defendants knew of this one stoppage or its implications.

changes and manufacturing pause have progressed well."). Plaintiffs' cases are not even about quality remediation.[11]

Plaintiffs do not argue that the remediation opinion statements were insincere or that embedded facts were false. Although Plaintiffs argue they were omissive, they cite only the statements that remediation was "on track." Statements 23-26; Opp. at 28-29. Plaintiffs are also wrong about these "on track" statements. They argue these statements omitted that Integra "systemically fail[ed] to implement remedial actions" (Opp. at 29), but the Complaint does not contain facts to support that assertion. These "on track" statements were made on September 6, 2023, October 25, 2023, and February 28, 2024. Ex. 1 at Nos. 23-26. Because no FE was at Integra on September 6 or October 25, there is no basis to infer that Integra was not on track around those dates. Plaintiffs also do not explain why FE 15's only concern—about condensation on three refrigerators (¶162)—was material to assessing if Integra was on track to relaunch Boston several months later. Plaintiffs' fail to distinguish Defendants' cases about quality remediation on this point (*Catalent* and *Ocular*), and their own cases—about undisclosed kickback and price gouging schemes fueling drug sales—are clearly distinguishable. *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2022 WL 889158, *2, 10-11 (E.D. Pa. Mar. 25, 2022); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, *3-4, 14 (D.N.J. Apr. 28, 2017).

Finally, Plaintiffs fail to respond to Defendants' independent argument that Statements 9, 16-17, 19, and 21 are puffery. Br. at 16 n.7. Accordingly, these statements should be dismissed.

---

[11] Two concluded the statements were opinions, *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 176 (2015); *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 684 (3d Cir. 2023); one concerned a specific observation of fact, *see SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 900 (E.D. Pa. 2018) ("[w]e also saw a 59% reduction in abuse from the new formulation"); and the fourth did not individually analyze which statements were opinions, *see Olafsson*, 2024 WL 4263211, at *11.

-7-

### c.   Not Materially False or Misleading When Made

The remediation statements were not false *when made* simply because remediation ultimately failed, and Plaintiffs concede falsity cannot be premised solely on that.  Br. at 17-21.

Significant Efforts to Remediate Statements Not False or Misleading.   The significant effort statements were not false or misleading.  Br. at 17 & n.8.  Plaintiffs do not seriously contest that Integra took the remediation actions described in the 2019 Warning Letter and other documents incorporated by reference into the Complaint.  Br. at 18.[12]  Thus, this case is unlike Plaintiffs' cases (Opp. at 18), where the defendants stated they took specific actions that they did not take.  *See Dr. Reddy's*, 2019 WL 1299673, at *4, 9, 17; Ex. A (*HeartWare*) at 31-34.

Instead, Plaintiffs misconstrue Defendants' statements by asserting that they "warrant[ied] the success of [the remediation] efforts."  Opp. at 17-18.  Not so.  Characterization of the efforts as "significant" (Statement 1) was not a guarantee—a company can try hard and still fail, as Integra warned.  Ex. 3 at 2 ("We cannot … give any assurances that the FDA will be satisfied with our response.").  Nor was Statement 14 a guarantee.  If anything, the fact that Integra had been "working for the past couple years"—and was still receiving FDA observations and findings— showed success was not guaranteed.  By contrast, Plaintiffs' cases are distinguishable because the defendants in those cases did state the remediation was essentially complete.  Opp. at 17.[13]

---

[12] Plaintiffs complain about how Defendants use one of these documents, but they cite nothing and ignore Defendants' case approving the same use (*Bartesch*).  Opp. at 18 n.4.

[13] *See Mulligan*, 36 F. Supp. 3d at 957-59 ("as of today we're not aware of any outstanding issues left on" FDA warning letter); *Hospira*, 2013 WL 566805, at *21 ("we have essentially completed all of the activities … in our response to the [FDA] warning letter"); Ex. A (*HeartWare*) at 21-32 ("we have made significant progress in our effort to address the FDA warning letter") & Compl. (Dkt. 29), 2016 WL 3549251, ¶72 ("analyst asked [CEO] 'Where are we today with respect to [product]' in light of the Warning Letter?  [CEO] responded, 'we are finally really there'").

Plaintiffs also argue that Defendants "minimiz[ed]" the remediation struggles and omitted the specific "shortcomings of [their] efforts," but none of Plaintiffs' cases required such detail when the underlying problem was already public, as it was here. Opp. at 18-19.[14] Investors knew Integra's remediation had not been successful from Integra's repeated—and repeatedly disclosed—receipt of FDA correspondence. Nothing more was required.[15]

Plaintiffs' FE allegations fail because they do not "support the probability that the source possesses the information alleged," and do not show that information known to them was inconsistent with the public disclosures. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155-56 (3d Cir. 2004). *See, e.g.*, Br. at 19-20, 28-30; Revised App'x A. Plaintiffs do not attempt to distinguish Defendants' cases on this point (*Chubb*, *Payne*, *Intelligroup*), and Plaintiffs' cases are distinguishable because FEs in those cases heard contradictory facts directly from management or regulators.[16]

---

[14] *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 266 n.2 (2024) (not about quality issues and identifying discussion of half-truths as dicta); *Hall v. Johnson & Johnson*, 2019 WL 7207491, *15-16 (D.N.J. Dec. 27, 2019 ) ("commitment to quality" statements misleading where underlying problem—asbestos in talc products—was undisclosed); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 181, 186 (D.N.J. 2022) ("ship hold … was in place to allow [company] to implement 'some improvements'" misleading for omitting that FDA had privately said "[w]e don't think you should be shipping this product").

[15] *See In re Discovery Lab'ys Sec. Litig.*, 2006 WL 3227767, *11 (E.D. Pa. Nov. 1, 2006) ("factual intricacies and detailed internal structure of the Company's operations and its relationship with its contract manufacturer" need not be disclosed where the "warning letters are publicly available"); *Anderson v. Stonemor Partners, L.P.*, 296 F. Supp. 3d 693, 697-98, 702-03 (E.D. Pa. 2017) (no omission where company "disclosed that its ability to pay distributions depended on its revolving credit facility," despite allegations that company was "severely cash-strapped"), *aff'd*, 927 F.3d 710 (3d Cir. 2019).

[16] *See Prudential*, 70 F.4th at 691-92 (FE recounted meetings where company discussed "taking a significant reserve charge due to … negative mortality experience"); *Mulligan*, 36 F. Supp. 3d at 963 (FE "was present in meetings with the FDA" and "felt the asserted remediation time frames were unrealistic"); *Becton*, 620 F. Supp. 3d at 186 (FEs recounted what two

(continued...)

Status Statements Not False or Misleading. Statement 9 was not false or misleading. Br. at 19. Contrary to Plaintiffs' suggestion (Opp. at 20), Coleman's "actual words" were ***not*** that remediation of Boston was complete. Instead, he said the second component of Integra's "global manufacturing footprint operations and optimization" plan was "now complete." Ex. 11 at 10-11. In any event, Integra's later disclosure of the 2021 Form 483 and that Integra "continues to" remediate Boston informed investors that remediation was not complete. Ex. 10 at 34.

Statement 10 was not false or misleading. Br. at 19. Plaintiffs do not explain how it could be misleading when it does not refer to Boston specifically. Regardless, ***characterization*** of remedial actions (*e.g.*, "enhanced rigor") was puffery. Plaintiffs' cases (*Mulligan* and *Hospira*) are distinguishable because there the defendants represented they took specific actions that they had not taken, whereas Integra clearly did take the actions (Br. at 18), they just ended up not being enough to satisfy the FDA, and Plaintiffs do not dispute that Integra received "better FDA inspection results" at other facilities.

Statements 14 and 27 were not false or misleading. Br. at 19-20. They characterize audit results about which Plaintiffs concede the Complaint pleads nothing. Opp. at 21-22. Plaintiffs argue the whistleblower report contradicts Statement 14, but the Complaint itself alleges that Integra placed the identified product and any new product on hold shortly after the report was made and expanded the hold to in-process product in January 2023. ¶¶139-41. Because Integra attempted to remediate the issues identified in the report ***before*** the March audit, it cannot show that Statement 14 about the March audit was misleading. And the fact that the FDA made

---

individuals told them); *In re CommVault Sys., Inc. Sec. Litig.*, 2016 WL 5745100, *7 (D.N.J. Sept. 30, 2016) & Hr'g Tr. (Dkt. 75), 2014 U.S. DIST. CT. MOTIONS LEXIS 353256, at 6-8 (FE recounted meeting where executive said growth rate was far lower); *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 492-93 (D. Del. 2019) (FEs recounted directives from management to place loans into forbearance).

observations in a Form 483—issued months *after* the March audit, on May 17, 2023—about Integra's response to the whistleblower report does not show that De Witte knew about those observations when commenting on the March audit in April 2023. ¶¶150-53. In a footnote, Plaintiffs argue that Statement 27 was misleading because it did not "disclos[e] continuing failures" and "omitted adverse facts" (Opp. at 22 n.6), but the only allegations cited by Plaintiffs are those from FE 15, which are addressed above. *See* I.A.2.a-b.

Patient Safety Statements Not False or Misleading. Plaintiffs concede that they do not allege that any relevant undisclosed patient complaints existed when Statements 3 and 17 were made, that *quality systems* issues are distinct from *quality* issues, and that Defendants warned the quality systems issues could give rise to safety issues. Br. at 20-21; Opp. at 22. Plaintiffs instead argue Statements 3 and 17 "falsely reassured investors about Integra's quality systems," but Defendants continued to disclose the continuing quality systems issues in parallel. *See* Ex. 6 at 31-32 ("warning letter relates to quality systems issues," which Integra "continues to" remediate); Ex. 23 at 34-35 (similar). Thus, the market could not have interpreted these statements to mean that everything was fine at Boston.

### 3. The "Capacity" Statements Were Inactionable Forward-Looking Statements or Opinions, or Otherwise Not False When Made.

#### a. Protected by Safe Harbor for Forward-Looking Statements

Four of the capacity statements (Statements 4, 5, 7, 15) are protected by the safe harbor. Br. at 21-22. Plaintiffs' only specific response to this entire section of Defendants' Brief is in a footnote; the arguments in their general safe harbor section do not apply. For example, Plaintiffs do not indicate which of the four capacity statements "implicate[] current or past events" or contain "[a] mixed present/future statement"—and none do. Opp. at 29; Br. at 21 n.10.

As to the first prong, Plaintiffs concede these statements were identified as forward-

looking.  They assert "the cautionary language itself denied that the deficiencies restricted production."  Opp. at 31 n.12.  Not so.  Integra truthfully disclosed that "[t]he ***warning letter*** does not restrict the Company's ability to manufacture," but that the FDA might not be satisfied with the remediation and that actual results could differ materially based on "the success of our quality initiatives" and "our ability to remediate matters identified in inspectional observations or warning letters issued by the FDA."  Ex. 3 at 2; *see also* Ex. 12 at 15, 33 (similar); Ex. 6 at 12-13, 33 (more about capacity risks).  Plaintiffs fail to address three of Defendants' cases on this point (Br. at 22), and cite no cases about the risk of quality systems issues on capacity predictions (Opp. at 30-31).

Plaintiffs also do not plead actual knowledge of falsity under the second prong.  §§I.B, III.

### b.        Inactionable Opinions

Three of the capacity statements (Statements 5, 6, 8) are inactionable opinions.  Br. at 22-23.  Contrary to Plaintiffs' argument (Opp. at 28), Statement 5 (Boston is "pretty much running normal capacity") is an opinion because it is a "qualitative expression."  *See Yan*, 973 F.3d at 32.  Plaintiffs cite no cases about manufacturing capacity and ignore Defendants' case (*Studen*).

Plaintiffs do not argue that the capacity opinions were insincere or that embedded facts were false.  They argue that Statement 8 omitted that Integra "systemically fail[ed] to implement remedial actions."  Opp. at 29.  But Integra's remedial struggles and the risks of failure were disclosed, as explained elsewhere.  *See In re Amarin Corp. PLC Sec. Litig.*, 2022 U.S. App. LEXIS 16326, *8-9 & n.7 (3d Cir. June 14, 2022).  In any event, remediation of quality systems issues is a different topic from manufacturing capacity, and Plaintiffs do not respond to *Mylan*, which rejected a challenge to an opinion about manufacturing capacity for this exact reason.  *See* 2023 U.S. Dist. LEXIS 88941, at *35-37.

Finally, Plaintiffs fail to respond to Defendants' independent argument that Statements 5 and 8 are puffery.  Br. at 24 n.12.  Accordingly, these statements should be dismissed.

### c.      Not Materially False or Misleading When Made

Conceding that none of the capacity statements were false, Plaintiffs resort to arguing they were misleading.  Opp. at 23-24.  But these statements were not misleading because Defendants disclosed the FDA correspondence and the risks to Boston's manufacturing capacity if remediation failed.  Br. at  24.  Defendants also promptly disclosed when Boston no longer manufactured at capacity.  ¶170.  By contrast, Plaintiffs' cases (*Inovio*, *Papa*, and *Coinbase*) do not even concern quality issues and involved ***undisclosed*** risks.  Citing nothing, Plaintiffs argue Defendants' risk disclosures were too "generalized" (Opp. at 24-25), but virtually the same risk disclosure was upheld in *McClain*, 111 F. Supp. 3d at 1303.  Plaintiffs quibble that the disclosure in *McClain* followed a Form 483 instead of a warning letter (Opp. at 25 n.8), but that distinction has no bearing on whether a disclosure is specific enough to warn investors of the relevant risks.

Additionally, the capacity statements were not misleading because they concern Boston's capacity—not its quality systems.  Br. at 25 n.13.  Plaintiffs respond that "investors would have understood Defendants' assurances regarding supply to include their ability to do so in accordance with basic manufacturing regulations" (Opp. at 24), but their sole case (*Mulligan*) involved statements about quality remediation—not capacity.  By contrast, Defendants cite two cases dismissing statements about capacity (*PolarityTE* and *Anadigics*).  Plaintiffs try to distinguish these cases by arguing that those companies did not receive regulatory warnings (Opp. at 25 n.8), but that distinction does not address whether investors would read implicit representations about quality into statements about capacity.

### B.      The Complaint Fails to Plead a Strong Inference of Scienter.

The Opposition relies on a strawman—that it is enough to allege Defendants knew Boston had cGMP issues.  Since Defendants ***disclosed*** during the class period that Boston ***had*** cGMP issues, including that the FDA found the Company's remediation efforts to be inadequate,

-13-

Plaintiffs must show that Defendants knew of ***other undisclosed*** facts that ***contradicted*** their public statements—which Plaintiffs have not done and cannot do.  Br. at 25-34.

### 1. FDA's Regulatory Correspondence

The three Form 483s and two warning letters undermine scienter because Integra promptly disclosed them.  Br. at 25-26.  Plaintiffs' cases are distinguishable on this basis.[17]  Plaintiffs incorrectly claim Defendants' cases did not involve "repeated FDA warnings."  Opp. at 37 n.19.[18]

Plaintiffs focus on Defendants' purported knowledge of the FDA correspondence (*see* Opp. at 33), but that is not enough to establish scienter.  *See Abiomed*, 778 F.3d at 245; *Schaeffer v. Nabriva Therapeutics PLC*, 2020 WL 7701463, *13 (S.D.N.Y. Apr. 28, 2020); *In re Columbia Lab'ys, Inc. Sec. Litig.*, 2013 WL 10914123, *4 (D.N.J. June 11, 2013).  Plaintiffs' cases are inapposite because the FDA correspondence there "clearly contradict[ed]" statements like "the company is currently in substantial compliance with cGMP regulations."  *See Nabriva*, 2020 WL 7701463, at *12-13 (distinguishing *Dr. Reddy's* and *Able*).[19]  Where, as here, Defendants did not represent that Boston was in compliance or that the issues had been remediated, the FDA

---

[17] *See Dr. Reddy's*, 2019 WL 1299673, at *15 (scienter where statement directly "contradicted two prior *undisclosed* FDA Form 483 observations") (emphasis added); *Becton*, 620 F. Supp. 3d at 194 (scienter based on CEO's knowledge of undisclosed meeting with FDA); *Mylan*, 2023 U.S. Dist. LEXIS 88941, at *54-55 (company did not, or did not immediately, disclose Form 483s).

[18] *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 239 (1st Cir. 2015) (untitled letter, warning letter, FDA meetings, FDA letter about improper marketing, FDA compliance audit, DOJ investigation; "[f]or a 38-month period ... the FDA repeatedly raised concerns"); *Genzyme*, 754 F.3d at 35-39 (two Form 483s, warning letter, repeated other FDA correspondence, and FDA lawsuit against company); *Ocular*, 2019 U.S. Dist. LEXIS 77120, at *7-17 (two Form 483s and other FDA correspondence).

[19] *Dr. Reddy's*, 2019 WL 1299673, at *15 (statement that problems were a "one site specific issue" contradicted "two prior undisclosed FDA Form 483 observations regarding two other facilities"); *Able*, 2008 WL 1967509, at *16 (scienter where FDA correspondence showed statements about "compliance with FDA standards and other quality control issues were false").

correspondence did not contradict Defendants' statements, and so their knowledge of that correspondence is insufficient to plead scienter. *See Nabriva*, 2020 WL 7701463, at \*12-13.

Plaintiffs also argue Defendants "conceal[ed] the details of the 2021 Form 483." Opp. at 36. Defendants did no such thing. Integra disclosed receipt in its next quarterly filing in the middle of a paragraph all about quality systems issues at Boston. Ex. 12 at 33. As noted, courts have held that Form 483s generally need not be disclosed at all. *Genzyme*, 754 F.3d at 35, 42.

### 2.    2022 Internal Complaint

Plaintiffs concede that the internal complaint cannot establish scienter for any challenged statement due to its timing. Br. at 26-27. Plaintiffs instead focus on another strawman—that Defendants' knowledge of the internal complaint alone is sufficient to plead scienter. Opp. at 35. But as noted, Plaintiffs must also show that Defendants knew or recklessly disregarded that the internal complaint made their statements false or misleading, and the Complaint fails to show that.

Plaintiffs contest Defendants' argument that until an investigation concludes, an internal complaint's allegations are unverified and do not support scienter. Opp at 38. Plaintiffs claim that *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514 (6th Cir. 2023) is inapposite because the investigation there was still pending during the class period. Opp. at 38 n.23. But that argument does not help Plaintiffs since they have not alleged when the internal investigation here concluded and what its findings were. Br. at 26-27. In addition, other cases have come to the same conclusion as *ServiceMaster* even when the investigation concluded during the class period. *See, e.g.*, *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007); *Christian v. BT Grp. PLC*, 2020 WL 1969941, \*6 (D.N.J. Apr. 24, 2020).[20]

---

[20] *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222, \*14 (N.D. Ill. Feb. 5, 2020) is distinguishable because there the employee complaint alerted the defendant to compliance issues that it failed to disclose. Here, the issues were disclosed, before and after the internal complaint.

Finally, Plaintiffs' own Complaint belies their claim that Integra "failed to properly investigate and fully address [the internal complaint] for nearly six months" (Opp. at 38), as the Complaint concedes that Integra "launch[ed] an internal investigation," identified "37 lots of product impacted by quality issues during the investigation," and "implemented a hold on the production of any new product" out of Boston—all within two months (¶¶139-40).

### 3.    Former Employee Allegations

The FE allegations are consistent with Defendants' statements, and none support an inference that Defendants knew information that contradicted their public statements. Further, the FEs were too poorly positioned to speak to the subject matter of Plaintiffs' claims, were too junior to interact with the Individual Defendants, or were not involved in remediation planning or the Company's public disclosures. Br. at 29-30.

Plaintiffs respond that the FEs allege some Defendants attended meetings where quality systems issues were discussed. Opp. at 34. Plaintiffs cite only one case, but even that case[21] and others prove that attending meetings is not sufficient. *See Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 955 (7th Cir. 2012) (no scienter where plaintiffs alleged executives "attended meetings at which quality issues were discussed"); *In re Dura Pharms., Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1141 (S.D. Cal. 2008) (similar).

Plaintiffs must allege that the Defendants learned facts at those meetings that made their public statements misleading. But the Opposition does not identify any such facts, which is fatal. *See Nabriva*, 2020 WL 7701463, at *13. Left without anything concrete, Plaintiffs resort to FE

---

[21] *See Hospira*, 2013 WL 566805, at *26 (noting that "[a]lthough allegations that executives attended meetings or received reports on a problem do ***not*** exclusively support an inference of scienter," attendance contradicted statements that facilities were "well-maintained"). *Endo* did not even discuss CW allegations. 351 F. Supp. 3d at 906.

allegations that Boston's issues "were widely known," and that scienter "can be readily inferred." Opp. at 34-35. Such "must have known" allegations are wholly insufficient. *See Chubb*, 394 F.3d at 155; *Chan v. New Oriental Educ. & Tech. Grp. Inc.*, 2019 WL 2865452, *11 (D.N.J. July 3, 2019); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 360-61 (D.N.J. 2007).

### 4.    Braintree Facility

Plaintiffs claim that Integra never intended to remediate Boston because Integra's Board approved opening a Braintree facility in April 2022, while Defendants discussed Boston's remediation "well into 2023." Opp. at 39. But the more plausible inference is that Integra planned to do both—open Braintree while remediating and then manufacturing out of Boston in the meantime. Br. at 31; Ex. 10 at 41. Indeed, news reports disclosed the relocation as early as May 2022 (Exs. 13, 14), which undermine any suggestion that the plan was hidden from investors. Plaintiffs do not respond to these arguments. Opp. at 39.[22]

### 5.    Generic Scienter Allegations

Plaintiffs' generic scienter allegations also fail. Br. at 32-33. *First*, Plaintiffs point to Defendants' public statements about Boston. Opp. at 36. Speaking about remediation does not mean the speaker knows every detail about those efforts or could possibly predict those efforts would fail. Also, Plaintiffs only cite statements from two Defendants in September and October 2023, which say nothing about most of the putative class period or other Defendants. Opp. at 36.[23]

---

[22] *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2022 WL 17740482, *8 (D.N.J. Dec. 16, 2022) is inapposite because the underlying issue—a litigation settlement—was not disclosed.

[23] Plaintiffs' cases look nothing like this one. They involved "unprecedented fines … and criminal investigations," *Energy Transfer*, 532 F. Supp. 3d at 234, or companywide operating margins "50% lower" than expected, *Avaya*, 564 F.3d at 270-71—not highly granular issues like "frozen skins … thaw[ing] in the basement" and "insulating tape" on refrigerators (¶¶109, 162).

*Second*, Plaintiffs invoke the "core operations" theory and contend Boston made Integra's "all-important" products (Opp. at 39), ignoring that the revenue of those products never exceeded 6% of Integra's revenue, and that Boston was one of more than a dozen Integra facilities.  Br. at 32-33.  Plaintiffs do not address Defendants' cases (*GNC* and *Kingsley*).  Plaintiffs' cases are inapt.[24]

*Third*, Plaintiffs point to Defendants' purported "priority to maximize profits" (Opp. at 38),  but "desire[s] to maximize profit ... are motives that any corporation or officer would share … [and] they are insufficient to support a strong inference of scienter."  *Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, 2009 WL 4250061, *8 (D.N.J. Nov. 25, 2009).[25]

### 6.    Viewed Holistically, the Non-Culpable Explanations Are More Plausible Than an Inference of Scienter.

People do not commit fraud on a whim and for no reason.  The Opposition concedes Defendants did not profit from stock sales and did not otherwise "seek to capitalize financially," and Integra repurchased hundreds of millions of dollars of its own stock.  Opp. at 40-41.  Plaintiffs respond that they "need not necessarily demonstrate motive."  *Id.*  True enough, but that misses the point—the absence of motive, while not fatal, forcefully undermines scienter.  Br. at 33-34.[26]

At bottom, the more plausible inference is that Defendants underestimated how difficult it

---

[24] *See Energy Transfer*, 532 F. Supp. 3d at 232 (noting that plaintiffs sought a core operations inference, but not discussing the doctrine at all or determining whether it applied); *Becton*, 620 F. Supp. 3d at 196-98 (core operations inference for one individual defendant—but not three others—where "over half of [company's] total annual revenue" came from product at issue).

[25] Plaintiffs cite *In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, *11-13 (D.N.J. Oct. 27, 2005) to argue mere "access to information" can establish scienter, but scienter there was inferred because a CW was directed to correct known accounting errors underlying the misstatements.

[26] Plaintiffs' case is in accord.  *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, *18 (D.N.J. July 27, 2018) ("The fact that only two of the Individual Defendants are alleged to have made insider sales undermines Plaintiff's claim that there was a motive to commit fraud").

would be to remediate Boston. The Complaint at most shows Defendants were aware of problems at Boston, repeatedly disclosed FDA correspondence about the problems, stated they were trying to fix the problems, hoped those efforts would be successful, but knew and disclosed that there was a risk of failure. That is not fraud. *See Genzyme*, 754 F.3d at 42 ("full and prompt disclosure" of FDA feedback "further undercut any inference of fraudulent intent"); *Abiomed*, 778 F.3d at 244 (same); *Stryker*, 865 F. Supp. 2d at 833 ("most plausible inference, then, is that Defendants learned of the true cost of the [compliance] program only as it was implemented").

## C. The Complaint Fails to Plead Loss Causation After May 23, 2023.

If the Complaint is not dismissed in its entirety (it should), Plaintiffs' putative class period should end no later than May 23, 2023, because later disclosures were not corrective. Br. at 34-36. ***Indeed, Lead Plaintiff Pembroke itself alleged in its original complaint (filed on September 12, 2023) that the purported fraud was revealed in April and May 2023.*** Dkt. 1, ¶¶41-51.

Here, Plaintiffs fail to show how the final three disclosures, made after May 2023, "revealed new information" that had been fraudulently withheld, particularly given the previously disclosed Form 483s, warning letters, production pause, and product recall. Opp. at 42-43. The Complaint itself characterizes these disclosures as "***continuing*** negative impacts" from "deficiencies that the FDA ***had been flagging for years***." ¶¶196-99, 202-03, 213.[27] Plaintiffs seek to lower the bar by arguing "[n]othing more is required" than alleging "new information" and a stock drop, but they ignore that disclosures of "the magnitude and scope" or "the seriousness and extent" of a ***previously known*** problem do not count as "new information." Opp. at 41-43; Br. at 34-36; *Cent. States v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 74-75 (2d Cir. 2013) (no

---

[27] Plaintiffs continue to contend that disclosure of De Witte's retirement was corrective, but ignore Defendants' arguments and cases squarely foreclosing that contention. Br. at 35 n.16.

loss causation; plaintiffs were "on notice" due to prior disclosures); *In re Boston Sci. Corp. Sec. Litig.*, 708 F. Supp. 2d 110, 128-29 (D. Mass. 2010) (disclosure of a recall did not establish loss causation where facts leading to the recall were disclosed earlier); *aff'd*, 649 F.3d 5 (1st Cir. 2011). Thus, Plaintiffs fail to distinguish Defendants' cases. Additional information showing only the scope of the alleged fraud in those cases did not count as "new information." So too here. Opp. at 44 n.29.[28] For example, a July 2024 decision to implement a company-wide "compliance master plan" did not reveal anything new about Boston, for which the Company and the FDA had disclosed cGMP deficiencies and remediation struggles for years.

Plaintiffs suggest that loss causation is "a fact-intensive argument inappropriate for resolution in Defendants' favor at the pleading stage." Opp. at 42. They point out that *Dalberth v. Xerox Corp.*, 766 F.3d 172 (2d Cir. 2014) was decided on summary judgment, but nothing in that opinion suggests it is improper to dismiss on the pleadings when, as here, "there [a]re sufficient disclosures made prior to … the claimed corrective dates." *Id.* at 188; *see* Br. at 35-36 (citing motion to dismiss cases, including *Fitbit*, *Uniti Fiber*, and *Meyer*). Further, courts in this District (including this Court) often dismiss for failure to plead loss causation. *See Smith v. Antares Pharm., Inc.*, 2020 U.S. Dist. LEXIS 74627, *26-27 (D.N.J. Apr. 28, 2020) (Shipp, J.); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*, 720 F. Supp. 2d 517, 563 (D.N.J. 2010); *Wu v.*

---

[28] Plaintiffs' reliance on *Hall* is inapt as that decision involved disclosures that revealed previously concealed and misrepresented information, including that Johnson & Johnson had known its talcum products contained asbestos since the 1970s, and that later corrective disclosures included "never-before-seen internal" documents about the cover-up. *Hall*, 2019 WL 7207491, at *6-7, 27-28. Plaintiffs' other cases are also distinguishable. *See Hull v. Glob. Digital Sols., Inc.*, 2017 WL 6493148, *12-15 (D.N.J. Dec. 19, 2017) (dismissing alleged corrective disclosure based on revenue miss and evaluating if SEC complaint can qualify as a corrective disclosure); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 292 (S.D.N.Y. 2008) (evaluating, at class certification, whether to shorten class period based on "inquiry notice").

*GSX Techedu Inc.*, 2023 WL 2207422, \*15 (D.N.J. Feb. 24, 2023).

Relying on the stock price declines, Plaintiffs argue that since the "market viewed these disclosures as 'surprising,'" they must be corrective. Opp. at 42-43. But investors can be "surprised" and a company's stock price can decline for many reasons besides revealed fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). Plaintiffs do not address this binding Supreme Court precedent.

## II.   PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II).

Plaintiffs concede the scheme claims should be dismissed (i) if the Court concludes the Complaint fails to plead scienter or loss causation, and (ii) to the extent the scheme claims rely solely on alleged misstatements. Br. at 36-37; Opp. at 45. Plaintiffs do not distinguish Defendants' cases showing that to support scheme liability the deceptive acts must have been ***designed*** to, and ***did***, deceive ***investors***, as opposed to a regulator. Br. at 37-38.[29] And, other than *ipse dixit* argument,[30] Plaintiffs fail to allege or argue how the purported conduct here (¶343) was ***designed*** to and ***did*** mislead ***investors***. Br. at 36-37. Regardless, Plaintiffs fail to allege which Individual Defendants performed the deceptive acts, a fatal flaw. *See Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, \*14 (D.N.J. Apr. 30, 2020). Plaintiffs concede attending meetings—the only real

---

[29] Plaintiffs' cases are inapt. In *Cognizant*, an officer who participated in a bribery scheme "knew that the way in which the bribe payments were ultimately disguised ... would result in Cognizant reporting overstated capitalized expenditures and overstated earnings," thereby directly deceiving investors. *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, \*16-17 (D.N.J. June 5, 2020). In *Mylan*, the scheme claim survived because the defendants only argued that it was "entirely derivative" of the surviving misrepresentation claim. 2023 U.S. Dist. LEXIS 88941, at \*56.

[30] The allegation of whistleblower retaliation fails to support scheme liability because Davis's alleged interaction with FE 13 was innocuous (Br. at 41-42) and FE 13 admits that he left the Company voluntarily (¶129).

"conduct" pleaded against the Individual Defendants (Opp. at 37)—is not deceptive.  Br. at 38.

### III. THE COURT SHOULD DISMISS EACH CLAIM AGAINST EACH INDIVIDUAL DEFENDANT (COUNTS I, II, AND III).

Plaintiffs' failure to include a section to address the Individual Defendants is an implicit concession that they have engaged in group pleading.  Br. at 38; Opp. at 32 n.14.  The Opposition also waives responses to many of Defendants' other arguments.

Control Person Liability (Count III).  The Opposition does not address control person liability at all.  Thus, Plaintiffs concede that "culpable participation" is failed for each Individual Defendant (Br. at 38-40), and that Davis and Leonard did not "control" Integra (Br. at 42, 44).

Scheme Liability (Count II).  As discussed above in Section II, this claim fails.

Rule 10b-5(b) Misstatement Claims (Count I).  As explained elsewhere, none of the Individual Defendants' statements were misleading.  Plaintiffs concede Arduini made no challenged statements.  Br. at 40.  Plaintiffs also concede that Count I is not asserted against Davis.

Plaintiffs have likewise not rebutted the Individual Defendants' other scienter arguments.  *First*, Plaintiffs do not meaningfully respond to Knight's arguments.  Br. at 43.  It is unreasonable to assume Knight, a CFO, is an "expert on remediation efforts."  Opp. at 40 n.26.

*Second*, the Opposition barely addresses Mosebrook, merely arguing that his "role as a signor of the FY-2021 Form 10-K" makes "it unreasonable [to] assume his ignorance of [the] status of the Boston Facility remediation."  Opp. at 33 n.16.  But that is not the test.  Plaintiffs must allege that Mosebrook knew (or recklessly disregarded) that the challenged statement in the Form 10-K was misleading.  Plaintiffs do not answer Defendants' authorities squarely rejecting claims against accounting officers who merely signed Form 10-Ks.  *See* Br. at 45 n.20.  Plaintiffs' case is in accord.  *See Energy Transfer*, 532 F. Supp. 3d at 228 (no scienter for executive who was not "alleged to have made any misstatements beyond signing the 10-K").

*Third*, as to Arduini, Leonard, Coleman, Davis, Anderson, and De Witte, Plaintiffs continue to rest their scienter allegations on attendance at meetings and receipt of FDA feedback. Opp. at 10, 34, 37.  That argument fails for the reasons discussed above.  §§I.B.1, 3; Br. at 25-26.

*Fourth*, Plaintiffs' surprising suggestion that the Individual Defendants can be liable or possess scienter for statements made outside their tenure (Opp. at 37) defies both logic and the case law.  *See Cullen v. RYVYL Inc.*, 2024 U.S. Dist. LEXIS 36420, *55 (S.D. Cal. Mar. 1, 2024). Plaintiffs' citation to *Mulligan* is bewildering because that case did not hold that any defendant could be liable, or possess scienter, for statements or events that occurred outside his tenure.

## CONCLUSION

Plaintiffs do not adequately plead falsity, scienter, loss causation, or scheme liability.  The Court should dismiss the Complaint with prejudice as to all Defendants.

Dated:  February 27, 2025

Respectfully submitted,

REED SMITH LLP

*s/ Melissa M. Ferrara*
John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Gregory L. Watts (admitted *pro hac vice*)
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra LifeSciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, and Jeffrey Mosebrook*

-24-