# EXHIBIT 2

**WARNING LETTER**

# TEI Biosciences, Inc.

**MARCS-CMS 573474 — MARCH 06, 2019**

---

**Delivery Method:**

United Parcel Service

**Product:**

Medical Devices

---

**Recipient:**

Peter Arduini

CEO

TEI Biosciences, Inc.

311 Enterprise Drive

Plainsboro, NJ 08536

United States

**Issuing Office:**

Center for Devices and Radiological Health

One Montvale Avenue

Office of Medical Device and Radiological Health Operations Division 1

Stoneham, MA 02180

United States

Dear Mr. Arduini:

The United States Food and Drug Administration (FDA) conducted an inspection of your firm's medical device operations, TEI Biosciences, Inc., an Integra LifeSciences Company, located at 7 Elkins Street, Boston, MA, from October 9 through November 2, 2018. During the inspection, an FDA investigator determined that your firm is a medical device manufacturer of collagen based medical devices, that are used for wound care, soft tissue repair and reconstruction surgery, including Xenform Soft Tissue Repair Matrix, Product Code 830-241 (2cm x 7cm) and 830-243 (4cm x 7cm). These devices were previously cleared by FDA via K060984 and K051190. Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), these products are devices because they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body.

This inspection revealed that the above devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820.

We received your responses dated November 27, 2018, December 27, 2018, January 31, 2019 and February 28, 2019, from John Giantsidis, Senior Director, Quality Assurance, Integra Lifesciences Corporation, which responded to the Form FDA 483, List of Inspectional Observations issued to your firm on November 2, 2018. On December 7, 2018 our office also confirmed that **(b)(4)** while corrective actions were underway and were in the process of performing endotoxin testing of all finished goods in your inventory. We address your November 27, 2018 response below.

These violations include, but are not limited to, the following:

1.  Failure to validate with a high degree of assurance, a process whose results cannot be fully verified by subsequent inspection and test, as required by 21 CFR 820.75(a). During the inspection we observed.

• Your firm failed to adequately validate the **(b)(4)** process used in the manufacture of your extracellular bovine matrix (EBM) medical devices, including Xenform Soft Tissue Repair Matrices. For example:

o Your Validation Protocol (VP)-147 Final Report, dated 12.13.13, section 1.1 states, "Skins were processed up to the **(b)(4)**(VP-134)." During the inspection, TEI personnel confirmed that all EBM medical devices, including Xenform Soft Tissue Repair Matrix, currently use a **(b)(4)** prior to **(b)(4)**.

o Your Validation Protocol (VP-147), dated 11.16.13, section 10.4.1 states "A lot will be deemed acceptable if **(b)(4)**." However, during the inspection we observed that your current procedure allows the **(b)(4)**.

• Your firm did not have any data to demonstrate bacterial endotoxin testing of the EBM medical devices, including Xenform Soft Tissue Repair Matrix, has been validated adequately. For example, comparison of your current procedure, QCP-055 - Performance of the **(b)(4)**, Quality Control Procedure with your previous **(b)(4)** for EBM Process Validation revealed the following discrepancies:

o Your firm failed to use the medical device with the largest surface area as "worst case" sampling for the **(b)(4)** bacterial endotoxin verification study. Xenform Soft Tissue Repair Matrix, with product code 830-247, measures 8 cm x 12 cm with a surface area of 96 cm2. This exceeds the sampling size of "**(b)(4)**" with a surface area of **(b)(4)** as documented in section 8.8, Endotoxin Sample Preparation, in the firm's procedure, **(b)(4)**.

o The revision history of QCP-055, Rev: 05 shows that in March 2017, you modified the **(b)(4)** instructions for running routine samples. Specifically, "Sections 8.10.2.1 and 8.10.2.2 removed instructions to **(b)(4)**. Your firm did not have any data to demonstrate this step did not affect the finished test results.

2.  Failure to establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonably be expected to have an adverse effect on product quality, as required by 21 CFR 820.70(e). For example:

• Your firm did not have any data to demonstrate your **(b)(4)** Water System, used to manufacture **(b)(4)** EBM (extracellular bovine matrix) medical devices, including Xenform Soft Tissue Repair Matrix, included bacterial endotoxin testing. TEI personnel confirmed your firm was not routinely performing microbial identifications on the bioburden recovered from the firm's **(b)(4)** Water System which would identify the presence of gram negative and potential bacterial endotoxin contamination.

We reviewed your firm's response to FDA 483 observations 1-3 (Warning Letter cite 1 and 2 above) and conclude they are not adequate to address the above violations. We acknowledge that after the inspection, your **(b)(4)** of all products, so you can test individual lots for endotoxin. We also understand that you opened additional CAPA's to address FDA's above findings and are in the process of implementing a number of corrective actions to address these items. However, the above deficiencies observed during our inspection are significant and demonstrate a systemic failure of your firm's quality systems. As you are aware, finished product testing is not a substitute for a thorough validation of your manufacturing processes. In response to this Warning Letter, you should confirm that your firm has assessed all of your firm's operations and products to ensure all necessary validations have been successfully completed. FDA will need to conduct a re-inspection to verify that all promised corrective actions have been implemented appropriately.

3.  Failure to establish and maintain procedures to adequately control environmental conditions, where environmental conditions could reasonably be expected to have an adverse effect on product quality, as required by 21 CFR 820.70(c). For example:

• A sporicidal disinfectant has not been used in the ISO 7 clean rooms since March 2017. We understand that your EBM medical devices, including Xenform Soft Tissue Repair Matrix, are manufactured in the ISO 7 clean room. We are aware that your firm identified spore-forming bacteria and fungal organisms (such as *Bacillus thuringiensis* and *Cladosporium halotoerans*), during routine Xenform Soft Tissue Repair Matrix bioburden testing.
• The number of times that ISO 7 clean room gowns may be re-used has not been established. TEI personnel stated that gowns are re-used until they are "visibly dirty" and then placed in the gown cleaning bin to be laundered.
• Personnel were not restricted from entering the cleaner manufacturing rooms, after exiting higher contamination manufacturing rooms in the ISO 7 clean room. During a walk-through of the ISO 7 clean room on 10/10/2018, we observed personnel walking from the EBM **(b)(4)** manufacturing areas into the cleaner areas such as the manufacturing **(b)(4)** rooms.
• Your procedure, Cleaning of the Clean Rooms, FCP-001 does not describe the frequency or process in sufficient detail to prevent cross-contamination of separate areas during the cleaning process.

We reviewed your firm's responses and conclude they are not adequate. You indicated you have opened CAPA's 18-009, 18-010 and 18-011 to address these deficiencies and are in the process of implementing corrective actions. In response to this Warning Letter, you should provide confirmation that these proposed corrective actions are appropriate and effective. We will need to verify these corrective actions during a FDA re-inspection.

4.  Failure to establish and maintain procedures for verifying or validating the corrective and preventive action, to ensure that such action is effective and does not adversely affect the finished device, as required by 21 CFR 820.100(a)(4). For example,

• During our inspection we reviewed CAPA 17-004, dated 8/4/17. This CAPA 17-004, dated 8/4/17 was opened to address 19 non-conforming material reports related to tears found on **(b)(4)** pouches during the lyophilization process. Your firm implemented corrective actions on 11/30/17. The CAPA verification step indicated that if no tears were found in a **(b)(4)** month period, the corrective action would be verified as effective. We observed your firm closed the CAPA in March 2018 even though your firm identified 6 additional tears during this time.

We reviewed your firm's response and conclude that it is not adequate. You indicated you are in the process of re-evaluating the above CAPA. You also indicated that your recently revised CAPA process has demonstrated a substantial improvement in CAPA timeliness and aging. In response to this Warning Letter you should describe any additional actions you are taking for CAPA 17-004 and the results of any retrospective review that was conducted during your CAPA re-evaluation process. You should also provide evidence that an effective and sustainable CAPA system will be implemented at your firm.

Your firm should take prompt action to correct the violations addressed in this letter. Failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties. Also, federal agencies may be advised of the issuance of Warning Letters about devices so that they may take this information into account when considering the award of contracts. Additionally, premarket approval applications for Class III devices to which the Quality System regulation violations are reasonably related will not be approved until the violations have been corrected. Requests for Certificates to Foreign Governments will not be granted until the violations related to the subject devices have been corrected.

Please notify this office in writing within fifteen business days from the date you receive this letter of the specific steps your firm has taken to correct the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (which must address systemic problems) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen business days, state the reason for the delay and the time within which these activities will be completed. Your firm's response should be comprehensive and address all violations included in this Warning Letter.

If you have questions regarding any issues in this letter, please contact Compliance Officer, Karen Archdeacon at 781-587-7491 or at karen.archdeacon@fda.hhs.gov (mailto:karen.archdeacon@fda.hhs.gov). Please send your reply electronically to Gina Brackett, Director of Compliance Branch, at gina.brackett@fda.hhs.gov (mailto:gina.brackett@fda.hhs.gov).

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your firm's facility. It is your firm's responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter and in the Inspectional Observations, FDA 483, issued at the close of the inspection may be symptomatic of serious problems in your firm's manufacturing and quality management systems. Your firm should investigate and determine the causes of the violations, and take prompt actions to correct the violations and bring the products into compliance.

Sincerely,

/S/

Joseph Matrisciano, Jr.

Program Division Director

Office of Medical Device and Radiological Health

Division 1

Cc: Brenda M. Romero, Sr. Manager, Quality Assurance

TEI Biosciences, Inc.

7 Elkins St

Boston, MA 02127-1601

◉ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)