# EXHIBIT 22

**WARNING LETTER**

# Integra LifeSciences Corporation

**MARCS-CMS 660960 — JULY 17, 2023**

---

**Delivery Method:**

United Parcel Service

**Product:**

Medical Devices

---

**Recipient:**

Mr. Jan De Witte

President and CEO

Integra LifeSciences Corporation

1100 Campus Road

Princeton, NJ 08540

United States

✉ jan.dewitte@integralife.com (mailto:jan.dewitte@integralife.com)

**Issuing Office:**

Division of Medical Device and Radiological Health Division I

United States

**WARNING LETTER**
**CMS # 660960**

July 17, 2023

Dear Mr. DeWitte:

The United States Food and Drug Administration (FDA) conducted an inspection of your firm's medical device operations, TEI Biosciences, Inc., an Integra LifeSciences Company, located at 7 Elkins Street, Boston, MA, from March 1 through May 17, 2023. During the inspection, FDA investigators determined that your firm is a medical device manufacturer of collagen based medical devices, that are used for wound care, soft tissue repair and reconstruction surgery, including Durepair. Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), these products are devices because they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body.

This inspection revealed that the above devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820.

We received your response dated June 8, 2023 from Susan Krause, Corporate Vice President, Chief Quality Officer, Integra Lifesciences Corporation, which responded to the Form FDA 483, List of Inspectional Observations issued to your firm on May 17, 2023. On May 23, 2023, our office also confirmed that TEI initiated a recall of all finished goods manufactured within expiry from March 1, 2018 through May 22, 2023, (RES 92481). We also understand that you have committed to not distributing product until the TEI Bioscience site is operating in substantial conformity with Quality System regulations (QSR). We address your June 8, 2023 response below.

These violations include, but are not limited to, the following:

Integra LifeSciences Corporation - 660960 - 07/17/2023 | FDA

1. Failure to establish and maintain procedures to control product that does not conform to specified requirements, as required by 21 CFR 820.90(a). Specifically:

- On June 19, 2019, your firm released a lot of Durepair,# 1904005 for distribution that indicated a bacterial endotoxin (BET) result of 9.98 EU/Device. This result exceeded your acceptance criteria of **(b)(4)** device as specified in your procedure, QCP-037 - Performance of the **(b)(4)** Endotoxin Assay. The device history record for this lot of product showed that the lot was approved and released by your firm without an investigation or product risk assessment for the BET result that was out of specification (OOS).

We reviewed your firm's response and conclude it is not adequate. Your response indicated that NC 23-042 was initiated during the inspection when the above Durepair OOS result was brought to your attention. On May 30, 2023, your firm determined the above OOS result was the result of a transcription error and the 9.98 EU result was for a different lot of product where this was an acceptable result (specification was **(b)(4)**). Your response indicated that CAPA 23-026 was opened to address the above nonconformance deficiencies, yet you have not provided a copy of the CAPA nor have you identified all necessary corrective actions to demonstrate that your quality system will ensure controls are in place to prevent the release of non-conforming product. We remain concerned that your quality system will be capable of identifying similar OOS errors when you resume operations and will prevent the release of non-conforming products.

2. Failure to establish and maintain procedures for implementing corrective and preventive actions, including requirements for analyzing processes, work operations, concessions, quality audit reports, quality records, service records, complaints, returned product, and other sources of quality data to identify existing and potential causes of nonconforming product, or other quality problems, as required by 21 CFR 820.100(a)(1). Specifically:

- On October 20, 2022, your firm received an internal complaint that alleged quality issues in **(b)(4)** manufacturing areas including your **(b)(4)** inspection process, bacterial endotoxin testing, bovine hide/skin thickness measurements, and control of sterilized devices. As the result of your initial investigation, your firm initiated a production hold on December 14, 2022 and also placed **(b)(4)** lots of product on hold. You initiated a CAPA to address the **(b)(4)** issue, however, CAPAs were not opened to address the remaining **(b)(4)** areas of concern, including endotoxin issues. Your CAPA procedure, GSOP-758, rev 005, indicates that "CAPA investigations and any corrections, corrective and/ or preventive actions should be **(b)(4)**".

- During the inspection, you initiated a health hazard evaluation, 2023-HHE-005 to address the endotoxin concerns and the potential health risk. This HHE, completed on April 12, 2023, was not comprehensive and did not include all complaints that may have been associated with this issue. For example, two complaints of meningitis, complaint #'s 198786 and 198790, associated with your Durepair product were not included in your initial HHE assessment that concluded a field action was not recommended. Your HHE SOP, GSOP-908, rev 015 indicates that the criteria for a HHE initiation would be when "**(b)(4)**".

- Your firm failed to **(b)(4)** as required per your procedure, GSOP-801 rev 3, **(b)(4)**; Rev 03. On December 14, 2022, a hold was placed on **(b)(4)** lots identified in the complaint but failed to identify the potential impact on **(b)(4)** lots manufactured during the same time frame.

We reviewed your firm's response and conclude it is not adequate. We are aware that this is a repeat CAPA deficiency from our 2019 Warning Letter to this facility. Your response indicated that **(b)(4)** CAPAs will be initiated to address the above deficiency, however you have not yet identified all necessary corrective actions, nor have you provided a copy of your CAPAs to ensure they will be comprehensive and capable of addressing the systemic issues that have been identified. We understand that you have taken a series of corrective actions, including a recall and production hold, however your response does not indicate how you will prevent such errors from recurring when you resume operations. In response to this Warning Letter, you will need to provide evidence that an effective and sustainable CAPA system will be implemented at your firm.

3. Failure to validate with a high degree of assurance, a process whose results cannot be fully verified by subsequent inspection and test, as required by 21 CFR 820.75(a). Specifically:

- Your firm failed to adequately validate your test method for testing bacterial endotoxin (BET) of finished medical devices, or the **(b)(4)** used during the manufacture of these devices. Review of your BET test method validation, TMVR-009; revealed the following:

o The TMVR-009 assay reports failed to meet **(b)(4)** testing.

□ **(b)(4)**, dated January 28, 2019, excluded **(b)(4)** with "Sample Descriptions" of "Negative Control", invalidating BET test method verification runs for product lots # **(b)(4)**, and **(b)(4)**.

Integra LifeSciences Corporation - 660960 - 07/17/2023 | FDA

☐ **(b)(4)**, dated January 2, 2019, excluded **(b)(4)** with sample descriptions "Negative Control", invalidating BET test method verification runs for product lots # **(b)(4)**, and **(b)(4)**.

☐ **(b)(4)**, dated January 29, 2019, excluded **(b)(4)** with lot sample description "**(b)(4)**", "Sample **(b)(4)**", invalidating the BET test method verification for product lot # **(b)(4)**.

o Your BET test method protocol, section 7.4 Execution and Documentation of BET Assay, cannot be followed as written, to accurately **(b)(4)** for BET analysis of device product testing. For example, Section 7.4, step 4., states, "**(b)(4)**." However, the referenced table lists the **(b)(4)**.

o During routine BET testing, your firm introduced a **(b)(4)**, in calculating the Endotoxin Limit which may cause the BET test method to be performed at **(b)(4)** to detect bacterial endotoxins. The use of this **(b)(4)** was not included in your endotoxin test method validation, TMVR-009.

- Your firm failed to adequately validate your test method for bioburden testing of finished medical devices. Review of TMVP-014, Revision 00, Test Method Validation Report for Bioburden Testing; Effective Date April 3, 2020, revealed:

o Your report failed to meet the product bioburden recovery Acceptance Criteria **(b)(4)** to monitor device **(b)(4)** bioburden loads.

- Your firm failed to adequately validate your test method for bacterial endotoxin of **(b)(4)** used in the manufacture of your finished medical devices. Review of **(b)(4)**; Rev 00; Effective Date: April 25, 2019 revealed the following:

o For BET Report # **(b)(4)**, Run Date: 3/27/2019, the negative control replicate original data from **(b)(4)** and **(b)(4)** were excluded. o **(b)(4)** sample and negative control results are evident on the BET analytical result printouts in **(b)(4)**, Attachment D. Your firm failed to meet **(b)(4)**, requirement, "Perform re-test for invalid assays/and or samples and document rationale as appropriate."**(b)(4)**

We reviewed your firm's response and conclude it is not adequate at this time. Your response indicates that TEI Biosciences has outsourced all BET testing that was previously performed in-house, covering both product and **(b)(4)** testing. We also acknowledge that corrective actions include your recent recall and production hold. However, your response also indicated that you initiated CAPA 23-028 to investigate all testing, inspection and method validations at your facility, beyond just BET and

bioburden testing. We will need to review this CAPA to ensure it is comprehensive and will be effective in preventing similar failures from recurring when you resume distribution. In response to this Warning Letter, you will need to provide evidence that you have reviewed all your operations to ensure that you have validated processes in place.

4. Failure to store devices in a manner to facilitate proper stock rotation and to assess its condition as appropriate, as required by 21 CFR 820.150(a). Specifically:

- On March 2, 2023, sterile lots of implantable devices were observed by our FDA investigator on an unsecure open shelf located in the QC Quarantine area and were labeled as "non-Sterile". Your procedure, Shipping and Receiving EBM Products for Sterilization; MBP 300-102, Rev 21, does not adequately prevent mix-ups of sterile/non-sterile material. Section 7.1.5 states **(b)(4)**. We are aware that a complaint received by your firm on October 20, 2022, also described an example where non-sterile product was being handled in the same area as sterile product. We acknowledge that a CAPA was not initiated at the time to address this issue and to prevent its recurrence.

We reviewed your firm's response and conclude it is not adequate. Your response indicated CAPA 23-031 has been opened to address this deficiency, however you have not yet completed your investigation, nor have you provided a copy of your CAPA. We will need to review your CAPA to ensure it is comprehensive and will be effective in preventing similar failures from recurring when you resume distribution. In response to this Warning Letter, you should provide confirmation that all proposed corrective actions are appropriate and effective.

Your firm should take prompt action to address any violations identified in this letter. Failure to adequately address this matter may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties.

Other federal agencies may take your compliance with the FD&C Act and its implementing regulations into account when considering the award of federal contracts. Additionally, should FDA determine that you have Quality System regulation violations that are reasonably related to premarket approval applications for Class III devices, such devices will not be approved until the violations have been addressed. Should FDA determine that your devices or facilities do not meet the requirements of the Act, requests for Certificates to Foreign Governments (CFG) may not be granted.

We are requesting that you submit to this office on the schedule below, certification by an outside expert consultant that he/she has conducted an audit of your establishment's manufacturing and quality assurance systems relative to the requirements of the device QS regulation (21 CFR, Part 820). You should also submit a copy of the consultant's report, and certification by your establishment's Chief Executive Officer (if other than yourself) that he or she has reviewed the consultant's report and that your establishment has initiated or completed all corrections called for in the report. The initial certifications of audit and corrections and subsequent certifications of updated audits and corrections (if required) should be submitted to this office by the following dates:

- Initial certifications by consultant and establishment – March 31, 2024

- Subsequent certifications – March 31, 2025 and March 31, 2026

Please notify this office in writing within fifteen business days from the date you receive this letter of the specific steps your firm has taken to address the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (which must address systemic problems) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen business days, state the reason for the delay and the time within which these activities will be completed. Your firm's response should be comprehensive and address any violations included in this Warning Letter. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration as part of your response.

Your firm's response should be sent to: Gina Brackett, Director of Compliance Branch, at oradevices1firmresponse@fda.hhs.gov. Refer to CMS # 660960 when replying. If you have any questions about the contents of this letter, please contact Compliance Officer, Karen Archdeacon at 781-587-7491 or at karen.archdeacon@fda.hhs.gov.

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your firm's facility. It is your firm's responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter and in the Inspectional Observations, FDA 483, issued at the close of the inspection may be symptomatic of serious problems in your firm's manufacturing and quality management systems. Your firm should investigate and determine the causes of any violations and take prompt actions to address any violations and bring the products into compliance.

Sincerely,

/S/

Joseph Matrisciano, Jr.

Program Division Director

Office of Medical Device and Radiological Health

Division 1

Cc: Susan Krause, Corporate Vice President, Chief Quality Officer, susan.krause@integralife.com

❮ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)