REED SMITH LLP

John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Gregory L. Watts (admitted *pro hac vice*)
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John I. Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra LifeSciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, Eric Schwartz, and Tracy Redondo*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE INTEGRA LIFESCIENCES HOLDINGS CORPORATION SECURITIES LITIGATION | Master Docket 3:23-cv-20321-MAS-TJB<br><br>ORAL ARGUMENT REQUESTED<br><br>Motion Day: February 17, 2026 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    THE COURT SHOULD DISMISS THE RULE 10b-5(b) CLAIMS FOR
      FAILURE TO ALLEGE MULTIPLE ELEMENTS (COUNT I). ................................... 2

      A.    The Complaint Still Fails to Plead a Strong Inference of Scienter. ........................ 2

            1.    The Old Allegations Remain Deficient. ........................................................ 2

            2.    The Krause and Myers Complaints Fail to Establish Scienter. ................. 3

                  a.    Unadjudicated Allegations Should Be Stricken or
                        Discounted. ................................................................................... 3

                  b.    Susan Krause ................................................................................ 4

                  c.    Thomas Myers ............................................................................. 9

            3.    The New FE Allegations Fail to Establish Scienter. ................................. 11

            4.    Viewed Holistically, the Non-Culpable Explanations Are More
                  Plausible Than an Inference of Scienter. ................................................. 11

      B.    The Complaint Fails to Allege a Materially False or Misleading Statement. ........ 12

            1.    The "Compliance" Statements Were Puffery or Otherwise Not
                  False When Made. ..................................................................................... 12

                  a.    Inactionable Puffery ................................................................... 12

                  b.    Not Materially False or Misleading When Made ......................... 13

            2.    The "Remediation" Statements Were Inactionable Forward-
                  Looking Statements, Opinions, or Otherwise Not False When
                  Made. ....................................................................................................... 15

                  a.    Protected by Safe Harbor for Forward-Looking Statements ........ 15

                  b.    Inactionable Opinions ................................................................. 16

                  c.    Not Materially False or Misleading When Made ......................... 17

3. The "Capacity" Statements Were Inactionable Forward-Looking Statements or Opinions, or Otherwise Not False When Made. ................ 21

    a. Protected by Safe Harbor for Forward-Looking Statements ........ 21

    b. Inactionable Opinions ................................................................... 22

    c. Not Materially False or Misleading When Made ......................... 22

C. The Complaint Fails to Plead Loss Causation After May 23, 2023. ................... 23

II. PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II). ............................. 25

III. THE COURT SHOULD DISMISS EACH CLAIM AGAINST EACH INDIVIDUAL DEFENDANT (COUNTS I, II, AND III). .............................................. 26

CONCLUSION ............................................................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008)................................................................................3

*Anderson v. StoneMor Partners, L.P.*,
    296 F. Supp. 3d 693 (E.D. Pa. 2017) ..............................................................................19

*Ass'n of New Jersey Chiropractors, Inc. v. Data iSight, Inc.*,
    2022 WL 4483596 (D.N.J. Sept. 27, 2022) .........................................................................4

*Auto. Indus. Pension Tr. Fund v. Textron Inc.*,
    682 F.3d 34 (1st Cir. 2012)...............................................................................................5

*Bartesch v. Cook*,
    941 F. Supp. 2d 502 (D. Del. 2023)...............................................................................3, 18

*Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*,
    775 F. Supp. 3d 1275 (N.D. Ga. 2025) ..............................................................................2

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)...........................................................................................9, 19

*Celano v. Fulcrum Therapeutics, Inc.*,
    2025 WL 928783 (D. Mass. Mar. 27, 2025).......................................................................6

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)...............................................................................................5

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)................................................................................4

*City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*,
    2025 WL 1577315 (D.N.J. June 4, 2025) ........................................................................12

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
    70 F.4th 668 (3d Cir. 2023) ...............................................................................................3

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
    2024 WL 3219616 (D.N.J. June 28, 2024) .....................................................13, 15, 16, 17

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
    865 F. Supp. 2d 811 (W.D. Mich. 2012) .....................................................................12, 14

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
    2013 WL 566805 (N.D. Ill. Feb. 13, 2013) .....................................................................19

*Cont'l Gen. Ins. Co. v. Olafsson*,
    2024 WL 4263211 (D.N.J. Sept. 23, 2024) .....................................................................16

*Curran v. Freshpet, Inc.*,
    2018 WL 394878 (D.N.J. Jan. 12, 2018) ..............................................................15

*Dalberth v. Xerox Corp.*,
    766 F.3d 172 (2d Cir. 2014)................................................................................24

*Emps. Ret. Sys. of Puerto Rico Elec. Power Auth. v. Conduent Inc.*,
    2020 WL 3026536 (D.N.J. June 5, 2020) .............................................................15

*Flora v. Cnty. of Luzerne*,
    776 F.3d 169 (3d Cir. 2015)......................................................................7, 10, 18

*Gaer v. Educ. Mgmt. Corp.*,
    2011 WL 7277447 (W.D. Pa. Aug. 30, 2011) ...................................................3, 4

*Geinko v. Padda*,
    2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ............................................................4

*Gov't of Guam Ret. Fund v. Invacare Corp.*,
    2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) ...............................................13, 23

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004)................................................................................12

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...........................................................25

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
    2022 WL 889158 (E.D. Pa. Mar. 25, 2022)...........................................................17

*Handal v. Innovative Indus. Props., Inc.*,
    157 F.4th 279 (3d Cir. 2025) ..............................................................................25

*Hills v. Bioxcel Therapeutics, Inc.*,
    2024 U.S. Dist. LEXIS 121813 (D. Conn. July 11, 2024)....................................12

*Howard v. Arconic Inc.*,
    395 F. Supp. 3d 516 (W.D. Pa. 2019)...................................................................13

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,
    723 F. Supp. 3d 1053 (D. Kan. 2024).....................................................................3

*In re Able Lab'ys Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008).............................................................13

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) .........................................................................25

*In re Anadigics, Inc. Sec. Litig.*,
    2011 WL 4594845 (D.N.J. Sept. 30, 2011),
    *aff'd*, 484 F. App'x 742 (3d Cir. 2012)..........................................................15, 23

*In re Apollo Grp., Inc.*,
    2011 WL 5101787 (D. Ariz. Oct. 27, 2011)..........................................................3, 4

*In re Biogen Inc. Sec. Litig.*,
 857 F.3d 34 (1st Cir. 2017)..........................................................................................5

*In re Campbell Soup Co. Sec. Litig.*,
 2022 WL 6961796 (D.N.J. Oct. 11, 2022)..................................................................11

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
 2020 WL 3026564 (D.N.J. June 5, 2020) .........................................................9, 25, 26

*In re Coinbase Glob., Inc. Sec. Litig.*,
 2024 WL 4053009 (D.N.J. Sept. 5, 2024) ...........................................................22, 25

*In re Connetics Corp.*,
 542 F. Supp. 2d 996 (N.D. Cal. 2008) ..........................................................................4

*In re Discovery Labs. Sec. Litig.*,
 2006 U.S. Dist. LEXIS 79823 (E.D. Pa. Nov. 1, 2006)...............................................19

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
 2019 WL 1299673 (D.N.J. Mar. 21, 2019)...........................................................2, 13, 19

*In re Dura Pharms., Inc. Sec. Litig.*,
 548 F. Supp. 2d 1126 (S.D. Cal. 2008).......................................................................11

*In re Enzymotec Sec. Litig.*,
 2015 WL 8784065 (D.N.J. Dec. 15, 2015)............................................................16, 21

*In re EQT Corp. Sec. Litig.*,
 504 F. Supp. 3d 474 (W.D. Pa. 2020).........................................................................9

*In re FirstEnergy Corp.*,
 2022 WL 681320 (S.D. Ohio Mar. 7, 2022)................................................................25

*In re FreeMarkets, Inc. Sec. Litig.*,
 2000 U.S. Dist. LEXIS 22209 (W.D. Pa. Dec. 26, 2000)............................................12

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
 2021 WL 3491779 (D. Del. Aug. 9, 2021), *R.&R. adopted*, 2021 WL
 3726014 (D. Del. Aug. 23, 2021) ...............................................................................10

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
 2015 WL 4469143 (D.N.J. July 22, 2015)....................................................................8

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
 2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)...............................................................14

*In re Intelligroup Sec. Litig.*,
 527 F. Supp. 2d 262 (D.N.J. 2007) .............................................................................19

*In re Interpool, Inc. Sec. Litig.*,
 2005 WL 2000237 (D.N.J. Aug. 17, 2005) .................................................................10

*In re Mattel, Inc. Sec. Litig.*,
 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ...............................................................3

*In re Merck & Co., Inc.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...........................................................................18

*In re Mylan N.V. Sec. Litig.*,
  2023 WL 3539371 (W.D. Pa. May 18, 2023).......................................................2, 6, 23, 26

*In re Mylan N.V. Sec. Litig.*,
  2025 WL 1874621 (W.D. Pa. July 8, 2025) .........................................................................25

*In re Novo Nordisk Sec. Litig.*,
  2018 WL 3913912 (D.N.J. Aug. 16, 2018) ...........................................................................8

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
  2019 WL 1950399 (D. Mass. Apr. 30, 2019),
  *aff'd*, 955 F.3d 194 (1st Cir. 2020) ....................................................................12, 14, 15, 16

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014).....................................................................................3

*In re PolarityTE, Inc. Sec. Litig.*,
  706 F. Supp. 3d 1343 (D. Utah 2020).............................................................................22, 23

*In re Supreme Indus., Inc. Sec. Litig.*,
  2018 U.S. Dist. LEXIS 87243 (N.D. Ind. May 23, 2018) ..............................................5, 19

*In re Synchronoss Techs., Inc. Sec. Litig.*,
  2019 WL 2849933 (D.N.J. July 2, 2019)..............................................................................10

*In re Talis Biomed. Corp. Sec. Litig.*,
  2022 U.S. Dist. LEXIS 222835 (N.D. Cal. Dec. 9, 2022)...................................................16

*In re Triangle Cap. Corp. Sec. Litig.*,
  988 F.3d 743 (4th Cir. 2021) .................................................................................................8

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022)....................................................................................9

*In re Universal Health Servs., Inc., Deriv. Litig.*,
  2019 WL 3886838 (E.D. Pa. Aug. 19, 2019) ........................................................................3

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
  620 F. Supp. 3d 167 (D.N.J. 2022) ...........................................................................9, 16, 23

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)..................................................................................................15

*Jones v. Haynes*,
  2025 WL 3090549 (S.D.N.Y. Oct. 10, 2025), *R.&R. adopted*, 2025 WL
  3090106 (S.D.N.Y. Nov. 5, 2025) .........................................................................................3

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
  19 F.4th 601 (4th Cir. 2021) .......................................................................................3, 8, 10

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012) .................................................................4

*Lako v. Loandepot, Inc.*,
   2023 WL 444151 (C.D. Cal. Jan. 24, 2023) .........................................................4

*Lewakowski v. Aquestive Therapeutics, Inc.*,
   2023 WL 2496504 (D.N.J. Mar. 14, 2023)...........................................................3

*Lopes v. Fitbit, Inc.*,
   2020 WL 1465932 (N.D. Cal. Mar. 23, 2020),
   *aff'd on other grounds*, 848 F. App'x 278 (9th Cir. 2021) .................................24

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
   363 F. Supp. 3d 476 (D. Del. 2019).......................................................................3

*McClain v. Iradimed Corp.*,
   111 F. Supp. 3d 1293 (S.D. Fla. 2015) ................................................................22

*McDermid v. Inovio Pharms., Inc.*,
   520 F. Supp. 3d 652 (E.D. Pa. 2021) ...................................................................21

*MicroCapital Fund LP v. Conn's Inc.*,
   2019 WL 3451153 (S.D. Tex. July 24, 2019)........................................................3

*Miller v. Sonus Networks, Inc.*,
   636 F. Supp. 3d 245 (D. Mass. 2022) ....................................................................9

*Morrow v. Balaski*,
   719 F.3d 160 (3d Cir. 2013)...................................................................................7

*Mosco v. Motricity, Inc.*,
   649 F. App'x 526 (9th Cir. 2016) ..........................................................................5

*Mulligan v. Impax Lab'ys, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ...................................................9, 13, 19, 23

*N. Collier Fire Control v. MDC Partners, Inc.*,
   2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016).......................................................8

*Nat'l Jr. Baseball League v. PharmaNet Dev. Grp., Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010) ......................................................................12

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ..........................................................................10, 12

*Odeh v. Immunomedics, Inc.*,
   2020 WL 4381924 (D.N.J. July 31, 2020)...........................................................20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..............................................................................................23

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021) ..................................................................9, 10

*Payne v. DeLuca*,
    433 F. Supp. 2d 547 (W.D. Pa. 2006)......................................................................................19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...................................................................................................3

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
    2023 WL 4418886 (N.D. Cal. May 24, 2023)......................................................................3, 8

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    679 F.3d 952 (7th Cir. 2012) .................................................................................................11

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013)................................................................................................3, 12

*Roofer's Pension Fund v. Papa*,
    2018 WL 3601229 (D.N.J. July 27, 2018)..........................................................................10, 12

*Schwab Cap. Tr. v. Celgene Corp.*,
    2021 WL 1085474 (D.N.J. Mar. 22, 2021)...............................................................................3

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ....................................................................................16

*SEC v. SolarWinds Corp.*,
    741 F. Supp. 3d 37 (S.D.N.Y. 2024)......................................................................................26

*See In re Genzyme Corp. Sec. Litig.*,
    754 F.3d 31 (1st Cir. 2014).....................................................................................................12

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2019 WL 762510 (N.D. Ind. Feb. 20, 2019)............................................................................4

*Shemian v. Rsch. in Motion Ltd.*,
    2013 U.S. Dist. LEXIS 49699 (S.D.N.Y. Mar. 29, 2013) .....................................................19

*Sherman v. Abengoa, S.A.*,
    156 F.4th 152 (2d Cir. 2025) ...................................................................................................3

*Stadium Capital LLC v. Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb 5, 2024)................................................................................2

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008)................................................................................................................26

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015)......................................................................................3

*Strougo v. Mallinckrodt Public Ltd. Co.*,
    2022 WL 17740482 (D.N.J. Dec. 16, 2022)........................................................................2, 20

*Takata v. Riot Blockchain, Inc.*,
    2020 WL 2079375 (D.N.J. Apr. 30, 2020) .............................................................................25

*Takata v. Riot Blockchain, Inc.*,
    2023 WL 7133219 (D.N.J. Aug. 25, 2023) ...........................................................2

*United States ex rel. Williams v. Med. Support Los Angeles*,
    2021 WL 6104016 (C.D. Cal. Nov. 29, 2021).......................................................4

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    57 F. Supp. 3d 950 (D. Minn. 2014)....................................................................26

*Weiner v. Quaker Oats Co.*,
    129 F.3d 310 (3d Cir. 1997)................................................................................10

*Wilkof v. Caraco Pharm. Lab'ys, Ltd.*,
    2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) ...................................................13

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .............................................................................15

*Wu v. GSX Techedu Inc.*,
    738 F. Supp. 3d 527 (D.N.J. 2024) .......................................................................2

*Yan v. Rewalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020)..................................................................................16

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ...............................................................................10

**RULES**

Federal Rule of Civil Procedure 9 ................................................................................24

SEC Rule 10b-5(b)...........................................................................................................2

**INTRODUCTION**

The new Complaint is remarkable in that it weakens, instead of strengthens, the prior complaint's dismissed allegations. The Complaint, including the allegations of former employees Krause and Myers, and Plaintiffs' Opposition (Dkt. 99, "Opp.") show that after internal debate and spirited discussion, and despite alleged interpersonal issues, Defendants ***ultimately did the right thing***. Plaintiffs admit that Integra ***did*** implement "new, more effective processes" to improve quality in Boston (Opp. at 24), ***did*** recall Cerelink and the cranial access kits (¶¶190, 201), ***did*** inform Krause of quality-related internal complaints (¶191), ***did*** provide the transcript of the 2022 complaint to the FDA (¶197), ***did*** investigate the complaint (twice) (¶¶193, 195), ***did not*** falsely certify to the FDA that there was no truth to the 2024 internal complaint (¶206), ***did not*** relabel products (¶199), ***did not*** place reworked EBM product into the market (¶¶198, 208), and ***were*** told that the dress rehearsal auditor believed Integra was ready for a final audit in Boston (Br. at 11).

Contrary to these and other admissions in the Complaint, as if saying something louder will make it more plausible, Plaintiffs now argue the Individual Defendants did not act merely recklessly, but instead acted "***deliberately***" and "***intentionally***" to undermine remediation at the Boston facility. Opp. at 1-8, 16, 34, 37, 42. The pleaded facts remain unchanged that Defendants ***warned*** of potential quality systems problems before the class period, ***disclosed*** the Boston quality systems problem at the start of the class period, timely ***updated*** investors about Integra's struggles and setbacks in remediating this problem, and ***cautioned*** that they might not be able to fix the problem ***at all***. Plaintiffs cannot explain why Defendants would, without any motive to profit personally, publicly state goals to remediate Boston, but then ***deliberately*** fail to do so, endure repeated negative FDA actions, and embarrassingly disclose this failure at every step. The Complaint should be dismissed.

**ARGUMENT**

I.    **THE COURT SHOULD DISMISS THE RULE 10b-5(b) CLAIMS FOR FAILURE TO ALLEGE MULTIPLE ELEMENTS (COUNT I).**

    A.    **The Complaint Still Fails to Plead a Strong Inference of Scienter.**

        1.    **The Old Allegations Remain Deficient.**

The Complaint's "newly pled facts" do not rehabilitate Plaintiffs' old, dismissed allegations. Opp. at 29. The Complaint alleges no new facts regarding FDA correspondence or assurances of Integra's focus on remediation in Boston—those disclosures still say what they said. Opinion at *2-10, 13, 20; Opp. at 30-32. Nor does the Complaint allege new facts regarding the importance of compliance or Boston's products—the Boston facility was one of more than a dozen manufacturing facilities (Br. at 3) and generated no more than 6% of Integra's revenue. Opinion at *20; Opp. at 31-32. The only new allegation about Braintree is conclusory. ¶248; Opinion at *19; Opp. at 33. And the allegations from FEs 1 to 15 remain substantially the same—except for Plaintiffs' blatant mischaracterization of FE 5's statement, which attempts to transform Krause from villain to hero. Opinion at *14-19; Opp. at 30; Br. at 20-21. The Court should not reconsider its ruling on these issues. *See Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, *11 (D.N.J. Aug. 25, 2023) (dismissing complaint "premised on conduct and a legal theory that the Court already ruled unactionable"); *Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 555 (D.N.J. 2024).[1]

The only old scienter allegations that are arguably impacted by new allegations—the 2022 internal

---

[1] Plaintiffs' cases are inapposite. In three, unlike here, the regulator warnings were not promptly disclosed. *See In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, *15 (D.N.J. Mar. 21, 2019); *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, *19 (W.D. Pa. May 18, 2023); *Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*, 775 F. Supp. 3d 1275, 1293-94 (N.D. Ga. 2025). In *Stadium Capital LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, *5 (S.D.N.Y. Feb 5, 2024), the product "accounted for more than 99%" of the company's revenue. *Strougo v. Mallinckrodt Public Ltd. Co.*, 2022 WL 17740482 (D.N.J. Dec. 16, 2022), did not involve scienter allegations previously found deficient. In *Wu*, the new allegations were from new FEs. 738 F. Supp. at 563.

complaint and De Witte's retirement—are addressed below.  §I.A.2.

### 2.     The Krause and Myers Complaints Fail to Establish Scienter.

#### a.     Unadjudicated Allegations Should Be Stricken or Discounted.

The allegations based on Krause's and Myers' complaints should be stricken, or heavily discounted, as he said/she said allegations by disgruntled FEs with strong financial incentives to cast sensational aspersions.  Br. at 9-11.  Plaintiffs' cases are distinguishable.  *Sherman v. Abengoa, S.A.*, 156 F.4th 152 (2d Cir. 2025), involved allegations from a Spanish criminal court ruling based on reports from "an auditing firm[,]" "Spain's financial accounting regulator," and "two financial-consulting firms."  *Id.* at 159-60, 166.  Such "case-specific" facts "distinguishe[d] [the allegations] from … precedents," *id.* at 157, and are very different from uncorroborated employment suits.[2]

The reason to strike or discount employment suit allegations is obvious: the plaintiffs in such suits have strong financial incentives to overstate matters, which persons in other contexts lack (such as regulators, courts, or reporters).  Many courts discount allegations from FE suits.[3]

---

[2] Courts remain skeptical of unadjudicated allegations after *Sherman*.  *See Jones v. Haynes*, 2025 WL 3090549, *12 n.9 (S.D.N.Y. Oct. 10, 2025), *R.&R. adopted*, 2025 WL 3090106 (S.D.N.Y. Nov. 5, 2025).  Unlike here, Plaintiffs' other cases involved (a) no third-party lawsuits (*Prudential*; *Mattel*), (b) government orders or complaints (*Compass*; *Lord Abbett*; *Barclays*), (c) opt-out plaintiffs copying the class action complaint allegations (*Celgene*; *MicroCapital*; *Aspen*), or (d) are otherwise inapposite, *see Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, *13 (D.N.J. Mar. 14, 2023) (lawsuits brought by defendant company against competitor supported basis and motivation for subsequent fraud); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620 (S.D.N.Y. 2014) (ruling concerned request for leave to amend, and did consider weight of claims).

[3] *See* Br. at 10-11 (citing *Gaer*, *Bartesch*, *Universal Health*, *Apollo*, and *Rahman*); *see also KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 608-09 (4th Cir. 2021) (affirming dismissal; allegations relating to a former employee lawsuit "support only a weak inference of scienter"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 440, 443 (7th Cir. 2011) (affirming dismissal of fraud claim where plaintiff got "most of its information about how the alleged fraud worked" from a *qui tam* suit); *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, *5 (N.D. Cal. May 24, 2023) (striking allegations lifted from a former employee's complaint despite conversations among the attorneys);

(continued...)

-3-

Although Plaintiffs assert that Krause's and Myers' allegations are corroborated (Opp. at 22-23), none of their allegations that distinguish the current Complaint from the prior complaint are corroborated. For example, the sole support for Krause's characterization of her interactions with De Witte, Schwartz, and Board members comes from Krause. *Id.* at 9, 32. Likewise, only Myers says Integra resumed manufacturing for commercial sales in January 2024. *Id.* at 26. In other words, corroboration is missing where Plaintiffs need it most.

As noted in the Brief, there is substantial nationwide authority discounting the use of third-party lawsuits, even outside the context of copied FE complaints. Br. at 9-11.[4] Accordingly, the Court should strike, or heavily discount, the Krause and Myers allegations.

### b.    Susan Krause

Even fully crediting her allegations, Krause undermines Plaintiffs' theory of deliberate

---

*United States ex rel. Williams v. Med. Support Los Angeles*, 2021 WL 6104016, *7 (C.D. Cal. Nov. 29, 2021) (declining to consider allegations lifted from former employee suit).

Plaintiffs' handful of cases involving FE suits are distinguishable. *See Lako v. Loandepot, Inc.*, 2023 WL 444151, *6 (C.D. Cal. Jan. 24, 2023) (FE lawsuit corroborated and supported by "documentary evidence"); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 417-22 (S.D.N.Y. 2020) (no scienter where FE's legal filings provided only "generalized allegations"); *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510, *8 (N.D. Ind. Feb. 20, 2019) (issue was "practically moot" because plaintiffs "now possess the actual documents ... on which the [FE] complaint was based").

[4] *See also Ass'n of New Jersey Chiropractors, Inc. v. Data iSight, Inc.*, 2022 WL 4483596, *3 (D.N.J. Sept. 27, 2022); *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012); *Geinko v. Padda*, 2002 WL 276236, *6 (N.D. Ill. Feb. 27, 2002). Plaintiffs' attempts to distinguish Defendants' cases fail. For example, *Gaer* did not simply concern the "fact that a defendant had been sued." Opp. at 20 n.5; *Gaer v. Educ. Mgmt. Corp.*, 2011 WL 7277447, *9 (W.D. Pa. Aug. 30, 2011) (alleging "systemic violations"). *Apollo* did not "permit" plaintiffs to "rely on allegations from a *qui tam* action." Opp. at 23 n.9. The court dismissed the claims because "allegations from other complaints are unproven and contested." *In re Apollo Grp., Inc.*, 2011 WL 5101787, *10 n.5 (D. Ariz. Oct. 27, 2011). *Connetics* did not depend entirely on another complaint (Opp. at 23 n.9); there were CWs and the other lawsuit was "the *only basis*" for some of the allegations, like here. *In re Connetics Corp.*, 542 F. Supp. 2d 996, 1005, 1011 (N.D. Cal. 2008).

fraud because she admits that significant progress had been made on remediation. Br. at 11-12. Plaintiffs do not contest that Krause's concessions should be accepted as true because their Complaint incorporates Krause's complaint by reference. Br. at 11 n.4. Instead, Plaintiffs argue Krause alleges that "*she*"—rather than Defendants—established "new, more effective processes." Opp. at 24. But Krause worked at Integra, which means Integra implemented these processes. In addition, Krause concedes that in August 2021 Integra "believed ... the FDA warning letter would be removed." Ex. 47 ¶16. Plaintiffs assert this belief was not honestly held, but fail to substantiate that assertion. Opp. at 24-25. Krause's own allegations suggest Defendants' belief was sincere because Integra submitted a regulatory application in reliance on it. Ex. 47 ¶¶15-16. Contrary to Plaintiffs' suggestion (Opp. at 25 n.13), this admission undermines scienter because it shows that Defendants believed they had made progress. Plaintiffs also ignore Krause's allegation that the dress rehearsal auditor in January 2024 "believed that Integra was ready for the [final] audit." Ex. 47 ¶61; Br. at 11. This admission undermines scienter for the Boston relaunch timeline statements because it shows Defendants believed the audit would confirm Integra could proceed on that timeline. Krause's allegations are therefore *consistent* with Defendants' public disclosures. Br. at 11-12. Plaintiffs fail to address Defendants' cases (*Biogen*, *Textron*, *Motricity*, *Supreme*, *Pfizer*).

The remaining Krause allegations do not establish scienter. *First*, many of her concerns did not come to pass. Br. at 12. Plaintiffs respond with semantics. For example, the Complaint alleges the "Company's Product Safety Board … agreed to destroy the existing inventory." ¶198. Now, Plaintiffs contend there is no allegation that Defendants "actually" disposed of the inventory. Opp. at 24. But Plaintiffs do not allege that it was maintained, so the only reasonable inference is that it was destroyed. The same is true of Krause's claim that she "refused" to relabel products. ¶199. Plaintiffs do not allege that products were mislabeled after her refusal, so again the only

reasonable inference is that they were not.  Br. at 12.  While Plaintiffs allege Integra continued to process work in progress manufacturing for a month after Krause's "directive" (¶195), Plaintiffs concede the processing eventually ceased and do not contend that any such product was shipped (¶151).  That Defendants repeatedly followed Krause's recommendations undercuts any inference that they intentionally undermined remediation.

*Second*, the Opposition does not meaningfully contest that the cranial access kit, Cerelink, and Plainsboro allegations have nothing to do with Boston or the challenged statements.  Br. at 12-13; Opp. at 25.  Plaintiffs ignore Defendants' cases, including *Celano* and this Court's order discounting allegations from FE 11 for this reason, and Plaintiffs cite no authority that these irrelevant topics are now important.  Br. at 13; Opinion at *18.  In any event, Plaintiffs and Krause admit that Integra *did* recall both Cerelink and the cranial access kits, which are just more examples of Defendants following Krause's recommendations.  ¶¶ 190, 201.  And the alleged disagreement among executives regarding Plainsboro does not show scienter for any of the statements identified by Plaintiffs because it post-dates them, unlike in the *Mylan* case cited by Plaintiffs.  Opp. at 25 n.14; *Mylan*, 2023 WL 3539371, at *15-16, 19.

*Third*, the Opposition fails to rebut the more compelling non-fraud competing inferences:

Internal Complaints.  Krause and Plaintiffs do not allege that Krause never received notice of quality-related internal complaints, only that she did not get them within 24 hours.  ¶191.  As the Court recognized, an internal investigation into an internal complaint undercuts scienter.  Opinion at *14.  With respect to the October 2022 internal complaint, contrary to Plaintiffs' suggestion (Opp. at 23-24 & n.11), it is not suspicious that Defendants did not inform Krause of the complaint within 24 hours because no Integra policy or FDA regulation required that.  Br. at 13.  The policy in question does not indicate that it was in place in October 2022, and Krause's

uncited assertion regarding FDA regulations is "a legal conclusion couched as a fact[.]" *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).[5] While Krause did not personally participate in the investigation, she does not allege that another member of the Quality Department did not participate (they did). Nor is it suspicious that the investigation was closed for insufficient information in November 2022 because Krause admits that investigation resumed as soon as additional information was received the next month. Ex. 47 ¶¶26, 29-32. Krause and Plaintiffs admit that the transcript of the 2022 complaint was given to the FDA (¶197), and that Integra did not falsely certify that the investigation concluded the 2024 complaint was incorrect (¶206).

The competing inferences that: (1) Krause was not immediately provided with the complaint because it implicated her area of responsibility; and (2) the FDA was not immediately provided with the complaint due to privilege considerations are not "rank speculation" because chief compliance officers routinely lead investigations and internal investigations often present privilege issues. Opp. at 34; Br. at 13-14; *see* Opinion at *11, 19.

Discussions Among Executives. The competing inference that Krause's allegations reflect constructive debate and good-faith disagreements is more plausible. Br. at 14-15. The Opposition ignores that Krause's disagreement with Defendants about a "risk assessment" of sites, relative to Boston, in a Board deck (¶200) was based on her "***belie[f]***," and thus Defendants did not "demand" that she "falsify" the deck. Br. at 14-15. Plaintiffs' distortion casts doubt on their other allegations.

Plaintiffs' new claims that "De Witte and Anderson slashed the remediation budget and headcount" (Opp. at 33) is not pleaded. Regardless, the allegation is uncorroborated (and false)

---

[5] Plaintiffs do not seriously contest that their Complaint incorporates the policy by reference or distinguish Defendants' cases. Opp. at 23 n.10; Br. at 11 n.4. Plaintiffs' case, *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015), did not involve incorporation by reference. Since filing the Brief, Defendants' counsel learned that WWCP-040 first became effective in August 2023—still long after the internal complaint was received in October 2022.

and exactly like in *DXC*, where securities plaintiffs based their complaint in part on a former executive's employment suit alleging he had to make budget cuts. The Fourth Circuit ruled the suit "show[s] only that [the executive] believed the cuts he was being asked to make were misguided—not that ... the executives in question here, *agreed* with that assessment." *DXC*, 19 F.4th at 609. So too here, as there is no allegation that Defendants agreed the cuts would make remediation impossible.[6] Even if Krause were right, in hindsight, that Defendants "err[ed] too aggressively on the side of cutting costs," that is not enough. *DXC*, 19 F.4th at 610; *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 754 (4th Cir. 2021) (no scienter; stronger inference was that the "[d]efendants had an honest debate about the merits of a subjective business judgment").

Krause's other alleged conversations with Board members and certain Individual Defendants are uncorroborated and lack critical details. Br. at 14-15. For instance, Krause does not allege that any directors agreed that remediation was impossible based on budget or staffing. *See DXC*, 19 F.4th at 609.[7] Finally, scienter cannot be inferred from the fact that Krause resigned

---

[6] Plaintiffs argue that *DXC* is distinguishable because the FEs there "believed simply that management 'made unwise business decisions,' [while] Krause and Myers indicate that Defendants engaged in misconduct." Opp. at 34 n.21. That is a mischaracterization. As an initial matter, the part of the case quoted by Plaintiffs refers to different allegations from different FEs—not to the suit filed by the former executive. Further, the *court* concluded that the former executive's lawsuit "suggest[ed] a mere business disagreement among the executives." *DXC*, 19 F.4th at 609. The *executive* there—just like Krause here—alleged in his lawsuit that "*DXC and its executives knew of the falsity of the alleged misstatements.*" *Id.* at 608 (emphasis added).

[7] Because Krause does not adequately allege wrongdoing by De Witte, the allegation that he retired does not support scienter. *See N. Collier Fire Control v. MDC Partners, Inc.*, 2016 WL 5794774, *21 (S.D.N.Y. Sept. 30, 2016) ("[C]ourts 'have consistently held that an officer's resignation, without more, is insufficient to support a strong inference of scienter'"); *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, *18, 21-22 (D.N.J. July 22, 2015) (same); *CareDx, Inc.*, 2023 WL 4418886, at *7 (same). Plaintiffs' case is inapposite. *See In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, *4 (D.N.J. Aug. 16, 2018) (allegations that executives "were fired, contrary to Novo's public claim that the departures were voluntary"). While Integra announced on February 28, 2024 De Witte's intention to retire, the Company stated that he would

(continued...)

after years of continued remediation struggles (an area directly within her purview).  Br. at 15.[8]

### c.      Thomas Myers

Myers' allegations are relevant only to Statements 22-25.  Br. at 16.  Because he does not identify deficiencies that existed when earlier statements were made, he cannot "corroborate" the accounts of Krause or the FEs for the "*entire* Class Period," as Plaintiffs argue.  Opp. at 25-26.[9]

Even as to Statements 22-25, Myers' allegations do not establish scienter because he does not allege the basis for his assertion that Integra had restarted ***commercial*** manufacturing as opposed to ***test*** manufacturing.  Br. at 16.  Defendants do not ask the Court to make a "factual finding in their favor based on rank speculation."  Opp. at 26.  Defendants ask the Court to draw a competing inference from the fact that Myers was in quality, not manufacturing or sales, and thus not well-positioned to know whether Integra intended to sell the materials at issue.  FE 18 describes the same situation as Myers and yet does not suggest that the manufacturing was intended for commercial use.  Test manufacturing is consistent with Defendants' contemporaneous disclosures, and, as Myers and Plaintiffs admit, Integra ultimately did ***not*** sell reworked EBM products.  ¶208; Br. at 16, 18.  The Court must weigh these inferences.  *See Ortiz v. Canopy Growth Corp.*, 537 F.

---

remain in his role as President and CEO until a successor was appointed.  Ex. 31.  A successor was not appointed until January 6, 2025, nearly a year after De Witte's announcement.

[8] Plaintiffs' cases are inapposite.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 244 (S.D.N.Y. 2022) (former employee was terminated after being warned to "stop looking into" issues); *Miller v. Sonus Networks, Inc.*, 636 F. Supp. 3d 245, 248, 252-53 (D. Mass. 2022) (no termination or resignation); *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 497-98 (W.D. Pa. 2020) (no discussion of allegation that defendant resigned).

[9] Plaintiffs do not try to distinguish Defendants' case (*Chubb*), and their cases do not stand for the proposition that Myers supports scienter for the entire Class Period. Opp. at 26; *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 963 (N.D. Cal. 2014) (no discussion of whether an FE can support scienter beyond tenure); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 193-95 (D.N.J. 2022) (same); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, *30 n.17 (D.N.J. June 5, 2020) (FE was employed at relevant time).

Supp. 3d 621, 675 (D.N.J. 2021) (courts take "a practical and common-sense perspective").[10]

Plaintiffs ignore Defendants' point that Myers' allegations are too vague because they refer generally to "senior executives." Thus, even if the Court were to credit all of Myers' allegations, they would still be insufficient to establish any Individual Defendant's scienter. Br. at 16-17.[11]

Myers also alleges that Integra sought a second opinion after new developments. Br. at 17. He does not allege that anyone ever told him Integra intended to proceed regardless of the outcome—he just speculates about it. Opp. at 26-27; Ex. 45 ¶27. Even if Myers disagreed with obtaining a second opinion, he is a not a doctor, and the stronger inference is an "honest disagreement." *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 886-87 (4th Cir. 2014).

Finally, as to Myers' termination, the Opposition points only to allegedly suspicious timing, which is not enough. Opp. at 35; Br. at 17-18. Although Plaintiffs assert that "nothing in the [Complaint] supports the claim that he was let go because he 'failed in his charge'" (Opp. at 35), they ignore their own allegation that an auditor found "twenty-five nonconformance findings" at the plant for which Myers was responsible. ¶218; *DXC*, 19 F.4th at 609. Plaintiffs do not even attempt to distinguish the *Synchronoss* or *Interpool* cases cited by Defendants.

---

[10] *See also In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, *23 (D. Del. Aug. 9, 2021) (no scienter where "other explanations are surely possible"), *R.&R. adopted*, 2021 WL 3726014 (D. Del. Aug. 23, 2021); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) ("PSLRA neither allows nor requires us to check our disbelief at the door"); *Canopy*, 537 F. Supp. 3d at 677 (discounting FE allegations where FE's "account is … consistent with a number of possibilities"). Plaintiffs' cases are inapposite. *See Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir. 1997) (no discussion of factual disputes); *Flora*, 776 F.3d at 175-76 (First Amendment case where court made improper factual determinations about scope of plaintiff's duties).

[11] The Complaint does not allege that De Witte was informed of the February 26, 2024 test results, so De Witte was not "reckless" in discussing the dress rehearsal "without reviewing" them. Opp. at 27 n.16. In addition, Plaintiffs do not allege facts showing the results necessarily meant that Integra would not meet the timeline to relaunch. Plaintiffs' case is distinguishable. *See Roofer's Pension Fund v. Papa*, 2018 WL 3601229, *22 (D.N.J. July 27, 2018) (defendants "implied firsthand knowledge").

### 3.    The New FE Allegations Fail to Establish Scienter.

The new FE allegations (FEs 16-20) are consistent with Defendants' statements, and none supports an inference that Defendants knew information that contradicted their public statements. Further, the new FEs were too poorly positioned, were too junior to interact with the Individual Defendants, were employed for too short a period, or were not involved in remediation or the Company's public disclosures. Br. at 18-19. The Opposition does not even attempt to distinguish the Court's prior decision or Defendants' other cases (*Zimmer* and *Dura*). Opp. at 27-29. "More of less is not more." *In re Campbell Soup Co. Sec. Litig.*, 2022 WL 6961796, *11 (D.N.J. Oct. 11, 2022) ("the principal difference between the FAC and the SAC is that the SAC added the statements of more CWs without elevating the quality and specificity of their statements").

Defendants' argument is not that the FEs lack "personal knowledge" of all "facts attributed to them." Opp. at 29. Rather, Defendants' argument is that, for a variety of reasons, the FEs do not know what the Individual Defendants knew. For example, FE 17 was not at Integra when Defendants reaffirmed the timeline to relaunch Boston and therefore FE 17 cannot opine on what Defendants knew about the likelihood of meeting the timeline when those statements were made.

At most, the new FE allegations reflect unsupported assertions and disagreements with management in hindsight, but not that Defendants knew remediation was doomed or their statements were misleading. Br. at 20. Plaintiffs' argument that the new FEs "confirm[] Defendants' scienter for earlier statements" predating Krause and Myers is incorrect. Opp. at 27-28. Generalized statements that "misconduct began" or cGMP violations occurred "by no later than 2015" (*id.*) do not corroborate Krause's and Myers' allegations of events many years later.

### 4.    Viewed Holistically, the Non-Culpable Explanations Are More Plausible Than an Inference of Scienter.

People do not commit fraud on a whim and for no reason. The Opposition concedes

-11-

Defendants did not profit from stock sales, "Plaintiffs do not contend that Defendants' focus on profits constitutes a motive," and Integra repurchased hundreds of millions of dollars of its own stock. Opp. at 28 n.17, 35.[12] The absence of motive undermines scienter, especially now that Plaintiffs' theory is deliberate fraud. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) ("Where motive is not apparent ... the strength of the circumstantial allegations must be correspondingly greater"); *Endologix*, 962 F.3d at 415 (similar); Opinion at *19; *Papa*, 2018 WL 3601229, at *18 (Plaintiffs' case noting lack of motive). Plaintiffs fail to respond to most of Defendants' cases (*Genzyme*, *Stryker*, *Bioxcel*, *Ocular*, *Rahman*, *PharmaNet*, and *FreeMarkets*). It is implausible to believe that the nine Individual Defendants—who worked at Integra at different points during the over five-year class period—agreed to undermine remediation for no personal benefit. The more plausible inference is that remediation is complex and was subject to competing views, and ultimately Defendants underestimated how difficult it would be.

> **B.     The Complaint Fails to Allege a Materially False or Misleading Statement.**
>
> > **1.     The "Compliance" Statements Were Puffery or Otherwise Not False When Made.**
> >
> > > **a.     Inactionable Puffery**

The compliance statements (Statements 12, 13, 20, 21) are inactionable puffery. Br. at 23-24. Plaintiffs counter that the statements were "verifiably false." Opp. at 45. Not so. For example, no metric can measure if "product safety and quality are paramount." Statement 21. None of the statements declare Integra *was* in compliance with cGMP; instead, laden with empty superlatives,

---

[12] Plaintiffs do not explain why it would matter if Integra used "funds it raised from investors" for share repurchases. Opp. at 35 n.23. There is thus no "factual dispute," and Plaintiffs' cases do not stand for that proposition. *See City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2025 WL 1577315, *15 (D.N.J. June 4, 2025) ("repurchase program consisted of [defendants] unloading" stock as "part of the insider sell off"); *Papa*, 2018 WL 3601229, at *18 (court had already concluded that proffered motives failed).

they explain Integra tried "to meet the highest and most current quality standards" and "adhere[]" to cGMP to "deliver the highest quality products." Statements 13, 21. Plaintiffs' attempts to distinguish Defendants' cases fail. Br. at 23 n.11, 24; Opp. at 45 & n.29. Their argument that the statements in these cases "were 'too vague to be verified'" (Opp. at 45), proves Defendants' point because the language is virtually identical.[13] Plaintiffs try to distinguish four of Defendants' cases because Integra operates in a heavily regulated industry (Opp. at 45 n.29), but so did the companies there. Br. at 23 n.11 (banking, construction, food, and pharmaceutical industries).[14]

These statements are also inactionable opinions. Br. at 24 n.12. Plaintiffs do not directly address this argument and do not even try to distinguish Defendants' case. Opp. at 44-46, 48-49.

### b.    Not Materially False or Misleading When Made

The compliance statements were not false or misleading when made. Br. at 24-26. As noted, the statements did not represent that Integra was in compliance—only that Integra tried to

---

[13] *E.g.*, *compare* Statement 21 ("We continuously improve our Quality Management System (QMS) to meet the highest and most current quality standards."), *with City of Warwick Ret. Sys. v. Catalent, Inc.*, 2024 WL 3219616, *5 (D.N.J. June 28, 2024) & Compl. (Dkt. 47), 2023 WL 6540972, ¶338 ("our continuous improvement activities devoted to operational and quality excellence"); *compare* Statement 12 ("We have numerous mechanisms and processes embedded within our business operations to protect and ensure product quality"), *with Catalent*, 2024 WL 3219616, at *5 & Compl. (Dkt. 47), 2023 WL 6540972, ¶338 ("we have taken and continue to take steps to … ensure the integrity and quality of our products and services"); *compare* Statement 13 ("Integra adheres to good manufacturing practices"), *with Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 549 (W.D. Pa. 2019) ("We comply with all laws").

[14] It is Plaintiffs' cases that are inapposite. Opp. at 45 & n.29. Two involved representations of fact that the defendants ***were*** in compliance or had ***completed*** remediation. *See Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 2010 WL 4184465, *2, 6 (E.D. Mich. Oct. 21, 2010) & Compl. (Dkt. 23), 2010 WL 1625949, ¶¶102, 118, 122; *Gov't of Guam Ret. Fund v. Invacare Corp.*, 2014 WL 4064256, *3-4 (N.D. Ohio Aug. 18, 2014). Two others upheld claims against statements about specific steps the defendants had taken in response to a warning letter when the defendants had not, in fact, taken those steps. *See Dr. Reddy's*, 2019 WL 1299673, at *4, 9, 17; *Mulligan*, 36 F. Supp. 3d at 957-59, 967-68. Plaintiffs mischaracterize the last case as "sustaining" two statements (Opp. at 45), but those statements were made before the class period and the court did not rule on them. *In re Able Lab'ys Sec. Litig.*, 2008 WL 1967509, *1, 3 & n.16 (D.N.J. Mar. 24, 2008).

comply.  As in *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 WL 1950399, \*6 (D. Mass. Apr. 30, 2019), *aff'd*, 955 F.3d 194 (1st Cir. 2020), such general statements are not misleading, especially when any negative FDA correspondence has been disclosed.  Plaintiffs assert the "adheres to" cGMP statements here are "far more concrete" than the "using" cGMP statements in *Ocular* (Opp. 45-46 & n.28), but Plaintiffs do not explain why investors would distinguish between statements about using, following, adhering to, or being committed to cGMP.

Plaintiffs concede that none of the compliance statements are specifically about Boston, as opposed to Integra's dozen-plus facilities more generally, and do not attempt to distinguish the ruling in *Stryker* that a similar "generic statement" was not misleading because it "did not refer to any particular … facility."  865 F. Supp. 2d 811, 824 (W.D. Mich. 2012); Br. at 25-26.  Contrary to Plaintiffs' contention about "context" (Opp. at 46), Defendants did not state remediation in Boston was ***finished***.  In fact, Defendants warned the opposite—that remediation "continues" and "[u]ntil the issues … are resolved to the FDA's satisfaction," "[a]ny adverse regulatory action … could have a material adverse effect ...."  Ex. 12 at 33; *see also* Ex. 24 at 5-6.  Plaintiffs also contend that Defendants' "statements about the 2021 Form 483 did not disclose the repeated violations of the same cGMP requirements" (Opp. at 46), but this fails because the context of that disclosure—in the middle of a paragraph about quality systems issues at Boston—made clear that the FDA remained dissatisfied with the Boston remediation (*see* Ex. 12 at 33).

Plaintiffs point to "Integra's stock price declines following the corrective disclosures" (Opp. at 46), but stock prices decline for many reasons.  Plaintiffs' case is distinguishable because the omitted risk there—that the FDA could "treat [defendants' product] as a drug/device combination"—was not public, whereas here Boston's status was public because Integra had disclosed the FDA's correspondence.  *See In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020

-14-

WL 1479128, *1, 14-15 (E.D. Pa. Mar. 25, 2020).  That makes this case far more like Defendants' cases, where the plaintiffs unsuccessfully made the same stock drop argument.  *See Ocular*, 2019 WL 1950399, *6-7; *Catalent*, 2024 WL 3219616, *4 n.8, 5-6.

Finally, although they argue the "FEs show that … cGMP failures remained unremediated throughout the Class Period" (Opp. at 46 & n.30), Plaintiffs fail to explain how they painted a materially different picture of Boston's compliance status from the publicly available FDA warning letters, which also spanned the putative class period.  *See, e.g.*, Br. at 19-20 & n.8.

### 2. The "Remediation" Statements Were Inactionable Forward-Looking Statements, Opinions, or Otherwise Not False When Made.

#### a. Protected by Safe Harbor for Forward-Looking Statements

Plaintiffs concede that Statements 14, 16, 18, 19, 22-26, and 28 were identified as forward-looking.  Br. at 27; Opp. at 46-48.  Quoting parts of five statements, Plaintiffs argue they were not really forward-looking because they implicated current or past events.  But four of the five quotes are parts of the statements that Defendants do not contend are forward-looking.  Br. 27 n.13; Opp. at 47.  The remaining one—Statement 22 ("Boston remediation continues to progress well")—is forward-looking because the statement supported that Boston's "time lines to get back into market … are real."  Ex. 27 at 6, 8.  A "statement that a company knows of no issues that would make a goal impossible to achieve [is] merely [an] alternative way[] of declaring or reaffirming the objective itself."  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021); *see In re Anadigics, Inc.*, 2011 WL 4594845, *21-23 (D.N.J. Sept. 30, 2011), *aff'd*, 484 F. App'x 742 (3d Cir. 2012).[15]

Under the first prong, the statements were surrounded by meaningful cautionary language.

---

[15] Plaintiffs' cases (*Conduent* and *Freshpet*) concerned past progress, rather than comfort about obtaining a future goal, and are inapposite for this reason.  Plaintiffs' citation to *Institutional Investors Group v. Avaya, Inc.* is puzzling because there the Third Circuit **upheld** the dismissal of similar "on track" statements.  *See* 564 F.3d 242, 254-59 (3d Cir. 2009).

Br. at 27.  Plaintiffs contend the language did not warn that "Defendants were obstructing remediation" (Opp. at 47), but the facts alleged in the Complaint do not support an inference of deliberate obstruction.  §I.A.  Plaintiffs' cited case (*Enzymotec*) is not about quality remediation and the warned-of risk (adverse regulatory action) had already come to pass there.  Plaintiffs do not try to distinguish the rulings about cautionary language in *Ocular* or *Talis*, cited by Defendants.

Under the second prong, Plaintiffs fail to adequately allege that Defendants actually knew their predictions were unachievable, especially as to the barely addressed statements regarding the timeline to relaunch Boston.  Br. at 28-29; §§I.A, III.  Plaintiffs' case is distinguishable because there the FDA told the company that a new application was needed, which made delay inevitable; no similar undisclosed FDA instruction is alleged here.  *See Becton*, 620 F. Supp. 3d at 190.

### b.      Inactionable Opinions

Many of the remediation statements (Statements 9-10, 14, 16, 22-25, 27, 29) are inactionable opinions.  Br. at 29-30.  Plaintiffs respond that one part of one statement was not an opinion, but Defendants do not argue that part of the statement was an opinion.  Br. at 29 n.15; Opp. at 48.  The part of that statement to which Defendants' argument applies—"we're on the *right track* with our execution"—is an opinion because it is a "qualitative expression" of performance.  *See* Statement 14 (¶399); *Yan v. Rewalk Robotics Ltd.*, 973 F.3d 22, 32 (1st Cir. 2020).  Plaintiffs do not attempt to distinguish Defendants' case on this point (*Catalent*), and Plaintiffs' cases are not about quality remediation.[16]

Plaintiffs further argue that Statement 14 "omitt[ed] material facts about the lack of

---

[16] *See SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 900 (E.D. Pa. 2018) (specific observation of fact—"[w]e also saw a 59% reduction in abuse from the new formulation"—not an opinion); *Cont'l Gen. Ins. Co. v. Olafsson*, 2024 WL 4263211, *11 (D.N.J. Sept. 23, 2024) (not individually analyzing which statements were and were not opinions).

remediation and its effect on production." Opp. at 48. But Defendants disclosed the production pause due to remediation challenges on the very same day. ¶¶268-69. Plaintiffs argue Defendants' cases are distinguishable because they "lacked" the "extensive contemporaneous facts" here, but this undeveloped argument does not indicate which facts were missing or why those facts matter. Opp. at 49 n.34. Plaintiffs' cases either support Defendants' position or are distinguishable.[17]

The court presiding over Krause's complaint has already dismissed her defamation claim because Statement 29 is a protected opinion. Br. at 30. Plaintiffs ask this Court to reach the opposite conclusion because they allege "De Witte falsely told investors that Integra's remediation efforts were working when they were not." Opp. at 49. But that is *not* what Statement 29 says— De Witte admitted that "we were not as far along as we thought" and "there's more to be done." Ex. 33 at 8. Further, the only FE employed by Integra when this statement was made (FE 15) has already been found insufficient by this Court. Opinion at *19.

Finally, Plaintiffs fail to respond to Defendants' independent argument that Statements 9-10, 16-17, 19, and 21 are puffery. Br. at 30 n.16. Thus, these statements should be dismissed.

### c. Not Materially False or Misleading When Made

The remediation statements were not false *when made* simply because remediation ultimately failed, and Plaintiffs concede falsity cannot be premised solely on that. Br. at 31. Plaintiffs' overarching theory that these statements were misleading because Defendants deliberately tried to undermine remediation (*e.g.*, Opp. at 40, 41) fail because the Complaint does not adequately allege facts to support such an extreme allegation. §I.A.

---

[17] *See Catalent*, 2024 WL 3219616, at *7 (upholding opinion about remediation progress); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2022 WL 889158, *2, 10-11 (E.D. Pa. Mar. 25, 2022) (undisclosed kickback and price gouging schemes fueling drug sales rendered opinions about sales misleading).

-17-

Significant Efforts to Remediate Statements Not Misleading.  Statements 1, 3, 9, 14, 16, and 19 were not misleading because they stated only that Integra was trying to remediate and Defendants disclosed setbacks as they arose.  Br. at 31-32.  Plaintiffs quote other statements, but do not explain how those other statements render Statements 1, 3, 9, 14, 16, and 19 misleading.  Opp. at 40.  The only statement in this category that Plaintiffs quote is Statement 14, but that statement noted Integra was "***working***" on remediation, not that remediation had succeeded.

Plaintiffs also argue that "[n]one of Defendants' statements disclosed the substantial costs and production delays necessary to remediate ...."  Opp. at 40.  In fact, Defendants did disclose that remediation was costing millions of dollars.  *See, e.g.*, Ex. 10 at 41 (In 2020, Integra "paid $38.9 million for capital expenditures, most of which were directed to [its] facilities located in Mansfield, MA; Boston, MA; Memphis, TN; and Princeton, NJ[.]").[18]  Krause's allegation that the remediation budget for Boston was cut "by $7.5 million" in 2022 confirms Integra's spend was significant.  Dkt. 99-2 ¶20.  Further, the alleged cuts are not inconsistent with the statements because Statements 1, 3, and 9 preceded the cuts, and there are no factual allegations about spend in 2023, when Statements 14, 16, and 19 were made.  In any event, the statements could not be misleading for this reason because the Complaint does not adequately allege that Defendants knew when the statements were made that their efforts or spend would be insufficient.  §I.A.  Plaintiffs' case is nothing like this case.  *See In re Merck & Co., Inc.*, 2011 WL 3444199, *9 (D.N.J. Aug. 8, 2011) (touting drug's lack of one side effect was misleading for omitting a different side effect).

Plaintiffs' two-sentence defense of their FEs does not grapple with their many

---

[18] This argument does not "raise[] a premature factual dispute" because Plaintiffs have not alleged any facts to dispute this disclosure, unlike the plaintiff in their cited case.  Opp. at 41; *Flora*, 776 F.3d at 176 n.10.  Plaintiffs also ignore Defendants' case (*Cook*), where the court considered SEC filings for a similar purpose.  *See Bartesch v. Cook*, 941 F. Supp. 2d 502, 509 (D. Del. 2023).

insufficiencies.  Br. at 32, 34; Opp. at 43.  Plaintiffs also ignore many of Defendants' cases, including *Discovery*, *StoneMor*, *Shemian*, *Supreme*, *Intelligroup*, *Chubb*, and *Payne*.  Plaintiffs' own cases are distinguishable because the defendants there stated that they took steps that they had not, and that remediation was essentially finished when it was not.  *See Mulligan*, 36 F. Supp. 3d at 953-59, 968; *Dr. Reddy's*, 2019 WL 1299673, at \*4, 9, 17; *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, \*7, 18-19, 21 (N.D. Ill. Feb. 13, 2013).

Status Statements Not Misleading.  Statement 9 was not misleading because it did not assert that Boston remediation was complete, and even if it had, the subsequent 2021 Form 483 would have corrected any misunderstanding.  Br. at 33.  Plaintiffs do not seriously grapple with Defendants' argument that they frankensteined this statement to reach their unreasonable interpretation.  Instead, they respond that the 2021 Form 483 "(i) … had ***not*** yet [been] issued; and (ii) was ***never*** provided to investors."  Opp. at 40 n.24.  The first point does not matter because the 2021 Form 483 was disclosed long before any of the alleged corrective disclosures; the second point does not matter because the subject matter of the 2021 Form 483 was clear as noted above.

Statement 10 was not misleading because it was about Integra as a whole.  Br. at 33.  Plaintiffs reply that "when made, Integra had only one FDA warning letter—for the Boston Facility."  Opp. at 41.  But quality systems can be improved in facilities not operating under a warning letter, and Statement 10 clearly referred to improvements for "all sites."  *See* Ex. 11 at 14.

Statement 14 was not misleading because the Complaint alleges no facts about the March 2023 audit cited in the statement.  Br. at 33-34.  Plaintiffs argue a "significant problem with Integra's measurement of endotoxin levels [was] identified weeks earlier" (Opp. at 41-42), but ignore that the Complaint does not allege De Witte knew this issue when he spoke or whether the March audit identified the issue but concluded it was solvable.  Br. at 34.  The Complaint concedes

the revised test results were not known until *after* Statement 14 was made.  ¶196.  Plaintiffs' cases (*Strougo* and *Immunomedics*) are distinguishable because they *did* allege defendants' knowledge of the omitted issues and did not have an intervening assessment like the March audit here.

Statement 27 was not misleading because the Complaint alleges no facts about the January 2024 dress rehearsal audit.  Br. at 34.  Although Myers alleges that particles "were discovered" in certain products two days before De Witte made Statement 27, he does not allege that De Witte knew of this discovery.  Ex. 45 ¶20.  Plaintiffs argue De Witte's lack of knowledge "is not a credible inference" (Opp. at 42), but it is Plaintiffs' burden to allege facts showing De Witte's knowledge, and they failed to do so.  Plaintiffs also ignore that (i) this issue may have been one of the "limited observations" of the audit that could be overcome; and (ii) Krause alleges the dress rehearsal auditor "believed that Integra was ready for the [final] audit."  Br. at 34; Dkt. 99-2 ¶61.

Patient Safety Statements Not Misleading.  The Complaint fails to adequately allege that Statements 3 and 17 were misleading because the Complaint does not allege any undisclosed patient complaints when the statements were made.  Br. at 34-36.  Even if "Defendants were deliberately *not* making necessary enhancements" (Opp. at 42), the statements would still not be misleading because Plaintiffs concede that quality systems issues (what the FDA observed at Boston) are distinct from patient safety issues and that Defendants warned the quality systems issues could give rise to safety issues.  Br. at 35.  Plaintiffs point to "80 patients complaining of negative physical reactions consistent with endotoxin exposure" (Opp. at 42), but ignore that these complaints were disclosed before Statement 17 was made (Br. at 35; Ex. 21 at 1).  Defendants addressed the "[p]atient safety is non-negotiable for us" part of Statement 17 as puffery; Plaintiffs do not explain how such a vague statement is "verifiable."  Opp. at 42 & n.26; Br. at 30 n.16.

Leadership Changes Statement Not Misleading.  Statement 29 is not misleading because

the Complaint does not any allege facts about the changes Integra was or was not making then. Br. at 36. Plaintiffs assert the statement was "about Krause's and Myers' departures" (Opp. at 42-43), but ignore that the court presiding over Krause's complaint ruled the statement does not refer to Krause and there is no reason to reach a different conclusion about Myers (Br. at 36).

### 3. The "Capacity" Statements Were Inactionable Forward-Looking Statements or Opinions, or Otherwise Not False When Made.

#### a. Protected by Safe Harbor for Forward-Looking Statements

Four of the capacity statements (Statements 4, 5, 7, 15) are protected by the safe harbor. Br. at 36-37. Plaintiffs do not seriously dispute these statements are forward-looking and identified as such. Their generic protest does not apply because Plaintiffs do not indicate which of the four capacity statements address "past events or current conditions"—and none do. Opp. at 46-47.[19]

Under the first prong, the capacity statements were surrounded by meaningful cautionary language. Plaintiffs assert that Defendants did not "warn[] investors that increased capacity hinged on being able to 'successfully remediate.'" Opp. at 47 n.32. To the contrary, Defendants warned of precisely that risk: "We cannot … give any assurances that the FDA will be satisfied with our response" and actual results could differ materially based on "the success of our quality initiatives" and "our ability to remediate matters identified in inspectional observations or warning letters issued by the FDA, while continuing to satisfy the demand for our products[.]" Ex. 3 at 2; *see also* Ex. 12 at 15, 33 (similar); Ex. 6 at 12-13, 33 (more about capacity risks). Plaintiffs fail to address any of Defendants' cases on this point (Br. at 37), and their case (*Enzymotec*) is not about the risk of quality systems issues on capacity predictions (Opp. at 47). Plaintiffs also argue Defendants did not warn that they "were obstructing remediation." Opp. at 47; *see also id.* at 44. Aside from

---

[19] In *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 659, 666 (E.D. Pa. 2021), the defendants made a representation about "current contract manufacturers" that they did not have.

being unsupported (§I.A), this argument does not apply to Statements 4, 5, and 7, which were made long before Krause and Myers joined Integra, or to Statement 15, which is about the expected capacity of Braintree rather than remediation at Boston. Thus, Plaintiffs' attempt to distinguish Defendants' cases (*Iradimed* and *PolarityTE*) on this basis fails. Br. at 39 & n.22; Opp. at 44 n.27.

Plaintiffs also do not plead actual knowledge of falsity under the second prong. §§I.A, III.

#### b.    Inactionable Opinions

Three of the capacity statements (Statements 5, 6, 8) are inactionable opinions. Br. at 37-38. Plaintiffs do not respond specifically to this section of Defendants' Brief; they dispute only the opinion statements concerning remediation and make no effort to apply their arguments to opinion statements concerning capacity. Opp. at 48-49. Plaintiffs also fail to respond to Defendants' independent argument that Statements 5 and 8 are puffery. Br. at 38 n.21. Accordingly, these statements should be dismissed.

#### c.    Not Materially False or Misleading When Made

Conceding the capacity statements were true, Plaintiffs resort to arguing they were misleading. Opp. at 43-44. But they were not misleading because Defendants disclosed the FDA correspondence, the risks to Boston's manufacturing capacity if remediation failed, and when Boston no longer manufactured at capacity. Br. at 39; §I.B.3.a; ¶268. By contrast, Plaintiffs' case does not concern quality issues and involved ***un***disclosed risks. *See In re Coinbase Glob., Inc. Sec. Litig.*, 2024 WL 4053009, *10-11 (D.N.J. Sept. 5, 2024). Plaintiffs' argument about endotoxin testing and the recall is fraud by hindsight. The capacity statements long preceded these events, except for Statement 15, which was about Braintree, not Boston. ¶¶196, 277.

Additionally, these statements were not misleading because they concern capacity—not quality systems. Br. at 38-39 & n.22. Plaintiffs respond that "investors would have understood Defendants' statements to convey that Integra could meet demand while complying with cGMP"

(Opp. at 44), but their cases did not interpret capacity statements. *See Mulligan*, 36 F. Supp. 3d at 961 (remediation); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179-80 (2015) (compliance). By contrast, Defendants cite two cases dismissing statements about capacity for this reason (*Mylan* and *PolarityTE*). Plaintiffs ignore *Mylan* and try to distinguish *PolarityTE* by arguing the plaintiffs there did not allege "the defendants never intended to remedy the alleged violations" (Opp. at 44 n.27), but that distinction does not address whether investors would read implicit representations about quality into statements about capacity.

Finally, Plaintiffs argue that "Defendants minimized" "risks to production capacity." Opp. at 44. But the only cited example (Integra "d[id] not expect to incur material incremental expense for remediation activities", *see id.*) comes from the first day of the class period, and the operative Complaint's allegations regarding Defendants' knowledge at that time about the necessary costs of remediation are just as thin as the prior complaint's.[20] Plaintiffs also ignore the context of this statement, which followed Integra's disclosure that "Sales of products in the Boston facility constituted less than 4% of the Company's consolidated revenues." Ex. 3 at 2. In other words, Integra disclosed that it did not expect remediation costs to be material in the context of Integra's overall business, which generated more than $1.4 billion in revenue. Ex. 6 at 39. Integra never suggested that "cGMP violations identified by the FDA presented no material issues." Opp. at 38.

### C.      The Complaint Fails to Plead Loss Causation After May 23, 2023.

By May 23, 2023, Integra had disclosed three Form 483s, two Warning Letters, the production pause, the recall, and related negative financial results. Lead Plaintiff Pembroke filed

---

[20] Accordingly, Plaintiffs' attempt to distinguish *Anadigics* because "the company was unaware of deficiencies at the time" fails. Br. at 39 n.22; Opp. at 44 n.27. By contrast, Plaintiffs' cases involved facts showing that the defendants knew FDA action was all but inevitable. *See* Opp. at 39; *Invacare*, 2014 WL 4064256, at *4; *Becton*, 620 F. Supp. 3d at 186-89.

suit shortly thereafter. Dkt. 1. Thus, any earlier challenged statements had been fully corrected. The Complaint does not plead loss causation for any later disclosures because it fails to allege facts showing the later disclosures revealed anything new about the earlier statements. Br. at 40-42.

Plaintiffs' arguments fail, regardless of the applicable pleading standard (which should be Rule 9(b), *see* Opp. at 52; Br. at 40 n.23). *First*, Plaintiffs point to Defendants' predictions after May 23, 2023 about the Boston relaunch timeline, which analysts repeated. Opp. at 52. These predictions may not have panned out, but they were not misleading. §I.B.2.a. At the very least, the July 29, 2024 disclosure should be dismissed because the permanent shutdown of Boston was announced on July 15, 2025 (¶310), and no statements in the interim weeks are challenged.

*Second*, Plaintiffs argue that the final three alleged corrective disclosures revealed "new information regarding the extent of Integra's compliance deficiencies and their impact on its business." Opp. at 52-53. But further negative information about "the seriousness and extent" of a ***previously known*** problem does not count as "new information." Opp. at 53. Contrary to Plaintiffs' argument (Opp. at 53 n.39), Defendants' cases involved disclosure of previously ***un***known information such as disappointing earnings or reduced guidance; nevertheless, these courts ruled that this information did not reveal the alleged fraud because the alleged ***cause*** of that negative information was previously known, as it was here.[21]

Nor are Plaintiffs' other allegations corrective. Plaintiffs ignore that "De Witte's resignation" was not immediate (he remained CEO for 10 more months) and not alleged to be related to Boston quality systems issues (Opp. at 52; Br. at 41 n.24); the "relocati[on of] all … EBM manufacturing operations to Braintree" had long been disclosed (Opp. at 53; Br. at 9; Exs.

---

[21] *E.g.*, *Dalberth v. Xerox Corp.*, 766 F.3d 172, 181, 188 (2d Cir. 2014) (earnings miss not new); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, *12 (N.D. Cal. Mar. 23, 2020) (lowered guidance not new), *aff'd on other grounds*, 848 F. App'x 278 (9th Cir. 2021).

13, 14); and the company-wide compliance plan says nothing about Boston as the permanent shutdown of Boston was announced weeks earlier (Opp. at 53; Br. at 7).  Unlike here, Plaintiffs' cases involved far more than disappointing financial results due to a previously known problem.[22]

## II.    PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II).

The scheme claim should be dismissed.  Plaintiffs do not allege which Individual Defendants performed the deceptive acts, a fatal flaw.  Br. at 44; *Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, *14 (D.N.J. Apr. 30, 2020).  And, as with Count I, the claim fails multiple elements, including scienter and loss causation.  Br. at 42-43; Opp. at 49-50.

Plaintiffs do not meaningfully contest that the scheme claim is "part and parcel" of Count I.  Plaintiffs claim their list of allegedly deceptive acts "go[es] beyond" the alleged misstatements (Opp. at 49), but they ignore that the challenged statements are alleged to be misleading due to those ***very*** acts (Br. at 43 & n.26).  Plaintiffs' authority is distinguishable on this basis.[23]

Plaintiffs concede that the deceptive acts must have been ***designed*** to deceive, and

---

[22] *See In re Mylan N.V. Sec. Litig.*, 2025 WL 1874621, *1, 5-6 (W.D. Pa. July 8, 2025) (statements about "permanent" impacts of cGMP violations to production volume and products at the facility were *new* due to a prior statement that denied as "simply false" any allegation that the company circumvented data or quality systems); *Hall v. Johnson & Johnson*, 2019 WL 7207491, *29 (D.N.J. Dec. 27, 2019) (article conveyed *new* information because it identified internal documents showing company executives knew talcum powder contained asbestos and hid this fact for years because prior statements denied as much); *Coinbase*, 2024 WL 4053009, at *3, 17 n.23 (company's disclosure for the *first time* of risk that in a bankruptcy customer assets could be part of the bankruptcy estate and unrecoverable was *new* information); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 291-92 (S.D.N.Y. 2008) (cutting off class period before later disclosure that SEC inquiry into the issues had escalated).

[23] *See Cognizant*, 2020 WL 3026564, at *17  (defendant's participation in the scheme "extended far beyond the mere dissemination of alleged misstatements[,]" including both concocting a bribery scheme and in hiding it); *In re FirstEnergy Corp.*, 2022 WL 681320, *13-14 (S.D. Ohio Mar. 7, 2022) (same, including bribes to politicians and using pass-through entities to conceal the bribes); *Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 300 & n.17 (3d Cir. 2025) (not a scheme liability case).

*succeeded* in deceiving, *investors*. Br. at 44; Opp. at 50-51. Contrary to Plaintiffs' assertion, they allege no facts showing Defendants *intended* their acts, or the acts of subordinates (such re-testing to compliance or refusing to install cameras), to deceive investors. Br. at 44. At most, the alleged impact on investors was an unintended consequence of their alleged actions. Opp. at 51. If Plaintiffs' scheme claims were sufficient, scheme liability would "reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way." *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 162 (2008).[24]

## III. THE COURT SHOULD DISMISS EACH CLAIM AGAINST EACH INDIVIDUAL DEFENDANT (COUNTS I, II, AND III).

Plaintiffs' failure to include a section to address the Individual Defendants is an implicit concession that Plaintiffs have engaged in group pleading and have not pleaded each element of each claim as to each Individual Defendant, as required. Br. at 45.

By failing to respond to Defendants' other arguments, Plaintiffs concede the Complaint does not sufficiently plead scienter, scheme liability, or even a challenged statement (let alone a misleading one, §I.B) as to any specific Individual Defendant. Plaintiffs concede Arduini made no challenged statements. Br. at 48. Myers does not identify any alleged wrongdoer, referring only to unnamed "senior executives" and one conversation with Leonard. ¶¶212, 215. Krause only mentions De Witte, Schwartz, Redondo, and Anderson. ¶¶184-207. Plaintiffs do not rebut

---

[24] Plaintiffs' cases are inapposite. In *Cognizant*, an officer who participated in a bribery scheme "knew that the way in which the bribe payments were ultimately disguised ... would result in Cognizant reporting overstated capitalized expenditures and overstated earnings," thereby directly deceiving investors. 2020 WL 3026564, at *17. In *Mylan*, the scheme claim survived because the defendants only argued that it was "entirely derivative" of the surviving misrepresentation claim. 2023 WL 3539371, at *20. *SolarWinds* involved an executive disseminating a false statement and promoting it on podcasts, blog posts, and press releases, which clearly had a sufficient connection to investors. 741 F. Supp. 3d 37, 87 (S.D.N.Y. 2024). In *Medtronic*, the allegedly manipulated clinical studies were "published" and thus in the public domain for investors to rely upon. 57 F. Supp. 3d 950, 982 (D. Minn. 2014).

-27-

the Individual Defendants' scienter arguments.  All but giving up on Arduini, Coleman, Davis, Knight, and Leonard entirely, the Opposition hardly mentions them, continuing to rest on insufficient allegations of meetings, FDA feedback, and the mere fact that some spoke about remediation.  Opp. at 5, 27, 29, 32; §I.A; Br. at 47-52.  Plaintiffs' allegations against Anderson are limited to budget cuts (Opp. at 8, 12, 33), and against Redondo are limited to the October 2022 investigation (Opp. at 8, 23)—both rebutted above.  §§I.A, I.B.  The allegations against De Witte and Schwartz also fail for the reasons explained elsewhere.  §I.A; Br. at 50, 52-53.

Plaintiffs argue that because the Complaint "alleges Section 10(b) claims, it also adequately pleads Section 20(a) claims against each individual defendant."  Opp. at 53 n.40.  This argument ignores that Section 20(a) requires two additional elements—control and culpable participation.  Plaintiffs concede that culpable participation fails for each Individual Defendant (Br. at 46-47), and that Davis, Leonard, and Redondo did not "control" Integra (Br. at 49-50, 52-53).

## CONCLUSION

Plaintiffs have had adequate opportunity to plead their securities fraud claims.  They have failed.  Dismissal should be with prejudice.

Dated:  January 29, 2026

Respectfully submitted,

REED SMITH LLP

s/ John McDonald
John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Gregory L. Watts (admitted *pro hac vice*)
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John I. Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra LifeSciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, Eric Schwartz, and Tracy Redondo*

-28-