REED SMITH LLP

John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Gregory L. Watts (admitted *pro hac vice*)
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John I. Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra LifeSciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, Eric Schwartz, and Tracy Redondo*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE INTEGRA LIFESCIENCES HOLDINGS CORPORATION SECURITIES LITIGATION | Master Docket 3:23-cv-20321-MAS-TJB<br><br>ORAL ARGUMENT REQUESTED<br><br>Motion Day:  February 17, 2026 |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS AND STRIKE PLAINTIFFS' SUPPLEMENTAL COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    THE COURT SHOULD DISMISS THE RULE 10b-5(b) CLAIMS (COUNT I). ............ 1

    A.    The Complaint Still Fails to Plead a Strong Inference of Scienter. ........................ 1

    B.    The Complaint Fails to Allege a Materially False or Misleading Statement. .......... 4

        1.    "Compliance" Statements ................................................................. 4

        2.    "Remediation" Statements ............................................................... 4

        3.    "Capacity" Statements ..................................................................... 6

    C.    The Complaint Fails to Plead Loss Causation After May 23, 2023. ...................... 7

II.   PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II). .............................. 7

III.  THE COURT SHOULD DISMISS THE INDIVIDUALS (COUNTS I, II, AND III). ............................................................................................................. 7

CONCLUSION ......................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Express Scripts Holding Co. Sec. Litig.*,
    2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ........................................................................6

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
    19 F.4th 601 (4th Cir. 2021) ..............................................................................................4

*Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
    951 F. Supp. 2d 479 (S.D.N.Y. 2013).................................................................................5

*Winer Fam. Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007).................................................................................................6

### RULES

SEC Rule 10b-5(b)..................................................................................................................1, 7

**INTRODUCTION**

Plaintiffs' supplemental complaint (the "Supplement," Dkt. 103) adds little. Defendants' prompt and repeated disclosure of FDA feedback, remediation setbacks, and negative financial results still undermine scienter, as the Court has ruled. If anything, the Supplement weakens Plaintiffs' case by confirming that former employee Susan Krause's recommendations *were* ultimately followed and that even the information she alleges was withheld from investors was, in fact, *disclosed*. Krause complains that Integra's Q1 2023 Form 10-Q omitted a manufacturing and distribution hold at Boston, but ignores that the pause was *disclosed* in Integra's Form 8-K and earnings call on the same day the Form 10-Q was filed. Krause also alleges Defendants failed to disclose that two private label customers cancelled orders, but ignores that Defendants *disclosed* that Integra was unable to fill private label orders while Boston was shut down for remediation. As the fourth pleading in this case, the Supplement should be dismissed with prejudice.

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS THE RULE 10b-5(b) CLAIMS (COUNT I).**

**A.    The Complaint Still Fails to Plead a Strong Inference of Scienter.**

The Supplement fails to address the scienter allegations the Court has found insufficient. Op. at *13-20; Br. at 8-9; Reply at 2-3. To the extent the Supplement adds color to the 2022 internal complaint, it still fails as explained below. The Supplement also does not address the reasons why unadjudicated allegations should be stricken or discounted. Br. at 9-11; Reply at 3-4. It simply adds uncorroborated allegations from the same bitter FE seeking money from Integra.

Setting aside its sensational language, the Supplement does not improve Plaintiffs' allegations. *First*, Krause's allegations still show that Defendants believed significant progress in remediation had been made, undercutting scienter. Br. at 11-12; Reply at 4-5. Indeed, Plaintiffs now admit that "upon her hire" in June 2021, Krause and thus Integra "successfully implemented

new and more effective processes at the Boston Facility and Integra's other manufacturing sites …." ¶187.b.  Although the Supplement's next sentence tries to undercut this admission, Plaintiffs do not plead facts showing Defendants tried to "stym[y]" these processes.  *Id.*  Krause's purported concerns—on which the Supplement relies—are about ***later*** events.  Krause also confirms that Integra submitted a PMA in August 2021 because Integra "believed at the time that the FDA warning letter would be removed within 60 days."  Ex. 51 ¶16.  Plaintiffs now allege that Integra only submitted the PMA because Defendants "believ[ed]" their "efforts to conceal … compliance deficiencies … would be successful …."  ¶189.  But Krause does not allege this, and Plaintiffs distort the timeline.  Krause alleges Integra submitted the PMA in August ***2021*** (Ex. 51 ¶16), and the meeting cited by Plaintiffs was in March ***2022*** (¶189).  Finally, Krause alleges—consistent with Defendants' statements—that the dress rehearsal auditor "believed that Integra was ready for the [final] audit …."  Ex. 51 ¶61.  Although the Supplement asserts Krause "recognized in February 2024 that the Boston Facility was not ready to be audited by the FDA" (¶201), she does not allege that.  Instead, she alleges that "Integra still needed to complete final documentation," "which would likely require [the final auditor] to re-audit."  Ex. 51 ¶¶61-62.  Krause does not allege that she or Defendants believed completing these steps would delay the timeline to relaunch Boston.

*Second*, many of Krause's purported concerns did not come to pass.  Br. at 12; Reply at 5-6.  For example, Krause alleges that De Witte and Schwartz asked her if WIP materials could be repurposed, or products could be relabeled.  Ex. 51 ¶¶38, 40.  Now Plaintiffs concede that De Witte and Schwartz agreed not to take these steps.  ¶199.a.  These allegations undermine scienter because they confirm that De Witte and Schwartz did not act against Krause's recommendation and ultimately accepted it after receiving feedback from the FDA.  *Id.*

*Third*, the non-fraud competing inferences from Krause's allegations are more likely than

inferences of fraud.  Br. at 13-15; Reply at 6-9.  As to the 2022 internal complaint, the Court previously ruled that "an internal investigation tends to undermine any inference of scienter."  Op. at *14.  That inference is reinforced by Integra's retention of outside counsel.  ¶¶197.a, 329.a. Although Krause alleges "Schwartz instructed [her] and the rest of the executive leadership team to cease and desist all communication with outside counsel" (¶197.a), it is not unusual for a chief legal officer to be the point-of-contact for outside counsel and such an arrangement preserves attorney-client privilege.  The Supplement also alleges "Schwartz and Redondo caused Krause to provide a letter to the FDA that they knew to be false because 'it did not include information regarding sterile and non-sterile product being mixed.'"  ¶¶197.b, 333.a.  But Krause concedes the FDA was notified that the complaint concerned "a culture issue and possible quality issues" (Ex. 51 ¶31), which summarizes the allegedly omitted information (¶197.b).  Further, Defendants ultimately provided the complaint to the FDA (¶197), curing any purported deficiency.

The Supplement otherwise contains more of the same regarding constructive debate among executives.  Br. at 14-15; Reply at 7-9.  It is common for executives to comment on presentations, the Supplement does not contain any facts showing that De Witte's and Schwartz's comments reflected bad faith, and Krause concedes the Board "was well-aware of the risk."  ¶200; Ex. 51 ¶65.  Colorful language to describe "'poor performance' during a dress-rehearsal audit" suggests that remediation was a priority.  ¶201.  Finally, Krause's allegations of her discussion with a director in March 2024 are vague, lacking any specifics about the "problem … regarding quality control and dishonesty," and more likely reflect that director reassuring Krause that Integra would investigate.  ¶¶202, 203.a.  Krause admits the alleged "concern[] about patient safety" arouse on March 8, 2024—*after* the last Boston timeline statements.  Ex. 51 ¶71.

In the end, the Supplement does not undermine the rationale for dismissal of the prior

complaint: Defendants promptly disclosed setbacks, did not profit from stock sales, and repurchased Integra stock. The more plausible inference remains that remediation was complex, and ultimately Defendants underestimated how difficult it would be. Br. at 21-22; Reply at 11-12.

### B. The Complaint Fails to Allege a Materially False or Misleading Statement.

#### 1. "Compliance" Statements

The compliance statements should be dismissed as puffery, inactionable opinions, or otherwise not false when made. Br. at 23-26; Reply at 12-15. The Supplement alleges that Statements 12, 13, and 21 were misleading because the quality department's budget and staffing were allegedly reduced. ¶¶439.a, 449.a. But these statements are still inactionable puffery and opinions, notwithstanding this allegation. Further, the statements were not misleading because they were not about the level of resources devoted to quality, and the Supplement does not allege that Defendants agreed with Krause's prediction that quality would suffer after the alleged reductions. *See KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 609 (4th Cir. 2021) (no securities fraud where former executive "believed the cuts he was being asked to make were misguided—not that [defendants] *agreed* with that assessment"). The allegation fails as to Statement 21 for the additional reason that Statement 21 was made a year after the alleged cuts and the Supplement contains no allegations about quality's budget or staffing for that later year.

#### 2. "Remediation" Statements

The Supplement alleges that new Statement 14.a ("The [2019] Warning Letter and 2021 FDA Form 483 do not restrict our ability to manufacture or ship products") in Integra's April 26, 2023 Form 10-Q was misleading because it omitted that "manufacturing and distribution was put on hold in Boston." ¶¶1.a, 207.a, 274, 398.a, 398.b. Although Krause alleges that her request to include this information was denied, she does not explain why, and the reason why is obvious: the production pause was disclosed in Integra's Form 8-K and earnings call—both on the same day as

the Form 10-Q.  Ex. 50 at 2 ("Paused production at the Boston manufacturing site"); Ex. 18 at 4 ("we have paused production at the Boston site").  Because Defendants disclosed the allegedly omitted information on the same day, Statement 14.a could not have been misleading.  *See Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 500 (S.D.N.Y. 2013) (press releases not misleading where each "was closely followed by … a Form 10–Q, which … expressly disclosed" the allegedly omitted information).  Even if the hold were not disclosed, Statement 14.a would still not be misleading, as the Supplement does not adequately allege that the pause was implemented ***because of*** the 2019 Warning Letter or the 2021 Form 483, both of which were received ***more than a year*** before the pause.

The old remediation statements remain inactionable forward-looking statements, opinions, or puffery, or otherwise not false when made.  Br. at 27-36; Reply at 15-21.  The Supplement adds allegations against four forward-looking statements (14, 16, 23, 25).  These statements should be dismissed under the first prong of the safe harbor because the cautionary language remains the same.  They should also be dismissed under the second prong.  The Supplement alleges Statements 14 and 16 were misleading due to the hold in Boston.  ¶¶275, 400, 442.  But the hold was public, and the Supplement contains no facts about the March 2023 audit referenced by De Witte or that Leonard knew the hold would prevent Boston from reaching "world-class quality assurance."  Krause gives no reason other than the (publicly disclosed) hold as to why she or the Chief HR Officer allegedly believed that Statement 16 "intentionally deceived investors."  Ex. 51 ¶41.  The Supplement also mentions alleged reductions in 2022 to the quality department's resources, but nothing about resources in 2023 when Statements 14 and 16 were made.  ¶¶402.a, 444.  Integra's investments in quality could still be "significant" even if they were not as high as Krause allegedly wished.  The Supplement alleges Statements 23 and 25 were misleading because "on May 15,

2023, the FDA explicitly instructed Integra to recall." ¶¶414.a, 421.a.  But the recall was disclosed a week later, and Statements 23 and 25 were made in September and October 2023.  Thus, the recall could not have made these statements misleading and says nothing about what Defendants knew when the statements were made.  Finally, Plaintiffs lack standing to challenge Statement 29, which was made after their last Integra stock purchase.  ¶434; Dkt. 53-1, 53-2, 53-3, 53-4; *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 325-26 (3d Cir. 2007) (dismissing later statements; plaintiff "only has standing to assert claims based on activity prior to the date [it] purchased its stock").

### 3. "Capacity" Statements

The Supplement alleges new Statement 28.a (Q. "there hasn't been any private label relationships that have been severed.  Is that fair?"  A. "that's fair to say.") was misleading because "two large private label customers had cancelled their Boston purchase orders."  ¶¶1.b, 207.a, 485.b, 485.c; Ex. 30 at 13-14.  But Defendants ***did disclose*** "lost sales from private label partners associated with the recall."  Ex. 28 at 7.  Moreover, that two customers allegedly cancelled ***orders*** does not mean Integra's ***relationships*** with customers were severed.  Moments before Statement 28.a, Defendants explained "at this point, we are not producing saleable finished goods yet, and we don't have orders from our private label partners."  Ex. 30 at 13.  Thus, the analyst knew orders were not being filled and wanted to know if relationships had been lost.  As the Supplement does not allege anything else about relationships, it fails to plead falsity.  *See In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, *13 (S.D.N.Y. Aug. 1, 2017) (describing relationship with largest customer as "great" despite threatened termination was not misleading without "definitive statement that [customer] no longer intended to do business with [defendant]").

The old capacity statements remain inactionable forward-looking statements, opinion, puffery, or otherwise not false when made.  Br. at 36-39; Reply at 21-23.  The Supplement alleges Statement 15 was misleading due to the hold at Boston.  ¶¶481-485.a.  Statement 15 is protected

under prong one of the safe harbor because the cautionary language remains the same. Statement 15 is also protected under prong two because the hold was already public when Statement 15 was made, and the Supplement contains no facts showing that Leonard knew the hold in Boston in 2023 would prevent Braintree (a different facility) from growing by 2025 (two years later).

### C.    The Complaint Fails to Plead Loss Causation After May 23, 2023.

The putative class period should end on May 23, 2023 because the Supplement does not contain new factual allegations to plead loss causation thereafter. Br. at 40-42; Reply at 23-25.

## II.    PLAINTIFFS' SCHEME LIABILITY CLAIMS FAIL (COUNT II).

The Supplement feathers a handful of allegations rebutted above into the scheme count. But the allegations fail there, too. Br. at 42-45; Reply at 25-26. *First*, the scheme claims fail to plead the required elements of scienter and loss causation. §§I.A, C. *Second*, the scheme claim impermissibly repackages the misstatement claim because the same allegations supporting the former also support the latter. The Supplement has the same defect. *E.g.*, *compare* ¶520(vii), *with* ¶¶407.a, 414.a, 485; *compare* ¶520(xvii), *with* ¶435; *compare* ¶520(xix), *with* ¶428; *compare* ¶520(xx), *with* ¶¶398.a, 485.b. *Third*, the Supplement fails to plead facts showing any connection between the alleged conduct and investors. The closest new allegations—failing to disclose "deficiencies and setbacks" and "refus[ing] to make … disclosures"—are not actually conduct, but rather alleged omissions and thus must meet the standards of Rule 10b-5(b). ¶¶520(xv), (xix).

## III.    THE COURT SHOULD DISMISS THE INDIVIDUALS (COUNTS I, II, AND III).

The Supplement contains no new allegations against any Individual Defendants other than De Witte, Schwartz, and Redondo, and the new allegations against them are substantially similar to the old. The Individual Defendants should be dismissed. Br. at 45-53; Reply at 26-27.

### CONCLUSION

As the Supplement is Plaintiffs' fourth pleading, dismissal with prejudice is appropriate.

Dated:  April 3, 2026

Respectfully submitted,

REED SMITH LLP

*s/ John McDonald*
John McDonald
Melissa M. Ferrara
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: jmcdonald@reedsmith.com
Email: mferrara@reedsmith.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Gregory L. Watts (admitted *pro hac vice*)
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com

John I. Karin (admitted *pro hac vice*)
Alexander Luhring (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com
Email: aluhring@wsgr.com

*Counsel for Defendants Integra LifeSciences Holdings Corporation, Carrie Anderson, Peter Arduini, Glenn Coleman, Robert Davis, Jan De Witte, Lea Knight, Steve Leonard, Eric Schwartz, and Tracy Redondo*

-8-