**CARELLA, BYRNE, CECCHI, BRODY
  & AGNELLO, P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Lead Plaintiffs*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INTEGRA LIFESCIENCES HOLDINGS CORPORATION SECURITIES LITIGATION | Case No.: 3:23-cv-20321-MAS-TJB<br><br>District Judge Michael A. Shipp<br>Magistrate Judge Tonianne J. Bongiovanni<br><br>Oral Argument Requested<br><br>Motion Day: February 17, 2026 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND STRIKE THE CONSOLIDATED
SUPPLEMENTAL AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

I.      THE SC PLEADS FALSITY .............................................................................1

      A.      The Newly-Alleged Statements Are Actionably False or Misleading.....................1

      B.      The SC Bolsters Falsity for the Previously-Alleged Misstatements........................4

II.     THE SC RAISES A STRONG INFERENCE OF DEFENDANTS' SCIENTER ..............5

III.    THE COMPLAINT ADEQUATELY ALLEGES SCHEME LIABILITY........................7

IV.     THE COMPLAINT ADEQUATELY PLEADS LOSS CAUSATION ...........................7

CONCLUSION............................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
620 F. Supp. 3d 167 (D.N.J. 2022) ...............................................................................2

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
19 F.4th 601 (4th Cir. 2021) ........................................................................................4

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
2011 WL 3444199 (D.N.J. Aug. 8, 2011) ....................................................................3

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229 (D.N.J. July 27, 2018)................................................................ 3-4

## INTRODUCTION

The SC[1] details new, explosive accounts of Susan Krause, Integra's senior-most Quality official who interacted directly with De Witte, Schwartz, the Board, and the FDA. In allegations that Integra desperately sought to shield from the public eye,[2] Krause further details the extent to which Defendants deliberately deceived the FDA and investors by concealing Integra's failure to remediate the Boston Facility's longstanding compliance violations. Krause describes specific instances of securities fraud that she personally witnessed and repeatedly tried to stop—including by explicitly warning De Witte and Schwartz that their disclosures to investors were false—but that Defendants "*repeatedly rebuffed [her] attempts to raise material information to Integra's shareholders*." ¶207.a. Defendants' claim that Krause's eyewitness account "adds little" is meritless. In truth, this is the type of "smoking gun" evidence rarely seen at the pleading stage in securities cases. Discovery into Plaintiffs' claims is warranted, and the Motion should be denied.

## ARGUMENT

### I.    THE SC PLEADS FALSITY

#### A.    The Newly-Alleged Statements Are Actionably False or Misleading

**Q1 2023 Form 10-Q and May 4, 2023 Investor Day**. In Integra's Q1 2023 Form 10-Q, Defendants stated that the "[2019] Warning Letter and 2021 FDA Form 483 do not restrict our

---

[1]    Unless otherwise noted: (i) "SC" refers to Plaintiffs' Consolidated Supplemental Amended Class Action Complaint (Dkt. No. 103-1); (ii) "¶__" refers to the paragraphs of the SC; (iii) "Supplement" or "Supp." refers to Defendants' Supplemental Brief in Support of their Motion to Dismiss and Strike Plaintiffs' Supplemental Complaint (Dkt. No. 105); (iv) all emphasis is added and all internal quotations and citations are omitted; and (v) all capitalized terms have the same meaning as set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Strike the Consolidated Amended Class Action Complaint (Dkt. No. 99) ("Opposition" or "Opp.").

[2]    On March 5, 2026, Krause and Integra disclosed a settlement in principle. *See* Minute Entry, *Krause v. Integra LifeSciences Corp.*, No. 0:24-cv-04339-LMP-ECW (D. Minn. Mar. 5, 2026), Dkt. No. 96.

ability to manufacture or ship products." ¶398.a. This statement was materially false and misleading because, prior to April 26, 2023, Integra had secretly implemented a manufacturing and shipping hold at the Boston Facility due to its inability to produce contamination-free EBM product. This was the same issue that the FDA had flagged for years, and it was the subject of an ongoing "for cause" FDA inspection that had already identified material deficiencies in Integra's method for measuring endotoxins at the Boston Facility. ¶¶192-98. Nevertheless, De Witte and Schwartz rejected recommendations from Krause and Integra's Chief Regulatory Officer ("CRO") that Integra be transparent and update its Form 10-Q to truthfully disclose that "manufacturing and distribution were on hold at the Boston location" due to its ongoing FDA violations. ¶207.a.

Defendants' falsity arguments fail. *First*, Defendants argue that they refused to update the Form 10-Q because the facts that Krause and the CRO sought to expose were disclosed elsewhere. Supp. at 4-5. Not so. Rather than reveal the truth—that the Boston Facility could not "manufacture or ship" due to **ongoing FDA violations**—those other disclosures also misled investors by concealing the reason for the hold, minimizing the severity of the issues, and distorting Integra's response, claiming that it "**elected** to pause production" to simply "**pull[] forward**" certain "quality system **upgrades**" "**originally planned** for later in the year." Karin Ex. 18 at 4-9, Ex. 50 at 8. Defendants compounded their deception by falsely reassuring investors that, despite the pause, Integra had "ample inventory in the system." ¶270. Investors took the bait. ¶273 (Oppenheimer: "Mgmt. characterized [this] **as [a] short-term issue[].**"). Defendants' failure to "disclose the material, adverse reason why the ship hold had been implemented" is actionable. *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 186 (D.N.J. 2022).

*Second*, Defendants argue that the SC fails to allege that the "production pause" was caused by the 2019 Warning Letter or the 2021 Form 483. Supp. at 5. This is a straw man. Plaintiffs allege

2

that the deficiencies that prompted *Krause* to implement the manufacturing and distribution hold in December 2022 stemmed from the *same* unremediated violations previously identified by the FDA. ¶¶195-97.a. Defendants' statements thus created the misleading impression that the "voluntary" production pause was due to "upgrades," not preexisting violations, and had been "originally planned" for "later in the year" when Defendants were in fact actively obstructing and undermining necessary remediations—including by continuing to process and refusing to discard contaminated product. *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2011 WL 3444199, at *10 (D.N.J. Aug. 8, 2011) ("positive statements" about drug misleading "for failure to completely and accurately represent [negative] information known" at same time).

*Third*, Defendants *ignore* allegations that, according to Integra's Chief Human Resources Officer, Defendants "intentionally deceived investors" during Integra's 2023 Investor Day by stating that "[l]ast year and this year, we made significant investments in quality across all of our manufacturing sites with a focus on accelerating our quality project in Boston." ¶¶207.a, 441.

**Q4 2023 Earnings Call**. The SC alleges that Defendants falsely assured investors that none of Integra's "private label relationships [had] been severed" and that those customers were still "evaluating their different options" when, by that time, two large private label customers had already cancelled their Boston Facility purchase orders. ¶¶485.b-c (Statement 28.a). Defendants do not dispute that Statement 28.a failed to disclose these cancellations. Instead, they argue their omission is excusable because the market "knew orders were not being filled." Supp. at 6. They are wrong. Statement 28.a misled investors into believing that the lost sales were *temporary* and that customers were still "evaluating" their options when, in truth, multiple large customers had already *permanently* cancelled their orders. *Compare* Supp. at 6, *with* ¶¶485.b-c; *see Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *12 (D.N.J. July 27, 2018) (statements regarding

3

pricing actionably misleading when "'average' pricing was inflated by [collusive] price spikes").

### B.     The SC Bolsters Falsity for the Previously-Alleged Misstatements

The SC's additional facts strengthen Plaintiffs' falsity allegations for the previously-pled misstatements. For example, the SC alleges that in addition to deliberately obstructing Krause's efforts to implement necessary quality improvements during the Class Period, Defendants also gutted Integra's Quality department in 2022—slashing its remediation budget in half and its headcount by over 75 employees. *See, e.g.*, ¶¶200, 399-403, 437-52. Indeed, the Board "had no idea about these cuts and was shocked" to learn that the Quality department had been gutted. ¶200. These allegations further conflict with Defendants' public statements to investors, including that they were implementing measures to "protect and ensure product quality" and "continuously improv[ing] the effectiveness of [Integra's] quality management system" to "ensure compliance with all regulatory requirements." *See, e.g.*, ¶437 (Statements 12 and 13), ¶447 (Statement 21).

Defendants' claims (Supp. at 4) that Statements 12, 13, and 21 were inactionable opinions fail for the reasons set forth in the Opposition. Opp. at 44-46, 48-49. That Defendants' statements did not reference the precise "level of resources devoted to quality" (Supp. at 4) is irrelevant because they misleadingly represented that Defendants were ***improving*** Integra's quality systems and ensuring regulatory compliance at a time when they were deliberately ***preventing*** Quality personnel from implementing necessary improvements and ***gutting*** the Quality department itself. *See, e.g.*, ¶¶399-403, 437-52.[3] Moreover, the fact that Statement 21 was made in 2023 (Supp. at 4) is irrelevant because Defendants implemented a go-forward "hiring freeze across the Quality

---

[3]     The Fourth Circuit's *scienter* analysis in *KBC Asset Management NV v. DXC Technology Co.*, 19 F.4th 601, 609 (4th Cir. 2021), says nothing about whether *falsity* is adequately pled here. In any event, this case does not concern "an honest disagreement" over whether cost cuts would negatively impact a company's revenue projections. *Id.* Here, Defendants' conduct—including their decision to gut the Quality department—***directly contradicted*** their public statements.

department" in August 2022. *See, e.g.*, ¶¶402.a, 439.a., 444, 449.a.

In addition, Defendants' safe harbor arguments with respect to Statements 14, 15, 16, 23, and 25 (Supp. at 5-7) fail for the reasons discussed in the Opposition. *See* Opp. at 46-49. Defendants' arguments with respect to Statements 14 and 16 also fail because, as discussed above, Integra failed to disclose the true reasons for the manufacturing and distribution hold. Statements 23 and 25 are also actionable because Defendants falsely assured investors that Integra's remediation efforts were on track despite knowing that a recent FDA inspection had uncovered unacceptably high concentrations of endotoxins—*27 times* Integra's internal testing levels, deficiencies in Integra's measurement of endotoxins, and over *80* customer complaints. ¶¶411-24. Statement 15 is actionable because Defendants represented that they would "more than double" Integra's capacity for SurgiMend and PriMatrix in 2025 despite knowing that manufacturing and distribution at the Boston Facility were indefinitely on hold. *See* ¶¶480-85.a.

## II.     THE SC RAISES A STRONG INFERENCE OF DEFENDANTS' SCIENTER

As discussed in the Opposition, Plaintiffs have cured the scienter deficiencies previously identified by the Court with detailed allegations demonstrating Defendants' awareness of material facts and deliberate misconduct that contravened their Class Period statements. *See* Opp. at 14-35. The SC bolsters the already-strong inference of scienter by detailing specific instances of Defendants *intentionally concealing*, over Krause's explicit objections, material information from shareholders regarding Integra's compliance deficiencies and safety concerns. For example, Krause recounts Defendants' *deliberate rejection* of her verbal and written efforts to publicly disclose that manufacturing and distribution at the Boston Facility had been suspended due to its rampant and ongoing compliance deficiencies. ¶¶1.a, 207.a. Rather than disclose these critical facts, Defendants misleadingly assured the market that the FDA had not restricted Integra's ability to manufacture and ship products and "intentionally deceived investors by leading them to believe

5

that everything was fine at the Boston site." *Id.* Defendants similarly disregarded Krause's efforts to disclose that multiple large private label customers had canceled their orders. ¶¶1.b, 207.a.

Recognizing that such facts easily raise a strong inference of scienter, Defendants ***ignore*** them in their scienter arguments. Instead, they raise largely-recycled arguments that are easily rejected. *First*, in claiming that ***Integra*** "successfully implemented new and more effective processes at the Boston Facility" (Supp. at 1-2), Defendants again distort the record. Krause stated that ***she*** implemented improved processes, but Defendants subsequently "***undermined . . . at every turn***" her efforts to employ them "to bring the Company into compliance with cGMP and FDA regulations." *See* Opp. at 24; ¶¶12, 187.b. Defendants' claim that Plaintiffs "do not plead facts showing Defendants tried to 'stym[ie]' these processes" (Supp. at 2) ignores the copious examples of Defendants' deliberate obstruction. *See, e.g.*, Opp. at 11-13, 16-18, 27-28.[4]

*Second*, Defendants again point to Krause's claim that Integra believed the FDA Warning Letter would be removed. Supp. at 2. But as discussed in the Opposition, Krause's statement did not reflect Defendants' good faith belief and was based on their knowing misrepresentation that Integra had finished remediating the Boston Facility. Opp. at 24-25. Likewise, the March 2022 meeting supports scienter because it reflects Defendants' efforts to conceal facts that "threatened to derail" Integra's PMA application. ¶189. Whether those efforts occurred before or after the PMA application was formally submitted is of no moment. Supp. at 2. Moreover, Defendants' claim that Krause "does not allege" that "the Boston Facility was not ready to be audited by the FDA" in February 2024 (Supp. at 2) is not credible. Krause stated that, by that time, she ***had***

---

[4]    Defendants' claims that Plaintiffs "fail[] to address the scienter allegations the Court has found insufficient" and "the reasons why unadjudicated allegations should be stricken or discounted" (Supp. at 1) fail for the reasons discussed in the Opposition. *See* Opp. at 19-23, 30.

6

*already asked the FDA to extend the audit deadline* because validations and other needed work were "***not yet completed***," and De Witte was threatening that Quality employees who performed poorly during a preparatory audit "***should get a bullet in the head***." ¶¶201, 428.

*Third*, Defendants absurdly reargue that Krause's warnings "did not come to pass." Supp. at 2. Defendants only stopped pressuring Krause to illegally relabel and sell contaminated product *after* the FDA got involved, strengthening the scienter inference. ¶¶190, 198-99.a; Opp. at 24.

*Fourth*, Defendants propose non-fraudulent inferences based on the purported "internal investigation" and "constructive debate among executives." Supp. at 2-4. But they are belied by the SC's extensive allegations detailing a deliberate years-long scheme, orchestrated at the highest levels of the Company, to elevate profits over quality and safety. *See* Opp. at 31, 33-35. Similarly, Defendants speculate that Schwartz issued his cease-and-desist warning to Krause in order to "preserve[] attorney-client privilege." Supp. at 3. This too is belied by the SC's well-pled allegation, sourced directly to Krause, that Schwartz sought to "further block[] visibility of the hotline complaint." ¶197.a. Likewise, their improper factual argument that the FDA received a summary of all relevant information related to the whistleblower complaint (Supp. at 3) cannot be squared with Krause's assertion that the summary "omitted critical information" (¶197.b).

## III.    THE COMPLAINT ADEQUATELY ALLEGES SCHEME LIABILITY

Defendants' challenges to scheme liability (Supp. at 7) reassert the same arguments raised in their motion to dismiss and fail for the reasons set forth in the Opposition. *See* Opp. at 49-51. The SC pleads additional misconduct that further undermines Defendants' position. ¶¶184-207.a.

## IV.    THE COMPLAINT ADEQUATELY PLEADS LOSS CAUSATION

Defendants' loss causation arguments fail. *See* Opp. at 51-53.

### CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated: April 17, 2026

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
James A. Harrod (*pro hac vice*)
Alexander Noble (*pro hac vice*)
Emily A. Tu (*pro hac vice*)
Sarah Schmidt (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
jim.harrod@blbglaw.com
alexander.noble@blbglaw.com
emily.tu@blbglaw.com
sarah.schmidt@blbglaw.com

**SAXENA WHITE P.A.**
David R. Kaplan (*pro hac vice*)
Emily R. Bishop (*pro hac vice*)
505 Lomas Santa Fe Dr.
Suite #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
ebishop@saxenawhite.com

Steven B. Singer (*pro hac vice* forthcoming)
Sara DiLeo (*pro hac vice*)

8

10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
ssinger@saxenawhite.com
sdileo@saxenawhite.com

Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
Richard A. Russo, Jr.
Nathaniel C. Simon (*pro hac vice*)
Farai Vyamucharo-Shawa (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
rrusso@ktmc.com
nsimon@ktmc.com
fshawa@ktmc.com

*Lead Counsel for Lead Plaintiffs*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2026, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing

to all counsel of record.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2026

Respectfully submitted,

*/s/ James E. Cecchi*

James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY
   & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Lead Plaintiffs*